# EXHIBIT 2

# Time Charter

### Government Form
### Approved by the New York Produce Exchange

November 6th, 1913 – Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1  **This Charter Party,** made and concluded in ...LONDON 12TH ..day of ......JULY.......19....2007........

2  Between .....ORESTEIA SHIPPING LTD, MALTA........

3  Owners of the good ...Steamship / Motorship ...M.V. BRAVE JOHN **(see description Clause 77)** of ...........................

4  of .............tons gross register, and .......................tons net register, having engines of ........................................indicated horse power

5  and with hull, machinery and equipment in a thoroughly efficient state, and classed...**ABS**...............................................

6  at ..............of about...........................cubic feet bale capacity, and about...........................tons of 2240 lbs.

7  deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one-half percent of ship's deadweight capacity,

8  allowing a minimum of fifty tons) on a draft of ...........feet............inches on ...........Summer freeboard, inclusive of permanent bunkers,

9  which are of the capacity of about ...................................tons of fuel, and capable of steaming, fully laden **throughout the**

10  **currency of this Charter Party,** under good weather

11  conditions about .......................knots on a consumption of about ...........................tons of best Welsh coal – best grade Diesel oil,

12  now ...**trading**................

13  ........................................and Messrs, Yong He Shipping Ltd ...Charterers of the City of ...Hong Kong....................

14     *Witnesseth,* That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

15  about for one time charter trip with intention steels and generals lawful and harmless, with deck option, via safe port(s) safe anchorage(s)

16  safe berth(s) always afloat always within Institute Warranty Limits, estimated duration for charter party purposes about 60 days without

17  guarantee, within below mentioned trading limits.

18  Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

19  the fulfillment of this Charter Party. **Acceptance of delivery by Charterers shall not constitute any waiver of Owners' obligations hereunder.**

20  **Acceptance of redelivery by Owners shall not constitute any waiver of Charterers' obligations under the Charter party.**

21  Vessel to be placed at the disposal of the Charterers, at dropping last outward sea pilot Zhanjiang, China, anytime day or night Sundays and

22  **Holidays included.**

23  ~~in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No 6), as~~

24  ~~the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 5.~~ Vessel on her arrival first load

25  port(s) of first voyage to present with holds clean, dry, free from rust and previous cargoes and in every respect ready to receive Charterers

26  intended cargo to Charterers' surveyors satisfaction. ~~delivery to be~~

27  ready **(see clause 50)** on delivery and throughout the charter vessel ~~to be to receive cargo with clean swept holds~~ and tight, staunch, strong and in

28  every way fitted for the service, having water ballast, winches and

29  donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same

30  time (and with full complement of officers, seamen, engineers, and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-

31  dise, ~~including petroleum or its products, in proper containers,~~ excluding **see clause 30**.......................

32  ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,~~



27 all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports and/or safe places
in British North

28 America and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or

29 Mexico, and/or South America ........................................................................................................................ and/or Europe

30 and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between

31 October 31st and May 15th , Hudson Bay and all unsafe ports, also excluding when out of season, White Sea, Black Sea and the Baltic;

32 **In such lawful trades, between safe port and/or ports and/or trading exclusions – see clause 31.**

33 ........................................................................................................................

34 ........................................................................................................................

35 as the Charterers or their Agents shall direct, on the following conditions:

36 1. That the Owners shall provide and pay for all provisions, wages and consular shipping and discharging fees of the crew; shall pay for the

37 insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep

38 the vessel in a thoroughly efficient state in hull, **cargo spaces,** machinery and equipment **with all internationally known certificates necessary to
comply with current requirements at ports of call** for and during the service.

39 2. That whilst on hire the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, **Dardanelles pilotages if
requested by Master are for Owners' account,** Pilotages, Agencies **(except agency fee directly related to Owners' matters),** Commissions,
**compulsory garbage/compulsory watchmen,**

40 Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated, but when the vessel puts into

41 a port for causes for which vessel **and/or her Owners are is** responsible, then all such charges incurred shall be paid by the Owners. Fumigations
ordered because of

42 illness of the Crew or cargoes **carried prior to delivery to be** for Owners account. Fumigations ordered because of cargoes carried or ports visited

43 while vessel is employed under this charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period

44 of six months or more.

45 Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but

46 Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards

47 for dunnage, they making good any damage thereto. **All dunnages used for Charterers trade to be in accordance and approved for the intended
trade. In case dunnage removal disposal not to be allowed by authorities same to be removed by Charterers at their time and expenses.**

48 3. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on

49 board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than ........................................... tons and not more than

50 ........................................... tons and to be redelivered with not less than ........................................... tons and not more than ........................................... tons. (see

clause 44.)

51 4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of **US$ 34,500 daily including overtime first 50 days**

52 **and US$ 35,500 thereafter.** United States currency per ton on vessel's total deadweight capacity, including bunkers and

53 stores, on ........................................... summer freeboard, per Calendar Month, commencing on and from the day of her delivery, as aforesaid, and at

54 and after the same rate for any part of a **day month;** hire to continue until the hour of the day of her re-delivery in like good order and condition,
ordinary

55 wear and tear excepted, to the Owners (unless lost) at on **dropping last outward pilot station full Mediterranean as per Owners back to back
Charter party**

56 **any time day and night Sundays and holidays included, port in Charterers** option unless otherwise mutually agreed. Charterers are to give
Owners not less than 7/5/3/2/1 days **definite**

57 notice of vessels expected date of re-delivery, and probable port and time.

58 5. Payment of said hire to be made to **Owners' bankers** in New York in cash in United States Currency, **every 15 days** ~~semi-monthly~~ in advance,
and for the last **15 days** ~~half-month~~ or

59 part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

60 due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

61 hire, or bank guarantee, **or deposit,** or on any **fundamental** breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from
the service of the Char-

62 terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count from 7 a.m. on the working day~~

63 ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they~~

64 ~~to have the privilege of using vessel at once, such time used to count as hire.~~ See clause 64.

65 Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject

66 to 2 ½ % commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67 of such advances.

68 6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place or **anchorage in port or elsewhere** that Charterers
or their Agents may

69 direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely
lie aground.

70

71 7. That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72 accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

73 tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow. Charterers~~

74 ~~paying Owners~~ .................. ~~per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~

75 ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense. No passengers allowed.~~

76 8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77 boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

78 agency; and Charterers are to load, stow, and trim, **tally, lash, secure, unlash, discharge** the cargo at their expense under the supervision of the
Captain, who is to sign or **when required by Charterers, authorize the Charterers or their agents to sign** Bills of Lading **on his behalf** for

79 cargo as presented, in conformity with Mate's or Tally Clerk's receipts.

