# Exhibit B

# DECLARATION OF ERNEST TAI MING YANG

I, ERNEST TAI MING YANG of Messrs Dibb Lupton Alsop, 29th Floor Bank of China Tower, 1 Garden Road, Central, Hong Kong Special Administrative Region, MAKE OATH AND SAY AS FOLLOWS:-

1. I am a solicitor of the Supreme Court of England and Wales and of the High Court of Hong Kong. I am employed as a senior associate by Dibb Lupton Alsop at the above address. Dibb Lupton Alsop is a law firm and serves as the Hong Kong office of DLA Piper, a global organisation with offices worldwide (including in the UK and the USA).

2. A copy of my abbreviated Curriculum Vitae (resume) is at Exhibit "1".

3. I have been requested by the lawyers acting for Messrs Shanghai Fareast International Shipping Agency Co Ltd ("**SA**"), Chu Beiping & Co Law Office ("**CBP**"), to provide an Declaration in order to assist the Court in New York. The purpose of the Declaration is to set out my evidence on the English law position on several issues to the extent the Court in New York should find English law to be applicable to issues before it.

4. The information based on which I have made this Declaration has been supplied by CBP. I believe the matters in this Declaration are true to the best of my knowledge and that the opinions I have expressed are correct.

**Background**

5. I was informed by CBP that the background facts are as follows:-

    (1) A charterparty was entered into between Oresteia Shipping Ltd as Owners (the "**Owners**") and Yong He Shipping Ltd as Charterers (the "**Charterers**") of the "BRAVE JOHN" (the "**Vessel**") for a time charter trip (the "**Charterparty**"). I was told that the Charterparty was based on the New York Produce Exchange (NYPE) Form 1946, with rider clauses, which I understand to be the most popular form used for time charterparties in the world today.

    (2) SA were appointed as Charterers' agents under the Charterparty.

    (3) I was told that the Charterparty makes the Master the Charterers' agent in respect of employment and agency, and provides that the Master is to sign or when required by Charterers to authorise the Charterers' or their agents to sign Bills of Lading on his behalf for cargo as presented, but in accordance with Mate's Receipts.

1

(4) By a letter from the Master after the Charterparty was concluded (the "**Master's Letter**"), the Master purported to impose certain conditions with respect to the issuance of bills of lading not contained in the Charterparty. These included a requirement to insert a clause into any bills of lading issued permitting the Owners to exercise liens over the cargo, and a prohibition on issuing freight prepaid bills of lading.

(5) Bills of lading issued under the Charterparty with cargoes loaded in Shanghai, China for two ports of discharge in Europe, Sagunto, Spain and La Spezia, Italy (the "**Bills of Lading**"), some of which were marked "freight prepaid".

6. I have been informed that electronic fund transfers belonging to SA have been attached in New York under the "Rule B" procedure by a company called Navision Shipping Co A/S ("**Navision**"). I have no knowledge of the role of Navision, and will not comment on this.

**Question 1    Do Charterers have the freedom pursuant to the terms of the Charterparty to issue Bills of Lading in the form and wording of their choice without constraint?**

7. If a charterparty obliges the master to sign bills of lading "*as presented*", as stated at paragraph 5(3) above, which is in any event reflective of the standard type of wording contained in clause 8 of an unamended NYPE 1946, then the master is required to sign whatever bills of lading a charterer may present to him, provided that the bills do not contain "*extraordinary terms or terms manifestly inconsistent with the charter-party*"[1].

8. Most terms that are not extraordinary, and which do not make the bill of lading manifestly inconsistent with the charterparty. Masters are therefore obliged to sign bills of lading even where, for example, they did not contain a lien clause for the purpose of protecting a shipowner's right of lien[2], or where they were marked freight prepaid[3].

9. The principle enshrined in the cases is that a charterer should be allowed a huge degree of freedom, under a time charterparty, to utilise the vessel commercially to maximise his profit. Provided that the use of the vessel is not extraordinary or manifestly inconsistent with the charterparty, the shipowner and his servants (including the master) are obliged to comply with the charterer's orders. If losses arise, then the shipowner can rely on his implied indemnity from the charterer to recover such losses.

---

[1] *The Berkshire* [1974] 1 Lloyd's Rep 185.
[2] *The Anwar Al Sabar* [1980] 2 Lloyd's Rep 261.
[3] *The Nanfri* [1979] 1 Lloyd's Rep 201.

10. In the circumstances, Charterers in this case are entitled, under the terms of the Charterparty, to issue the Bills of Lading without any lien clause and without having them marked freight prepaid. This is so despite the Master's attempt to outline further demands in respect of the Bills of Lading in the Master's Letter.

**Question 2    Do Charterers have the right to issue the Bills of Lading that were marked freight prepaid under the Charterparty? If so, then did the Master have any entitlement to prohibit the issue of such bills in his Letter of Authorisation?**

11. For the reasons already stated, and specifically dealt with in leading case of *The Nanfri*[4], the English law position is that Charterers have the right to issue the Bills of Lading marked "freight prepaid".

12. Even if the issuance of the freight prepaid Bills of Lading may prejudice the Owners' right of lien under the Charterparty, his remedy would be to rely on his right to an implied indemnity against the Charterers pursuant to clause 8 of the Charterparty.

**Question 3    Was the Charterparty incorporated into the Bills of Lading on the Congenbill 94 Form?**

13. Clause 1 on the back of a standard Congenbill 94 form say as follows:-

    "*All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the law and Arbitration Clause, are herewith incorporated.*"

14. There is a space at the front of the Bills of Lading where the date of the charterparty intended to be incorporated should be filled in. If a date has been filled in, then it will be easy to identify the charterparty intended to be incorporated.