80 9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81 receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

82 10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted

83 with the utmost despatch. **Charterers and their supercargo shall issue/sign the customary Letter of Indemnity (holding Owners harmless of
consequences for letting supercargo on the vessel) in Owners' Protection and Indemnity Club wording.** He is to be furnished with free
accommodation, and same fare as provided for Captain's table, Charterers paying at the

84 rate of $ 10.00 per day. Owners to victual Pilots and Customs Officers, and also, ~~when authorized by Charterers or their Agents,~~ to victual Tally

85 Clerks, Stevedore's Foreman, etc., Charterers paying ~~at the current rate per meal,~~ **to compensate Owners lumpsum US$ 1,250 per 30 days or pro
rata in respect of Charterers** ~~for all such~~ **victualling, communication and representation.**

86 11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

87 Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-
88 terers, their Agents or Supercargo, when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-
89 sumption of fuel **as well as revolutions of main engine and velocity of and direction of wind and sea, all in English language.**
90 12. That the Captain shall use diligence in caring for the ventilation of the cargo.
91 13. ~~That the Captains shall have the option of continuing this charter for a further period of .................~~
92
93 ~~on giving written notice thereof to the Owners or their Agents ............ days previous to the expiration of the first named term, or any declared option.~~
94 14. That if required by Charterers, time not to commence before **21st JULY 2007 00:01 HRS local time....and should vessel**
95 not have given written notice of readiness on or before **29TH JULY 2007....but not later than 24:00 Local time 4 p.m.** Charterers or
96 their agents to have the option of canceling this Charter at any time not later than the day of vessel's readiness.
97 15. That in the event of the loss of time from deficiency **and/or default and/or strike of men or deficiency** of stores, fire, breakdown or damages to
98 hull, machinery or equipment,
99 grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause
100 preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; **and all directly related extra expenses may be**
101 **deducted from the hire** and if upon the voyage the speed be reduced by
102 defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence
103 thereof, and all **directly related extra expenses** shall be deducted from hire.
104 16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be
105 returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,
106 Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.
107 The vessel shall have the liberty to sail with or without pilots, to tow or to be towed, to assist vessels in distress, and to deviate for the
108 purpose of saving life and property.
109 17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons in **London** ~~at New~~
110 ~~York,~~
111 one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for
112 the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men. **See further**
113 **Arbitration clause 39.**
114 18. That the Owners shall have a lien upon all cargoes, and all sub-freights, **sub-hires for any amounts due under this Charter, including General**
115 Aver-
116 age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess
117 deposit to be returned at once. Charterers will not suffer nor permit to be continued, any lien or encumbrance incurred by them or their agents, which
118 might have priority over the title and interest of the owners in the vessel. **Owners may serve prohibition to lien notices on bunker suppliers and**
119 **other supplies of necessaries supplied by Charterers for their operations to the ship. (In regard Charterers are to keep Owners informed of**
120 **supplies timely before supply for Owners to be able to serve notices timely).**
121 19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and
122 Crew's proportion. General Average shall be adjusted, stated and settled, according ~~to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of~~
123 York-Antwerp Rules 1990 **and subsequent revision at London, unless Charterers sub-Charter parties provided otherwise in which event,**
124 **Owners shall submit to Charterers, sub-Charterers jurisdiction clause when requested by Charterers** ~~1924,~~ at such port or place ~~in the United~~

117 States as may be selected by the Owners and Charterers to mutual agreement Owners respecting contracts' stipulation as long as confined to
London or New York or other recognized place of adjustment ~~carrier, and as to matters not provided for by these~~

118 ~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into~~
119 ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at~~
120 ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~
121 ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier~~
122 ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~
123 ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall at the option of the~~
124 ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~
125 ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~
    ~~United States money.~~ Charter hire not to contribute to General Average.

126 ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage, resulting from any cause whatsoever,~~
127 ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~
128 ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~
129 ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~
130 ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~
131 ~~ships belonged to strangers.~~

132 ~~Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.~~

133 ~~20. Fuel used by the vessel while off hire, also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and the~~
134 ~~cost of replacing same, to be allowed by Owner.~~

135 ~~21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~
136 ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~
137 ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~
138 ~~Should bottom cleaning become necessary at any time during the charter as part of the vessel's maintained~~ then vessel shall be off-hire
139 for anytime thereby lost. No dry-docking except in case of emergency.

140 22. Owners shall maintain the gear of the ship as fitted, providing gear (for all cranes derricks) capable of handling lift up to the maximum capacity
    in accordance with the Description clause ~~three tons,~~ also

141 providing ropes, falls, slings and blocks. ~~If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~
142 ~~same, otherwise equipment and gear for heavier lift shall be for Charterers account.~~ Owners also to provide on the vessel power and electric light
    as on board on deck and in cargo holds sufficient for night work in all holds simultaneously ~~lanterns and oil for~~

143 ~~night work,~~ and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers's expense. The
144 Charterers to have the use of any gear on board the vessel.
145 23. Vessel to work night and day, if required by Charterers, and all cranes winches to be at Charterers' disposal during loading and discharging of
    cargo;

146 ~~steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay Officers, engineers, winchmen,~~
147 ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the~~
148 ~~port, or labor unions, prevent crew from driving winche,~~ shore ~~cranemen~~ Winchmen to be paid by Charterers. In the event of a disabled crane or
    cranes ~~winch or winches,~~ or

149    insufficient power to operate crane or cranes ~winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time and directly related extra expenses including standby expenses occasioned but maximum 1 shift per affected gang. Anytime lost due to breakdown and/or insufficient power to be deducted pro-rata to the number gangs affected provided it is always understood that the deduction, if any, from hire is sufficient and appropriate to compensate the Charterers for proven actual loss suffered.

150    thereby.
151    24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained
152    in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels,
153    etc." in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both
154    of which are to be included in all bills of lading issued hereunder:

155                                  U.S.A. Clause Paramount
156    This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April
157    16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of
158    any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading
159    be repugnant to said Act to any extent, such term shall be void to that extent, but no further.

160                                  Both-to-Blame Collision Clause
161    If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the
162    Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried
163    Hereunder will indemnify the Carrier against all loss or liability to the other non-carrying ship or her owners in so far as such loss
164    or liability represents loss of, or damage to, or any claim whatsoever of the owners of the said good, paid or payable by the other or non-
165    carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her
166    owners as part of their claim against the carrying ship or carrier.
167    —25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light ships have been or are about to be with-
168    drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the
169    port or to get out after having completed loading or discharging.
170    26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171    navigation of the vessel, insurance, crew, acts of pilots and tugboats, and all other matters, same as when trading for their own account.
172    27. A commission of 2-¾ 1.25 per cent is payable by the Vessel and Owners to
173    Global Oceanic Chartering Ltd + 1.25% to East Med Trading & Shipping Inc.....................
174    on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
175    28. An address commission of 2-¾ 1.25 per cent payable to Charterers.....on the hire earned and paid under this Charter.

Clauses 29 through 80 are fully incorporated in this Charter Party. The Rider headings are for easy reference only and not part of this Charter Party.

*CHARTERERS*

*OWNERS*

# RIDER CLAUSES TO MV "BRAVE JOHN"/YONG HE SHIPPING

## CHARTER PARTY DATED 12TH JULY 2007

**Clause 29:**

Owners are obliged to deliver and keep the vessel her crew and anything pertaining hereto supplied with up-to-date and complete certificates, approvals, equipment and fittings, enabling the vessel and her crew to load, carry, discharge all cargoes permitted under this Charter Party and bunker within the trading limits of this Charter Party even where such certificates become necessary before or after the commencement of this Charter Party.