15. However, even if there was a failure to identify the date of the Charterparty, this is not, itself, fatal to the incorporation process[5]. The task will simply become for the Court to identify which charterparty (if more than one) is most closely connected to the bill of lading and would therefore be incorporated. There should obviously be no problem if there is only one charterparty, which seems to be the case here, in which case that one should be incorporated.

---

[4] [1979] 1 Lloyd's Rep 201.
[5] *The San Nicholas* [1976] 1 Lloyd's Rep 8 ; *The SLS Everest* [1981] 2 Lloyd's Rep 389 ; *The Ikariada* [1999] 2 Lloyd's Rep 365.

3

16. As to the terms which are incorporated, the Bills of Lading do not incorporate all of the provisions in the Charterparty, but only those which are germane to the subject matter of the Bills of Lading, e.g. to the shipment, carriage and delivery of the goods[6]. It has been decided that charterparty lien clauses are adequately germane and can be incorporated[7].

17. As for any law and arbitration clauses in the Charterparty, although they are not sufficient germane to be incorporated using general words, there is a reference in clause 1 of the Congenbill 94 form, which enables any law and arbitration clause in the Charterparty to be incorporated into the Bills of Lading.

**Question 4** **Although there is no obligation for Charterers to do so under the Charterparty or under English law, if the Bills of Lading incorporated the Charterparty, what, if any, lien rights would the Owners have?**

18. The cargo was, as I understand from CBP, shipped by a multiplicity of shippers who shipped and sold the cargo to receivers in Spain and Italy. The cargo was therefore not owned by the Charterers. Because the cargo was owned at all relevant times by third parties and not Charterers, there is an issue, under English law, as to whether Owners are entitled to exercise a lien on cargoes owned by third parties, which has not been finally and conclusively determined[8].

19. As indicated, Charterers are entitled under the Charterparty and English law to issue freight prepaid Bills of Lading in this case. Putting that and the question aside, under English law, if bills are marked freight prepaid, then as against an innocent third party (e.g a receiver), this marking will constitute an estoppel which prevents the shipowner from exercising his lien over the cargo. However, this estoppel does not operate against the shipper if freight has not in fact been paid[9].

20. The situation is different with respect to bills marked freight collect. As to such bills of lading, and again putting aside the point that Charterers have no obligation to provide lien protection to Owners, there is no prohibition under English law to Owners exercising a lien on the goods carried under such bills. Again such a lien arises by virtue of the clause 18 lien provision in the Charterparty, which would be incorporated into the Bills of Lading.

---

[6] *The Annefield* [1971] 1 Lloyd's Rep 1.
[7] *The Miramar* [1983] 2 Lloyd's Rep 319.
[8] Compare *The Agios Giorgis* [1976] 2 Lloyd's Rep 192 (no right to lien cargo owned by a third party) and *The Aegnoussiotis* [1977] 1 Lloyd's Rep 268 (which hold the opposite). They are conflicting decisions of the first instance English Court. There have been arbitration decisions favouring the latter over the former, but they are non-binding.
[9] *Cho Yang Shipping v. Coral* [1997] 2 Lloyd's Rep 641.

I state under penalty of perjury of the laws of the United States that the foregoing is true to the best of my knowledge and belief and that the opinions I have expressed are correct.

_____
Ernest Tai Ming Yang, Dibb Lupton Alsop

Executed on:   January 29, 2008
               HongKong, China

# DECLARATION OF ERNEST TAI MING YANG

# "EXHIBIT 1"

**ABBREVIATED CURRICULUM VITAE**

**ERNEST TAI MING YANG**

Dibb Lupton Alsop
29/F Bank of China Tower
1 Garden Road
Hong Kong

Tel:   +852 2103 0808
Dir:   +852 2103 0768
Fax:   +852 2810 1345
Email: ernest.yang@dlapiper.com

Date of Birth:   5 July 1977

**Experience**

| | |
|---|---|
| 1998 | Graduated from University College London with Upper Second Class Honours in Law (LLB) |
| 1999 | Completed the Legal Practice Course at College of Law, London |
| 1999-2005 | Practised law (shipping and trade litigation) at the London office of Holman Fenwick & Willan as solicitor and then solicitor advocate |
| 2005-2007 | Practised law (shipping and trade litigation) at the Hong Kong office of Holman Fenwick & Willan as solicitor advocate |
| 2007-present | Practised law (litigation and regulatory) at the Hong Kong office of Dibb Lupton Alsop as associate and then senior associate. |

**Publications - Books**

| | |
|---|---|
| 2002 | Evidence - Published by the Law Press, China (co-authored with Mr. Philip Yang) |
| 2006 | Arbitration - Published by the Law Press, China (co-authored with Mr. Philip Yang and Mr. Danny Mok) |
| 2007 | Time Charter - Published by the Dalian Maritime Press |

## Publications - Journals and Articles

Written numerous papers in publications including the Journal of Business Law, Arbitration (Journal of the Chartered Institute of Arbitrators), Maritime Advocate, Asian Dispute Review and Journal of International Maritime Law.

## Speaking Engagements

Regular speaker at international conferences including International Congress of Maritime Arbitrators and International Conference on Maritime Law. Gave numerous in-house seminars to client companies such as Cosco and Sinotrans, as well as universities such as the Shanghai Maritime University.

## Other Engagements

| | |
|---|---|
| 2006 | Member of the Topics & Agenda Committee of the International Congress of Maritime Arbitrators 2007 |
| 2007 | Executive Committee Member of the Marine Insurance Club |