**Clause 30:  Cargo Exclusions.**

The following cargoes are excluded from carriage:

Tar, livestock, pitch in bulk, hides, arms and ammunitions, acids, explosives, nuclear materials, calcium carbide, ammonium nitrate, radio-active products and waste, creosoted goods, carbide, ferro-silicon, motor spirit, silicon, bones, asphalt in bulk, naphtha, calcium hyperchlorite, sunflowerseed expellers, direct reduced iron ore pellets, petroleum or its products, inflammable or injurious/dangerous cargoes, scraps motor blocks and turnings, copra, copra pellets, salt, saltcakes, technical urea, petcoke, pitch coke, logs, asbestos, sulphate of ammonium, potash, sponge iron, hot briquetted iron, cokebreeze, fishmeal, clinker, bulk cement, caustic soda, black powder, blasting caps, sulphur, any kind of petcoke (including green delayed petcoke, calcinated petcoke), and all cargoes that possess chemical hazards as per Appendix B of Code of Safe Practice for solid bulk cargoes and all cargoes of IMO IMDG code.

Notwithstanding the above the following to be allowed:

Ammonium nitrate (fertilizer grade allowed) but not as full cargo and Appendix B Certificates to be issued by Charterers, one cargo scrap allowed but always excluding motorblocks and turnings, petcoke but not as last cargo prior redelivery and Appendix B Certificates to be issued by Charterers, potash, fishmeal ok but not the last prior redelivery. Bulk cement and clinker ok but not last two cargoes prior redelivery.

Deck cargo also excluded unless same closed accordingly on the Bill(s) of Lading at Charterers risk, time and expenses.

Ammonium sulphate (fertiliser grade) max one cargo;
fluorspar allowed.
Granulated form sulphur allowed (non IMO/IMDG cargo).

All cargoes to be loaded/stowed/trimmed/separated/discharged in accordance with IMO and Local Authorities-rules, guidelines, recommendations.

1

*Global Oceanic Chartering Ltd*

Cont'd...

Vessel not to load cargoes from Brazil for which DPC Survey is required.

Concentrates always to be loaded in accordance with IMO rules and regulations.

Scrap XMBT is allowed but same to be non-oily and to be loaded with soft loading clause.

Cement clinker ok but holds washing to be effected without the use of acids or other chemicals or sea water.

**Clause 31: Trading Exclusions.**

Finland, Wales, Norway, Sweden, Denmark, Israel, Lebanon, France, Turkish occupied Cyprus, UK, Somalia, Iraq, Australia, New Zealand, N. Korea, N. Caledonia, CIS Pacific ports, Cuba, Haiti, Canada, Angola, Dem. Rep. of Congo, Guinea-Bissau, Liberia, Nauru, Canada, Ethiopia, Angola including Cabinda and Kampuchea, Great Lakes, Cambodia, Namibia, St. Lawrence Seaway west of Montreal, Sierra Leone, Bosnia Herzegovina, Abkhazia, Eritrea, Liberia, Alaska, New Zealand, Namibia, Laos, Myanmar, Countries north of 62¼ degree latitude (but Murmansk allowed) and all the countries which may become during the currency of this Charter Party sanctioned by the United Nations. Walvis Bay, Namibia permitted.

Passage to/from Baltic permitted through Great Belt or Sound.

In case vessel will trade in war or warlike zones then Conwartime 93 war risk clauses to apply.

Lybia trading ok provided situation continues to be "normal".

Vessel is not to trade directly between China and Taiwan or vice versa, and/or areas restricted or may be restricted by Owners P + I Club during the currency of this Charter Party.

War/War like zones, for which no cover for additional war risk insurance can be obtained are excluded from trading.

If however, an area to which the vessel is bound is declared a war risk area after the commencement of the voyage then the vessel is allowed to proceed and the governing war risk clause of this charter/party is to apply. Additional war risk premium to be for charterers account.

Any additional premium for calling Orinoco river to be for charterers account.

Vessel not to force ice but is allowed to follow ice-breaker.

2

*Global Oceanic Chartering Ltd*

### Clause 32:   Crew Service.

With reference to Clause 8 of this Charter Party "customary assistance" shall include, but not be limited to:

1) All opening and closing of hatches, when and where required, if permitted by local regulations.

2) Raising and lowering of derricks and rigging cranes, if fitted and/or gangways in preparation for loading and discharging.

3) Shaping up vessel's holds/hatches and cranes prior arrival at loading and/or discharging places so as to immediately commence loading and/or discharging operations subject to weather conditions and the safety of the crew.

The above services shall be considered as a minimum and shall in no way be construed as an alternative to or reduction in the standard of services from Officers and crew required under this Charter Party.

### Clause 33:   Grab Fitting/Operation.

Charterers have the free use of vessel's cranes and charterers have option to place grabs on board the vessel and owners to maintain same during the period of time that charterers' grabs are on board the vessel. It is understood that the maintenance and keeping of the grabs or the grabs to be done in the best of crew capability   but without any guarantee and also grabs on board to be insured by    charterers and Owners do not accept any responsibility of any expense or damage related to or loss of these grabs whatever the cause may be.

### Clause 34:

Charterers have right to do hotwork on vessel's hatchcovers and charterers are to restore same to vessel's class surveyor's satisfaction at charterers time risk and expense.

### Clause 35:   In Lieu of Hold Cleaning.

Charterers shall have the option of redelivering the vessel without cleaning of holds against paying the Owners a lumpsum of USD 5000 lumpsum in lieu of hold cleaning. In case port of redelivery is a U.S.A. port then dunnage removal/disposal always charterers responsibility and at their time and expense, excluding freshwater for washing.

### Clause 36:

Charterers have the option to carry one original Bill of Lading in ship's bag in which case all these originals shall be marked "One original Bill of Lading retained on board vessel against which Bill of Lading delivery of the cargo may properly be made on instructions received from Charterers. Such Bill(s) of Lading to be properly endorsed, and Charterers to remain responsible for all consequences for carrying such b/l onboard.

3

*Global Oceanic Chartering Ltd*

**Clause 37:**

Vessel's crew shall clean vessel's holds in between voyages with the same efficiency as if vessel had been trading for owners own account.

Cleaning always subject to weather and time. Charterers to pay US$600 per hold actually cleaned to owners.

It is mutually understood that although the crew will do their best to carry out hold cleaning, owners/master will not be responsible for the cleanliness of hold condition as a result of being turned down due to residue of cargoes. Intermediate hold inspection, cleaning and surveys to be at charterers time risk and expenses.

Vessel's holds always to be fresh water washed only. Adequate quantity of fresh water to be supplied by charterers at their expense.

For guidance only (for a normal holds washing after a cargo of grains the quantity of 100 mt of fw to be supplied by charterers.)

**Clause 38:**

Deleted.

**Clause 39:    Arbitration.**

This Charter Party shall be Governed by English Law.

It is hereby agreed that all claims below US$50,000.00 excluding interest and costs, shall be settled as per current LMAA Small Claims Procedure.

**Clause 40:    Arrest.**

Should the vessel be arrested during the currency of this Charter at the suit of any person including Charterers having or purporting to have a claim against or any interest in the vessel, hire under this Charter Party shall not be payable in respect of any period whilst the vessel remains under arrest or remains unemployed as a result of such arrest, and the Owners shall reimburse to the Charterers any proven, directly related expenses which they may incur in respect of such arrest provided not already covered by non-payment of charter hire.

This Clause shall not apply should the arrest be caused through any fault on the part of Charterers.

Notwithstanding the above if Charterers decide to continue to load/discharge even though vessel under arrest then vessel to be considered on hire.

**Clause 41:**

Deleted.

4

**Clause 42:    Bills of Lading.**

Charterers' Bills of Lading to be used if required by Charterers.

In case the Original Bill(s) of Lading are not available upon vessel's arrival at discharging port for any reason, the Master is to release the entire cargo to the Charterers order against presentation by Charterers or their Agents of a single Letter of Indemnity with wording as per Owners standard P & I.Club form, signed by Charterers only. Discharge to commence on receipt by Owners of faxed copy of the L.O.I. A copy of bill of lading to accompany charterers letter of indemnity on fax. Charterers also undertake to courier the original letter of indemnity upon faxing same to owners.

Should Charterers require vessel to change discharging port after Bill of Lading have been issued Owners to comply with such instructions upon receipt of a faxed copy of a single L.O.I. signed by Charterers only and issued in conformity with Owners standard P. & I. Club form.

Attached please find the standard forms of Letters of Indemnity to be given in return for:

a) Delivering cargo without production of the Original Bill of Lading.
b) Delivering cargo at a port other than that stated in the Bill of Lading.
c) Delivering cargo at a port other than that stated in the Bill of Lading and without production of the Original Bill of Lading.

When and if required Charterers may place one Original Bill of Lading on board, against which Bill of Lading delivery cargo to take place on instructions received from Shippers/Charterers, however same must be duly endorsed and all Original Bills of Lading to be marked accordingly. No through bill(s)of lading or contracts of carriage / Bill(s) of lading subject to Hamburg rules to be issued (save where the contract of carriage is on such terms solely by reason of the incorporation by operation of Law of the Hamburg rules). Charterers to make best endeavours to incorporate a lien clause in all bill(s) of lading issued under this Charter Party. Charterers to accept all consequences that might result from charterers and/or their agents not adhering strictly to their authority.

**Clause 43:    Bulldozers.**

Charterers to have the option to use bulldozers in vessel's holds, provided not exceeding the tank top strength. If required, vessel to lift from hold, shift from hold to hold and discharge the bulldozers by use of vessel's gear.

**Clause 44:    Bunkers.**

Bunkers on dely about 500-600mt IFO plus about 50-60mt MDO. Vessel to be redelivered with about 500mts IFO and about 50mts MDO. Prices both ends USD 340mt for IFO and USD 625mt for MDO. Owners right to bunker vessel for themselves without interfering to Charterers matters. Charterers' option to bunker vessel at Houston prior delivery.

In order to comply with the terms and conditions of the various bunker suppliers, the sample to govern quality shall be the sample drawn by the Supplier and witnessed by the ship's chief engineer or surveyor appointed by owners. Analysis of said sample in accordance with the recognised I S O test methods at a mutual agreed reputable and dedicated laboratory shall be binding and conclusive

5

Owners are obliged to deliver and maintain throughout the currency of this Charter Party, the vessel, her crew and anything pertaining hereto supplied with up-to-date and complete certificates (including Oil Pollution Certificates), approvals, equipment and fittings, enabling the vessel and her crew to trade within the trading limits and to load, carry and discharge all cargoes permitted under this Charter Party.

**Clause 46:    Certificates/Vaccinations.**

| | |
|---|---|
| Charterers' P. & I. Club | : Skuld, Copenhagen |
| Owners' P. & I. Club | : West of England |

of premiums are up to date.

If required by Charterers Owners to authorise and instruct Owners P. & I. Club to confirm directly to any Party as ordered by Charterers that the vessel is fully covered for P. & I. and that collection

subsequent amendments.

specified by the Interclub New York Produce Exchange Agreement effective from 1996, and its of both parties. Liability for cargo claims, as between Owners and Charterers, shall be apportioned as of suit in each and every occurrence. Such extensions shall not prejudice the ultimate responsibility Owners and/or the Charterers shall on request grant reasonable time extension for commencement Charterers' liability could be involved under the terms of this Charter party, as the case may be, the In the case of damage to and/or loss of cargo carried on the vessel in which Owners and/or

cancelled or suspended during the currency of this Charter.

It shall be considered a fundamental breach by Owners if the vessel's P. & I. cover or class is

Charter Party. Entry shall include, but not be limited to, ordinary cover for cargo claims. Association, which is a member of the Group of International P. & I. Clubs, for the duration of this Owners guarantee that the vessel is entered and shall remain entered in a Protection and Indemnity

**Clause 45:    Cargo Claims/P. & I. Club.**

Charterers undertake to keep such supply as low as practically possible.

Where RMF 25 is not available Charterers option to supply RMF 25.

reading of meters at shore installation.

Quantity supplied shall be finally determined by sounding of the tanks of the delivering barge or by

waiver of such claim. claims against suppliers. Absence of notification within 21 days from delivery will be deemed as provided as early as practicably possible in order to enable charterers to process the necessary instance, within 21 days from the date of delivery of the said vessel, with documentation to be Any claim in relation to fuel purchase by vessel shall be notified to the charterers, in the first

Cont'd...

for both parties.

Cont'd...

Officers and crew to comply with vaccination and sanitary regulations in all ports of call and corresponding certificates to be available onboard, enabling the vessel to obtain free pratique by radio.

If requested, Owners to provide Charterers with copies of any and all such certificates/approvals.

Any time lost and all extra directly related expenses resulting from Owners' non-compliance with the above to be for Owners' account and same may be deducted from hire.

**Clause 47:    Deductions.**

The Charterers may deduct from the charter hire any amount disbursed for Owners' account provided agreed with Owners in advance for any items in excess of USD 2,000.00.

For Owners / vessel's own / husbandry items, owners / master shall pay cash directly to agents and charterers are not allowed to make estimated deductions from vessel's hires for owners matters unless specifically agreed by owners as aforesaid under this clause.

**Clause 48:    Delivery/Redelivery Time.**

Actual time on hire to be calculated basis Greenwich Mean Time.

**Clause 49:    Double Banking.**

Charterers have the right to load and/or discharge on double banking basis or by any other means available at loading and/or discharging port or place always subject to Master's reasonable satisfaction and any additional equipment/facilities such as fenders, whenever considered necessary by the Master, are to be supplied by the Charterers in their time and at their expense.

If at any time during operation, the Master reasonably considers it unsafe to continue due to adverse weather conditions etc. He may order the other vessel(s) and/or barge(s) away from his vessel or remove his own vessel in order to avoid prejudicing the safety of the vessel(s). Any additional insurance premium net of all rebates, if required by vessel's Underwriters to be for Charterers' account. Amount not to exceed the lowest premium obtainable on the London Market.

**Clause 50:    Hold Condition on First Voyage.**

Vessel on arrival first loadport(s) of first voyage to present with holds clean, dry, free from rust and previous cargoes and in every respect ready to receive Charterers intended cargo to Independent surveyors satisfaction. Failing such survey vessel shall be off-hire until fully passed. If failing Owners immediately to take all necessary steps to have vessel passed with minimum delay, including but not limited to the hiring of shore labour.

7

*Global Oceanic Chartering Ltd*

**Clause 51:** ITF/Boycott.

Owners warrant that the vessel's crew is and will be during the period of this Charter Party employed under a Bona Fide Union Agreement, the standard of which is fully acceptable to the I.T.F. and Unions in all countries not excluded in this Charter Party.

In the event of the vessel being denied or restricted in the use of port and/or loading and/or discharging facilities or shore labour and/or tug or pilotage assistance or of any other restriction, detention or any loss of time whatsoever due to boycott or arrest of the vessel or due to Government restrictions, all caused by the vessel and/or by reason of the terms and conditions on which members of the crew are employed or by reason of any trading of this or any other vessel under same Ownership or operation or control, the payment of hire shall cease for the time thereby lost and all extra directly related expenses incurred due to above are to be for Owners' account and may be deducted from hire. Owners are also responsible for any valid claim that may be presented by third Party.

**Clause 52:** Inspection.

The Charterers and/or their Supercargo(es) shall have free and unlimited access to the whole vessel including but not limited to bridge, holds, engine room, all vessel's tanks including bunker, lubricating oil, sludge, ballast water, freshwater tanks during the Charter period. Whenever required, the Master must bring the vessel to an even trim to ensure correct bunker soundings. The Charterers and/or their Supercargo(es) and/or Surveyor(s) to have free and unlimited access to the vessel's deck and engine log books, radio logs, tank plans, calibration scales and/or other plans as requested and are allowed to make copies of same.

**Clause 53:** Insurances.

Premium for basic war risks insurance on Hull and Machinery and Officers/crew always to be for Owners' account. Any additional premium net of all rebates in respect of these risks solely arising from the vessel proceeding at the Charterers' request to areas designated as excluded areas by vessel's war risk Underwriters to be for Charterers' account, however, same not to exceed what would have been quoted or charged if the vessel was covered on the London Market. If Owners have not covered basic war risks insurance, Charterers only to pay the differential as if Owners were covered and only against presentation of Underwriters' original invoice. Blocking and trapping insurance always to be for Charterer' account.

**Clause 54:**

Deleted.

**Clause 55:** Loading of Steel.

If vessel is nominated to load steels Owners to arrange for a pre loading survey to be carried out by a surveyor approved by Owners P + I Club. Expenses to be split 50/50.

All non-compulsory surveys with respect to cargo for sake of mutual benefit to be shared between owners / charterers cost / time 50-50 basis. Decision to carry out such survey(s) to be given

8

mutually.

**Clause 56:   Notices.**

Owners are to give notice of vessel's expected date of delivery directly to charterers in copenhagen on fixing and thereafter day by day up to date of vessel's delivery.

**Clause 57:   Off-Hire.**

Should the vessel put back whilst on voyage by reason of any accident or breakdown, or in the event of loss of time either in port or at sea or deviation upon the course of the voyage caused by sickness of or accident to the crew or any person onboard the vessel (other than Supercargo travelling by request of the Charterers) or by reason of the refusal of the Master or crew to perform their duties, or by reason of salvage other than to save life, or oil pollution even if alleged, or capture/seizure, or detention or threatened detention by any authority including arrest, the hire shall be suspended from the time of the inefficiency until the vessel is again efficient in the same or equidistant position in Charterers' option, and voyage resumed therefrom. All extra directly related expenses incurred including bunkers consumed during period of suspended hire shall be for Owners' account.

**Clause 58:   Oil Pollution.**

Owners guarantee to provide and maintain, during the entire Time Charter period, at their expense and carry on board the vessel a valid U.S. Certificate of Financial Responsibility. Owners also guarantee to have secured current certificates for other countries/federal states or municipal or other division or authority thereof, where guarantees are required. All such certificates to be valid throughout the entire Time Charter period.

The Charterers shall in no case be liable for any damages as a result of the Owners' failure to obtain the aforementioned certificates. Time lost by non-compliance to be considered as off-hire and may be deducted from hire and Owners hold Charterers harmless against any consequential losses, damages and expenses.

**Clause 59:   On/Off-Hire Survey.**

On/Off-Hire Bunker/Condition Survey:

At port of delivery or first load port and at last discharge port prior to redelivery a joint on-off hire bunker/condition survey to be held. If time is actually lost due to the surveys being held then the on hire survey to be in Charterers time and the off-hire survey to be in Owners time.

Charterers option, in their own time/expense, at delivery and redelivery to make a condition survey (visual) of vessels hull including holds / hatches / cranes deck.

For the on/off hire bunker/condition survey each party appointing/paying its own surveyor. Owners right to appoint master/chief engineer as their surveyor.

Cont'd…

Charterers have the right to order joint survey(s) by Charterers own surveyor / port captain and Owners to be represented by ship's and master / chief engineer. Further, the Charterers have the option to use master's / chief engineer's bunker figures on delivery and to perform survey on redelivery and/or vice versa.

Bunker quantities measured jointly to be final and binding on both the Owners and the Charterers.

Charterers will have free and unlimited access to all vessel's compartments, tanks, drawings, plans, manuals, etc and to deck and engine log books with the right to request delivery of copies of same.

**Clause 60:   Panama/Suez Canal.**

Owners warrant that the vessel is fitted for the transit of the Suez and Panama Canal in loaded and/or ballast condition and complies with all and any regulations of the relevant canal authority at any time during this time charter.   Should the vessel not comply with the warranties contained in this Clause and/or any regulations or conditions of transit laid down by the relevant canal authority, Charterers may suspend hire for all time lost and Owners to pay all expenses resulting as a consequence of Owners failure to comply with this warranty.

**Clause 61:**

Deleted.

**Clause 62:   Power Clause.**

The vessel to supply free of expense to Charterers 380 volt 3 phase 50 cycles and 40 kv per crane from the power supply panel in each cranehouse. Charterers have the right to fit/connect magnets, grabs or other loading/discharging equipment customary to the trade onto vessel's cranes and/or power supply.

**Clause 63:   Protective Clauses.**

The General Clause Paramount, the Both-to-Blame Collision Clause, the New Jason Clause, Baltic Conference War Risks Clause for Time Charters 1993 (Code name: Conwartime 1993), P. & I. Bunkering Clause, as applicable and attached, are all to be considered as incorporated into this Charter Party and all Bills of Lading issued under this Charter shall be subject to all said Clauses, except Conwartime 1993, but shall also be subject to Voywar 1993. Should Charterers employ vessel in carrying grain on voyage basis, Chamber of Shipping War Risks Clause 1 and 2 to apply instead of Conwartime 1993, but for sake of good order Charterers always to tender prior notice to Owners, providing the intended routing and ports of call. Should a particular trade on which the vessel is employed apply the U.S.A. or the Canadian Clause Paramount compulsorily then such Clauses to be considered incorporated into this Charter and shall be incorporated into Bills of Lading on that trade.

**Clause 64:    Punctual Payment.**

With reference to Clause 5, the Owners to give Charterers 3 New York banking days written notice excluding Sundays and Holidays to rectify a failure to make punctual and regular payment before exercising their right of withdrawal.

**Clause 65:    Sea Carrier Initiative Agreement.**

Owners, at the time of this charter party are not, but shall endeavour to become a signatory to same and shall advise charterers if / when they become so. Charterers confirm they are both signatories to the Sea Carrier Initiative Agreement in order to co-operate with the U.S. Customs Service in the fight against the drug menace.

**Clause 66:    Stevedore Damage.**

Stevedores to be appointed and paid by the charterers to work under the supervision of the master. Should any damage be caused to the vessel or her    fittings by the stevedores, the master has to try to let stevedores repair such damage and try to settle the matter directly with them.

The Charterers shall not be responsible for damage(s) done by the stevedores to the vessel or her fittings during the currency of this charter party unless the master advises charterers in writing within 24 hours after occurrence or before departure, whichever earlier (hidden damage excepted). The master shall endeavour to obtain written acknowledgment by the responsible parties causing the damage, however, in case master cannot manage to settle the matter directly with the stevedores or no time to repair the damage on the spot, then charterers shall utmost cooperate with owners so that the stevedores reimburse the repairing cost later on, which, if in vain, then charterers shall reimburse owners as a party who has appointed such stevedores.

The charterers shall have the liberty to redeliver the vessel without repairing the damages for which the charterers are responsible, as long as the same do not affect the vessels seaworthiness and cargo worthiness, but the charterers undertake to reimburse costs of repair against the production of repair bills by repairs or dockyard unless otherwise agreed.

Notwithstanding anything contained herein it is specifically agreed that all stevedore damages affecting vessel's class/seaworthiness shall be repaired by charterers prior to sailing from the port of occurrence at their time and expense.

**Clause 67:    Taxes.**

Taxes and/or dues and/or charges whatsoever, imposed on cargo by any local or national authorities, arising out of trade under this Charter Party to be borne by Charterers. Taxes levied by Governments other than that of Owners' domicile or vessel's flag on earnings under this Charter Party other than on the hire payable to Owners shall be for Charterers' account.

**Clause 68:    Warranties.**

To the best of Owners knowledge, the vessel; Is not blacklisted by Arab countries nor anywhere else within the agreed trading limits, and; Is eligible for bunkers in The United States of America, its territories and possessions, in accordance with directives from The United States Department of Commerce, Office of International Trade.

11

*Global Oceanic Chartering Ltd*

**Clause 69:    Watertight Hatches.**

The Owners guarantee that on vessel's delivery and throughout the currency of this Charter the vessel's hatchcovers are watertight. All hatches are to be carefully attended by the crew to prevent leakage.

The Charterers have the option to perform hose/pressure/ultrasonic or similar tests on all hatches at any time during the Charter Party.

**Clause 70:    Weather Routing.**

The Charterers may supply an Independent Weather Bureau's advice to the Master, during voyages specified by the Charterers and the Master shall comply with the reporting procedure of the Weather Bureau, however, the Master remains responsible for the safe navigation and choice of route. Alternatively Charterers have the option to instruct the Master to report daily to a Weather Bureau during the execution of the sea voyages. The Weather Bureau will subsequently produce a performance analysis report. Evidence of weather conditions shall be taken from the vessel's deck logs and Independent Weather Bureau's report. In the event of discrepancy between the deck logs and the Independent Weather Bureau's reports, the Independent Weather Bureau's reports shall be final and binding on both Parties.

**Clause 71:    Towage, Pilotage, Etc.**

The Owners authorise the Charterers, as Agents of and on behalf of the Owners and/or the vessel, to arrange and contract for any towage, pilotage or the like service on usual or customary terms and/or those terms offered or required by towing/pilotage companies employed where such services are furnished.

**Clause 72:    War Cancellation.**

In the event of war, whether declared or undeclared involving Japan or Denmark or between any two or more countries of U.S.A., C.I.S., United Kingdom, People's Republic of China, directly affecting the performance of this Charter, either Party has the right to cancel this Charter or any remaining portion thereof.

**Clause 73:**
Deleted

**Clause 74:    Year 2000 Compliance.**

"Year 2000 conformity" shall mean that neither performance nor functionality of computer systems, electronic and electro-mechanical or similar equipment will be affected by dates prior to or during the year 2000.

Notwithstanding their other rights, obligations and defences under this Charter Party including those of the Hague or Hague Visby Rules, the Owners warrant the vessel's Year 2000 conformity in so far as this has a bearing on the performance of this Charter Party.

12

*Global Oceanic Chartering Ltd*

## Clause 75:   ISM Code.

From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter and during the currency of this Charter Party, the Owners shall procure that both the vessel and "The Company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of the relevant Documents of Compliance (DOC) and Safety Management Certificate (SMC) to the Charterers. except as otherwise provided in the Charter Party, loss, damage, expense or delays caused by the failure on the part of Owners of the "Company" to comply with the ISM Code shall be for Owners' account.

## Clause 76:   Lien.

In the event that Charterers have a contractual or statutory right of lien over cargo carried on board for hire, freight, deadfreight or demurrage Owners shall co-operate with Charterers in exercising a lien over the cargo and shall retain possession of the cargo on their behalf and deal with the cargo on Charterers' instructions.

## Clause 77:   Description Clause.

m.v. brave john ex prabhu jivesh (ex spring eagle)
self trimming bulk carrier
malta flag built dec 1983-japan
kurushima dockyard no:3010
port of registry:valletta
classed abs (abs a1 bc-ams-accu), ism certified
39230 dwat on 11.20 mtrs draft
winter: 38155mt on 10.98mtrs
tropical: 40270mt on 11.42mtrs
tpc loaded: 45.87 / tpi:116.5 / light : 41.79
call sign 9 h n r 7 -  inmarsat c: 421540410 brav
e-mail: 421540410@stratosmobile.net
phone: 76361664 5 / fax:763616647
official class register no:83142421
imo:       8307076
loa/beam   188/28 mtrs
depth moulded: 15.4m
grt/nrt   22009/12589
suez grt/nrt  22779.88/19915.85
panama grt/nrt   23703.05/18106.73

*Global Oceanic Chartering Ltd*

13

Cont'd...
grain/bale 47588.89/45961.76 cu.mtrs

holdwise grain/bale capa
no1 : 8,359.34 / 7,971.60
no2 : 9,846.60 / 9,578.87
no3 :10,238.34 / 9,895.64
no4 : 9,844.73 / 9,533.50
no5 : 9,300.40 / 8,982.15
ttl :47,588.89 /45,961.76

ho/ha                   5/5 forward of bridge
hatch covers            folding type hydraulically operated
hatch sizes             #1 to 5 19.2 x 14.04 mtrs
                        #3 Floodable

ows cnfm vsls h.cvr not side opening n not side rolling
t/top clear of hoppers dimensions
nr.1  :  length    28.50 mtrs inner bulkhead corrugation
breadth Fwd 6.90 mtrs aft 18.40 mtrs
nr.2/3/4   length   28.50 mtrs inner bulkhead corrugation
breadth 18.40 mtrs
nr. 5 : length   28.50 mtrs inner bulkhead corrugation
breadth Fwd 18.40 mtrs aft 9.75 mtrs
height tt to main deck 13.80 mtrs tt to hacover 14.40 mtrs
distance waterline to top hatchcovers in light ballast:abt 11m
distance waterline to top hatchcovers in heavy ballast:abt 10.6m

cranes                  4 of 25 tons

vsl strengthened for heavy cargoes #2/4 may be empty
strength of ttp/deck'h cover
tt str.nr1-19.2, nr2-13.3 nr3-25.4 nr4-13.3 nr5-19.2 mt/mt2
deck 3.0mt/mt2

constants: 300 mts excl fw
daily fresh water consuption:8mt
fresh water capacity: 180mt
max const incl fw: 400mt
tank capacity ifo: 1400mt     mdo:120mt

speed abt 12.50k on abt 24 mt ifo (180 cst) + 2.0 mt mdo at sea
when idle abt   1.5 mt mdo /when gear working abt 2.8 mt mdo.
speed/cons described in fair weather unexceeding beaufort scale 3.
speed/cons described from seabuoy to seabuoy and vsl consumes mdo for navigating in channels and enclosed waters.

14

*Global Oceanic Chartering Ltd*

*Global Oceanic Chartering Ltd*

15

Cont'd...
master's nationality: Greek
officers and crew nationality:philippinoes.

p&lclub: west of england
h&m value: usd 10mil
h&m insurer: london +italian market via cambiaso risso of genova.

last s.survey date:sept 2003 at china - chengxi shipyard
last dd: may 2006    at piraeus

-australia hold ladders fitted
-iif: bona fide
-vsl is under present management: since 11/04/2003

owners:oresteia shipping ltd, malta
managers: p+p shipping co (hellas) s.a.
7, platonos street  -  piraeus 185 35
greece
tel:+30210-4224112/5 fax:+30210-4224119 tlx:211732 papa gr
e-mail:papanhes@otenet.gr
- all details about

ows gtee vsl is fitted for the carriage of grain in accordance with solas 1974 and amendments and
has on board approved valid grain stability plans/booklets

owners guarantee vessel is:
a) selftrimming sidk bulk carrier with eng/br aft with holds/tanktops free of obstructions suitable in        all respects for grabdischarge
b) vessel has weather tight folding hatch covers
c) vsl does not hv any centerline bulkhead/beams in way of hatches
d) vessels class is equivalent to lloyds highest
e) pls adv any detentions/psc last 12 months, also if any strandings/collisions

## Clause 78

Deleted.

**Clause 79** (Marine Growth )

If the vessel is encountering prolonged stay, minimum 30 days in a port and there is strong reason to believe that the vessel's hull has acquired excessive marine growth affecting vessel's speed / consumption due to the stay at this specific port, owners to arrange for a diver inspection. Should the result of this diver inspection indicate there is an excessive marine growth on the hull which is directly related to this specific port stay, Owners to arrange underwater scrubbing of the hull in charterers time and expense prior to vessel's departure from the port, if same can be done without unreasonable delay. If the underwater scrubbing is not available or can not be carried out at the port in question, same to be carried out in charterers time and expense in the next convenient port. Charterers agree not to claim for under performance of the vessel for the passage from the port in question until underwater scrubbing is carried out, provided under performance is directly related to the above specific port stay. The cost of the diver inspection and underwater scrubbing is to be for charterers account. Costs to be prior approved by charterers.. Owners warrant that at the time of delivery, hull is materially free from Marine Growth that would contribute to speed deficiency and/or over consumption of fuel.

**Clause 80**

**BIMCO ISPS Clause for Time Charter Parties**

91

*(a)(i) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to the Vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to the Vessel and "the Company". Upon request the Owners shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to the Charterers. The Owners shall provide the Charterers with the full style contact details of the Company Security Officer (CSO).*

*(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Owners or "the Company" to comply with the requirements of the ISPS Code or this Clause shall be for the Owners' account.*

*(b)(i) The Charterers shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and, where sub-letting is permitted under the terms of this Charter Party, shall ensure that the contact details of all sub-charterers are likewise provided to the CSO and the SSO/Master. Furthermore, the Charterers shall ensure that all sub-charter parties they enter into during the period of this Charter Party contain the following provision:*

*"The Charterers shall provide the Owners with their full style contact details and, where sub-letting is permitted under the terms of the charter party, shall ensure that the contact details of all sub-charterers are likewise provided to the Owners".*

*(ii) Except as otherwise provided in this Charter Party, loss, damage, expense or delay, excluding consequential loss, caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account.*

*(c) Notwithstanding anything else contained in this Charter Party all delay, costs or expenses whatsoever arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.*

*(d) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.*

**(GENERAL AVERAGE AND THE NEW JASON CLAUSE)**

General Average shall be payable according to the York/Antwerp Rules, 1974 as amended 1990, but where the adjustment is made in accordance with the law and practice of the United States of America, the following clause shall apply:-

**( NEW JASON CLAUSE )**

In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statue, contract or otherwise, the goods Shippers, Consignees or Owners of the goods shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods.

17

*Global Oceanic Chartering Ltd*

If a salving ship is Owned or Operated by the Carrier, salvage shall be paid for as fully as such salving ship or ships belonged to strangers. Such deposit as the Carrier or his Agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, Shippers, Consignees or Owners of the goods to the Carrier before delivery, and Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

### (BOTH TO BLAME COLLISION CLAUSE)

If the liability for any collision in which the vessel is involved while performing this Charter Party fails to be determined in accordance with the Laws of the United States of America, the following clause shall apply:

"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner, Pilot or the Servants of the Carrier in the navigation or in the Management of the ship, the Owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of the said goods, paid or payable by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or Carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contract."

And Charterers shall procure that all Bills of Lading issued under this Charter Party shall contain the same clause.

*Global Oceanic Chartering Ltd*

19

**(P and I CLUB OIL BUNKERING CLAUSE)**

The vessel shall have the liberty as part of the contract voyage to proceed to any port or ports at which bunker oil is available for the purpose of bunkering at any stage of the voyage whatsoever and whether such ports are on or off the direct and/or customary route or routes between any of the ports of loading and discharge named in this Charter Party and may there take oil bunkers in any quantity at the discretion of Owners even to the full capacity of fuel tanks and deep tanks and any other compartment in which oil can be carried whether such amount is or is not required for the Chartered voyage.

**BIMCO STANDARD WAR RISKS CLAUSE FOR TIME CHARTERS, 1993**
**Code name: "CONWARTIME 1993".**

For the purpose of this Clause, the words:

"Owners" shall include the Ship Owners, Bareboat Charterers, Disponent Owners, Managers or other Operators who are charged with the Management of the vessel, and the Master; and

"War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (Whether imposed against all vessels or imposed selectively against vessels or certain flags or Ownership, or against certain cargoes or Crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, Crew or other persons on board the Vessel.

The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, Crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

The Vessel shall not be required to load contraband cargo or to pass through any blockades, whether such blockade be imposed on all vessels, or is imposed selectively in any way    whatsoever against vessels of certain flags or Ownership, or against certain cargoes or Crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent right of search and/or confiscation.

(A) The Owners may affect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the Crew and their Protection and Indemnity Risks), and the premiums and/or calls therefore shall be for their account. If the Underwriters of such insurance should require payment of premiums and/or

calls because, pursuant to the Charterers' order the Vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

If the Owners becomes liable under the terms of employment to pay to the Crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

The vessel shall have liberty:

To comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power of compel compliance with their order or directions; to comply with the order, directions or recommendations of any war risks Underwriters who have the authority to give the same under the terms of the war risks insurance; to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement; to divert and discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

To divert and call at any other port to change the Crew or any part thereof of other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

If in accordance with their rights under the foregoing provisions of this Clause, the Owners    shall refuse to proceed to the loading or discharging ports, or any one of more of them, they    shall immediately inform the Charterers.

No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfillment of this Charter Party.

INT GROUP A

**STANDARD FORM LETTER OF INDEMNITY TO BE GIVEN IN RETURN FOR DELIVERING CARGO WITHOUT PRODUCTION OF THE ORIGINAL BILL OF LADING**

To :            [insert name of Owners]                      [insert date]
                The Owners of the [insert name of ship]
                [insert address]

Dear Sirs

Ship:           [insert name of ship]

Voyage:         [insert load and discharge ports as stated in the bill of lading]

Cargo:          [insert description of cargo]

Bill of lading: [insert identification numbers, date and place of issue]

The above cargo was shipped on the above ship by [insert name of shipper] and consigned to [insert name of consignee or party to whose order the bill of lading is made out, as appropriate] for delivery at the port of [insert name of discharge port stated in the bill of lading] but the bill of lading has not arrived and we, [insert name of party requesting delivery], hereby request you to deliver the said cargo to [insert name of party to whom delivery is to be made] at [insert place where delivery is to be made] without production of the original bill of lading.

In consideration of your complying with our above request, we hereby agree as follows :-

7.      To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability, loss, damage or expense of whatsoever nature which you may sustain by reason of delivering the cargo in accordance with our request.

7.      In the event of any proceedings being commenced against you or any of your servants or agents in connection with the delivery of the cargo as aforesaid, to provide you or them on demand with sufficient funds to defend the same.

7.      If, in connection with the delivery of the cargo as aforesaid, the ship, or any other ship or property in the same or associated ownership, management or control, should be arrested or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel (whether by virtue of a caveat being entered on the ship's registry or otherwise howsoever), to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property or to remove such interference and to indemnify you in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest or detention or such interference, whether or not such arrest or detention or threatened arrest or detention or such interference may be justified.

21

*Global Oceanic Chartering Ltd*

*Global Oceanic Chartering Ltd*

22

7.    If the place at which we have asked you to make delivery is a bulk liquid or gas terminal or facility, or another ship, lighter or barge, then delivery to such terminal, facility, ship, lighter or barge shall be deemed to be delivery to the party to whom we have requested you to make such delivery.

7.    As soon as all original bills of lading for the above cargo shall have come into our possession, to deliver the same to you, or otherwise to cause all original bills of lading to be delivered to you, whereupon our liability hereunder shall cease.

7.    The liability of each and every person under this indemnity shall be joint and several and shall not be conditional upon your proceeding first against any person, whether or not such person is party to or liable under this indemnity.

7.    This indemnity shall be governed by and construed in accordance with English law and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the High Court of Justice of England.

Yours faithfully
For and on behalf of
*[insert name of Requestor]*
The Requestor

.........................................
Signature

INT GROUP B

**STANDARD FORM LETTER OF INDEMNITY TO BE GIVEN IN RETURN FOR DELIVERING CARGO AT A PORT OTHER THAN THAT STATE D IN THE BILL OF LADING**

To :        [insert name of Owners]                                    [insert date]
            The Owners of the [insert name of ship]
            [insert address]

Dear Sirs

Ship:         [insert name of ship]

Voyage:       [insert load and discharge ports as stated in the bill of lading]

Cargo:        [insert description of cargo]

Bill of lading :   [insert identification number, date and place of issue]

The above cargo was shipped on the above ship by [insert name of shipper] and consigned to [insert name of consignee or party to whose order the bill of lading is made out, as appropriate] for delivery at the port of [insert name of discharge port stated in the bill of lading] but we, [insert name of party requesting substituted delivery], hereby request you to order the ship to proceed to and deliver the said cargo at [insert name of substitute port or place of delivery] against production of at least one original bill of lading.

In consideration of your complying with our above request, we hereby agree as follows :-

5.    To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability, loss, damage or expense of whatsoever nature which you may sustain by reason of the ship proceeding and giving delivery of the cargo against production of at least one original bill of lading in accordance with our request.

5.    In the event of any proceedings being commenced against you or any of your servants or agents in connection with the ship proceeding and giving delivery of the cargo as aforesaid, to provide you or them on demand with sufficient funds to defend the same.

5.    If, in connection with the delivery of the cargo as aforesaid, the ship, or any other ship or property in the same or associated ownership, management or control, should be arrested or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel (whether by virtue of a caveat being entered on the ship's registry or otherwise howsoever), to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property or to remove such interference and to indemnify you in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest or detention or such interference, whether or not such arrest or detention or threatened arrest or detention or such interference may be justified.

23

5. The liability of each and every person under this indemnity shall be joint and several and shall not be conditional upon your proceeding first against any person, whether or not such person is party to or liable under this indemnity.

5. This indemnity shall be governed by and construed in accordance with English law and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the High Court of Justice of England.

Yours faithfully

For and on behalf of
[insert name of Requestor]
The Requestor

......................................................
Signature

24

*Global Oceanic Chartering Ltd*

**INT GROUP C**

---

**STANDARD FORM LETTER OF INDEMNITY TO BE GIVEN IN RETURN FOR DELIVERING CARGO AT A PORT OTHER THAN THAT STATED IN THE BILL OF LADING AND WITHOUT PRODUCTION OF THE ORIGINAL BILL OF LADING**

To :    [insert name of Owners]      [insert date]
The Owners of the [insert name of ship]
[insert address]

Dear Sirs

Ship:    [insert name of ship]

Voyage:    [insert load and discharge ports as stated in the bill of lading]

Cargo:    [insert description of cargo]

Bill of lading:    [insert identification number, date and place of issue]

The above cargo was shipped on the above vessel by [insert name of shipper] and consigned to [insert name of consignee or party to whose order the bills of lading are made out, as appropriate] for delivery at the port of [insert name of discharge port stated in the bills of lading] but we, [insert name of party requesting substituted delivery], hereby request you to order the vessel to proceed to and deliver the said cargo at [insert name of substitute port or place of delivery] to [insert name of party to whom delivery is to be made] without production of the original bill of lading.

In consideration of your complying with our above request, we hereby agree as follows :-

8. To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability, loss, damage or expense of whatsoever nature which you may sustain by reason of the ship proceeding and giving delivery of the cargo in accordance with our request.

8. In the event of any proceedings being commenced against you or any of your servants or agents in connection with the ship proceeding and giving delivery of the cargo as aforesaid, to provide you or them on demand with sufficient funds to defend the same.

8. If, in connection with the delivery of the cargo as aforesaid, the ship, or any other ship or property in the same or associated ownership, management or control, should be arrested or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel (whether by virtue of a caveat being entered on the ship's registry or otherwise howsoever), to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property or to remove such interference and to indemnify you in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest or detention or such interference, whether or not such arrest or detention or threatened arrest or detention or such interference may be justified.

*Global Oceanic Chartering Ltd*

8.  If the place at which we have asked you to make delivery is a bulk liquid or gas terminal or facility, or another ship, lighter or barge, then delivery to such terminal, facility, ship, lighter or barge shall be deemed to be delivery to the party to whom we have requested you to make such delivery.

8.  As soon as all original bills of lading for the above cargo shall have come into our possession, to deliver the same to you, or otherwise to cause all original bills of lading to be delivered to you.

8.  The liability of each and every person under this indemnity shall be joint and several and shall not be conditional upon your proceeding first against any person, whether or not such person is party to or liable under this indemnity.

8.  This indemnity shall be governed by and construed in accordance with English law and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the High Court of Justice of England.

Yours faithfully
For and on behalf of
[insert name of Requestor]
The Requestor

.........................................
Signature

*Global Oceanic Chartering Ltd*