UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NAVISION SHIPPING COMPANY A/S,                    :
                                                  :
                        Plaintiff,                :
                                                  :
            against-                              :
                                                  :     07 Civ. 9517(DC)
YONG HE SHIPPING (HK) LTD., PROSPER               :
SHIPPING LIMITED, JIANGSU FING AGENCY             :
LTD., JIANGSU FAREAST INTERNATIONAL               :
SHIPPING AGENCY LTD., THE OLD EASTERN             :
MEDITERRANEAN CO SA, CHINA MARINE                 :
SHIPPING AGENCY TIANJIN COMPANY LTD.,             :
LIANYUNGANG FAREAST INTERNATIONAL                 :
SHIPPING AGENCY CO. LTD., and SHANGHAI            :
FAREAST INTERNATIONAL SHIPPING                    :
AGENCY CO. LTD. a/k/a FEISA,                       :
                                                  :
                        Defendants.               :
------------------------------------------------------------------X

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS CLAIM AND
ATTACHMENTS AGAINST SHANGHAI FAREAST
INTERNATIONAL SHIPPING AGENCY CO. LTD.

NOURSE & BOWLES, LLP
Attorneys for Defendant
SHANGHAI FAREAST INTERNATIONAL
SHIPPING AGENCY CO. LTD.
One Exchange Plaza
At 55 Broadway
New York, New York 10006
(212) 952-6200

# TABLE OF CONTENTS

Introduction ................................................................................................ 2

Summary of Facts and Claims ...................................................................... 2

   A.  Underlying Facts ................................................................................ 2

   B.  Plaintiff's Claims and Amended Complaints .......................................... 5

POINT I
PLAINTIFF HAS NO VALID PRIMA FACIE ADMIRALTY CLAIM
AGAINST SHANGHAI AGENCY ............................................................... 9

   A.  Plaintiff Has Not and Cannot Plead a Valid Prima Facie Claim
       Against Shanghai Agency Since Shanghai Agency Acted at All Times
       as An Agent for Its Disclosed Principal, Yong He ................................ 9

   B.  Plaintiff Has Not and Cannot Plead a Valid Prima Facie Maritime Claim
       Against Shanghai Agency under Maritime Law................................... 11

      1.  The Bills Were Issued in Conformity with the Charter and
         Were Not Issued "Wrongfully".......................................................... 11

      2.  The Bills, in Fact, Were Issued in Conformity with Mates' Receipts .............. 12

      3.  There Is No Right of the Owner under the Charter or English Law
         to Bar Freight Pre-Paid Bills of Lading or to Require Lien Protection ............. 13

      4.  Not All Bills Were Marked "Freight Pre-Paid" and Hence Nothing
         Barred Owner from Taking Action Respecting Such Bills............................... 14

      5.  There is No Clear Right to Lien Cargo Owned by a Third Party ..................... 14

      6.  The Bills Incorporated the Charter................................................... 15

   C.  Plaintiff, Navision Has Not Sued in an "Appropriate Venue" and,
       in Fact, Has No Standing to Do So. ................................................... 16

POINT II
PLAINTIFF HAS NO "PLAUSIBLE" CLAIM AGAINST SHANGHAI AGENCY
ON WHICH RELIEF MAY BE GRANTED ................................................. 17

POINT III
IN THE ALTERNATIVE, SHANGHAI AGENCY IS ENTITLED
TO SUMMARY JUDGMENT RESPECTING PLAINTIFF'S CLAIM
UNDER RULE 12(b)(6) ................................................................................ 20

POINT IV
PLAINTIFF'S CLAIM IS CONTINGENT AND HENCE PREMATURE AND
CANNOT PROVIDE THE BASIS FOR A MARITIME ATTACHMENT .................... 23

FINAL POINT ........................................................................................... 25

Conclusion................................................................................................. 25

NOURSE & BOWLES, LLP
Attorneys for Defendant
SHANGHAI FAREAST INTERNATIONAL
 SHIPPING AGENCY CO. LTD.
One Exchange Plaza
At 55 Broadway
New York, New York 10006


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
NAVISION SHIPPING COMPANY A/S,                        :
                                                      :
                        Plaintiff,                    :
                                                      :
                against-                              :
                                                      :        07 Civ. 9517(DC)
YONG HE SHIPPING (HK) LTD., PROSPER                   :
SHIPPING LIMITED, JIANGSU FING AGENCY                 :
LTD., JIANGSU FAREAST INTERNATIONAL                   :
SHIPPING AGENCY LTD., THE OLD EASTERN                 :
MEDITERRANEAN CO SA, CHINA MARINE                     :
SHIPPING AGENCY TIANJIN COMPANY LTD.,                 :
LIANYUNGANG FAREAST INTERNATIONAL                     :
SHIPPING AGENCY CO. LTD., and SHANGHAI                :
FAREAST INTERNATIONAL SHIPPING AGENCY                 :
CO. LTD. a/k/a FEISA,                                 :
                                                      :
                        Defendants.                   :
---------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CLAIM AND ATTACHMENTS AGAINST SHANGHAI FAREAST INTERNATIONAL SHIPPING AGENCY CO. LTD.

## Introduction

This memorandum of law is submitted on behalf of defendant, Shanghai Fareast International Shipping Agency Co. Ltd. (hereinafter "Shanghai Agency") who appears by restricted appearance in accordance with Supplemental Admiralty Rule E(8) of the Federal Rules of Civil Procedure ("FRCP") in support of its motion under Rule E(4)(f) of the Supplemental Admiralty Rules to dismiss the claim and attachments against it since the Second Amended Complaint fails to state a claim on which relief can be granted under Rule 12(b)(6) of the FRCP. Under FRCP Rule 12(b)(6) the Court can also decide the case on summary judgment and we have therefore also addressed dismissal on this basis. The Advisory Committee Notes to the 1995 Amendments to Supplemental Admiralty Rule E make it clear that any "deficiency in the proceedings" or the complaint may be raised, inter alia, at a Supplemental Admiralty Rule E(4)(8) hearing. These notes provide:

> Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to the shipowner a prompt post-seizure hearing at which he can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings.

## Summary of Facts and Claims

### A.    Underlying Facts

On or about July 12, 2007 a charter party was entered into between Oresteia Shipping Ltd. (hereinafter "Oresteia"), as owner of the vessel M/V BRAVE JOHN (hereinafter the "Vessel") and Yong He Shipping, Ltd., as charterer (hereinafter

"Charterer" or "Yong He"). Although plaintiff, Navision Shipping Co. A/S ("Navision") claims in its complaints to be the owner under that charter, its role remains unclear since the charter party and fixture notes refer only to Oresteia as the "Owner". (see Exhibits "A(2)" and "E(1)" to Paré affidavit). Ship registries also show Oresteia listed as the owner (see Exhibit "D" to Paré affidavit). In any event, to simplify the discussion, the "owner" under the charter party is hereinafter referred to as "Owner" and the issue concerning Navision is separately discussed at Point I (C) at page 16.

The charter party is governed by English law (Paré Exhibit "2", clause 39) and is subject to arbitration in London (Paré Exhibit "2", clause 17). The charter specifically provides in clause 42:

> Charterers' Bills of lading to be used if required by Charterers
> . . .
> Charterers to make *best endeavors* to incorporate a lien clause in all bill(s) of lading issued under this Charter Party. *Charterers to accept all consequences that might result from charterers and/or their agents not adhering strictly to their authority.*
>
> (emphasis added)

By reason of clause 8 of the charter, the Master is the *Charterer's* agent respecting employment and agency and the Master "is to sign or when required by Charterers, authorize the Charterers or their agent to sign Bills of Lading on his behalf for cargo as presented, in conformity with Mates receipts." As will be seen, for all relevant purposes, the bills were signed in conformity with Mates' receipts.

Shanghai Agency was specifically appointed to act as Charterer's, Yong He's,
agent at the port of loading in Shanghai, China by Yong He's managing agent, Old
Eastern Mediterranean Co. SA ("OEM").

Despite the above quoted clauses in the charter which specifically allowed
Charterer to use its own bills of lading and required the Master to be the charterer's agent
as regards employment and agency and required the Master to sign or authorize
Charterer's agent to sign bills of lading "as presented, in conformity with Mate's
receipts", at the port of loading the Master purported to set down a host of new, post-
charter conditions for the signing of bills of lading. These demands were *inconsistent*
with the rights granted in the charter. For details of these purported restrictions, see
Exhibit "A(5)" to Paré affidavit. Shanghai Agency, who at all times acted solely as the
Charterer's agent, simply signed the Master's letter demands with the notation "RCVD
THIS LETTER".

In the latter part of August, 2007 various shippers identified in Mate's receipts and
bills of lading as Hangsu Yelong Steel Pipe Ltd., Wuyi Yulong Precise Steel Pipe Co.
Ltd., Jiangsu Chengde Steel Tube Share Co. Ltd., Changshu Xingdao Advanced Building
Material Co., Ltd., Ningbo Ningshing International Inc., Hube: Xin Yegan Co., Ltd. and
Jiangyin Xing Cheng Special Steel Works Co., Ltd., shipped various steel cargoes aboard
the M/V BRAVE JOHN at Shanghai for shipment to receivers in Spain and Italy pursuant
to bills of lading thereafter issued by Shanghai Agency.

There are several things to note about the issuance of the bills in this case. First,
Shanghai Agency acted solely on behalf of its disclosed agent, Charterer, Yong He. In

4

fact, when it came to issuing the bills of lading, in each case Shanghai Agency only issued bills of lading after receiving specific authorization to do so from Charterer through its managing agent, OEM. (see Exhibit "A", paragraph 4 to Paré affidavit). Further, since the charter party did not require freight prepaid bills of lading and, in fact, specifically authorized Charterer to use its own bills, the bills in this case were not "wrongfully issued" as is alleged. Furthermore, the bills of lading were, for all relevant purposes, issued in conformity with Mates' receipts, as outlined below (see Exhibits "A(4A) and 4(B)" of Pare affidavit showing copies of bills and Mates' receipts) Finally, the bills of lading were issued on the standard BIMCO "CONGEN BILL" form which specifically provides, on the reverse side:

>    (1)    All terms and conditions, liberties and exceptions of
>    the Charter Party, dated as overleaf, including the law
>    and Arbitration Clause, are herewith incorporated.

As outlined herein and in the affidavit of Ernest Tai Ming Yang, attached as Exhibit "B" to the Paré affidavit, by this language the bills duly incorporated relevant provisions of the Owner/Yong He charter party.

## B.    Plaintiff's Claims and Amended Complaints

On or about October 25, 2007, Plaintiff filed a complaint, seeking process of maritime attachment against Yong He in the claimed amount of $2,254,227.20 which includes claims for estimated attorneys' fees and expenses and arbitration costs estimated in the amount of $250,000 in London. The balance of the claim is said to be for "hire due" by Yong He under the charter in the amount of $1,677,310.42 and interest on this amount for 3 years at 6% for an additional $327,916.78. A copy of the hire "recap" and

the Owner/Yong He charter party fixture notes are attached to the complaint (and subsequent amended complaints).

On or about November 13, 2007 Plaintiff filed an Amended Complaint and added, as defendants, a number of entities Plaintiff claimed "made hire payments under other charter parties on Yong He's behalf (¶18), "are now, or will soon be, holding assets belonging to Yong He, or vice versa" (¶19), that these are "parties and/or joint ventures" (¶20) and that they are "affiliated companies such that" they "are now or soon will be, holding assets belong to Yong He, or vice versa" (¶21). The basis for such claims is unknown.

Whether these complaints resulted in any attachments in favor of Plaintiff is unknown to Shanghai Agency.

On or about December 17, 2007 Plaintiff filed a Second Amended Complaint. (Second Amended Complaint and its exhibits are attached to the Paré affidavit as Exhibit "6"). This time, Plaintiff added new defendants, the Old Eastern Mediterranean Co. SA, China Marine Shipping Agency, Tianjin Company Ltd.. Lianyungang Fareast International Shipping Agency Co. Ltd. and Shanghai Agency. As to Shanghai Agency, the entire claim against it is specified in the Fifth Cause of Action which provides, in full, as follows:

## FIFTH CAUSE OF ACTION

52.    Paragraphs One through Three are hereby incorporated as Paragraphs Fifty Two through Fifty Four and made part hereof as if fully set forth at length herein.

**[THERE ARE NO PARAGRAPHS NUMBERED 53 through 54]**

55.     By a charter party dated July 7, 2007, Plaintiff chartered the Vessel to Yong He for the carriage of cargo.

56.     Shanghai Fareast wrongfully and unlawfully issued and released pre-dated clean on board bills of lading, and also provided the same with the wording "freight prepaid" which was clearly inconsistent with the master's authorization to sign the bills of lading.

57.     As a result of Shanghai Fareast's unlawful authorization of the bills of lading, Plaintiff has suffered losses in the principal amount of $2,044,357.18, exclusive of interest, costs and attorneys fees.

58.     Despite due demand, *Lianyungang* has failed and/or refused to pay the sum due and owing to Plaintiff.

59.     Thus, in due course, Plaintiff will commence proceedings against *Lianyungang* in an appropriate venue to recover those amounts due under its claim.

60.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party in such proceedings.  As best as can now be estimated, Plaintiff expects to recover the following amounts in the Final Arbitration Award(s) and/or Judgment:

| | | |
|---|---|---:|
| A. | Principal claim: | $2,044,357.18 |
| B. | Interest on claims: | |
| | Three years at 6% compounded quarterly | 399,913.41 |
| C. | Estimated attorneys' fees and expenses | 200,000.00 |
| D. | Estimated arbitration costs | 50,000.00 |
| | | |
| TOTAL | | $2,694,270.59 |

(emphasis added)

As can be seen from even a quick reading, these pleadings are sketchy at best and erroneous in places. One assertion is that the bills were issued "predated". The bills are, for the most part, dated August 22, 2007, the date when the goods were loaded on board the vessel and the vessel, in fact, left Shanghai. Any discrepancy in dates with respect to one or two of the bills is entirely irrelevant to any conceivable claim against Shanghai Agency on the matters alleged. It is also claimed that the bills were marked "freight prepaid". In fact, only some bills were marked "freight prepaid"; others were marked "freight collect". Further, Plaintiff's complaint fails to explain why marking *some* bills "freight prepaid" should establish a valid claim against Shanghai Agency and a loss to Plaintiff. Instead, Plaintiff mysteriously concludes "Lianyungang [apparently an erroneous reference to another defendant] has failed and/or refused to pay the amounts due and owing to Plaintiff." Plaintiff concedes it has not sued Shanghai Agency elsewhere but asserts, "in due course, Plaintiff will commence proceedings against it." Hence, any funds attached now against Shanghai Agency, according to Plaintiff's Second Amended Complaint, will simply remain attached with no resolution of Plaintiff's farfetched claim against Shanghai Agency in sight until Plaintiff chooses to begin a case in "an appropriate venue." Although Plaintiff has no arguable arbitration agreement with Shanghai Agency, Plaintiff also gratuitously asserts a claim and seeks an attachment against Shanghai Agency which includes $250,000 for estimated attorneys' fees (without indicating whether these are, in fact, recoverable in the "appropriate forum") and estimated arbitration costs despite the lack of an arbitration agreement between Shanghai Agency and Plaintiff. The shortcomings of these pleadings, however, is overshadowed

by the fact that neither they nor any possible pleadings can state a valid prima facie claim in admiralty or otherwise against Shanghai Agency as outlined below.

Insofar as is presently known, Plaintiff has attached the following amounts totaling $1,461,992.39:

1) $1,000,000 at the Bank of China on or about December 24, 2007.
2) $8,024 with Citibank on or about December 31, 2007.
3) $187,175.87 by Deutsche Bank on or about January 3, 2008
4) $51,492 at Citibank on or about January 8, 2008.
5) $215,300.52 at Citibank on or about January 15, 2008.

## POINT I

### PLAINTIFF HAS NO VALID PRIMA FACIE ADMIRALTY CLAIM AGAINST SHANGHAI AGENCY

The very first requirement for Rule B process of maritime attachment and garnishment is that Plaintiff have "a valid prima facie admiralty claim against the defendant", Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Plaintiff has no such valid prima facie admiralty claim against Shanghai Agency for reasons outlined below.

**A.    Plaintiff Has Not and Cannot Plead a Valid Prima Facie Claim Against Shanghai Agency Since Shanghai Agency Acted at All Times as An Agent for Its Disclosed Principal, Yong He**

Shanghai Agency was an agent for a disclosed principal, the charterer, Yong He, and acted at all times solely in this capacity. In fact, Shanghai Agency specifically acted on Yong He's instructions with regard to issuance of each of the bills of lading. Hence, irrespective of all other defects in Plaintiff's pleadings (see subpoints below), Plaintiff can have no valid prima facie claim against Shanghai Agency with respect to issuance of

the bills of lading, whether that claim is premised on the charter, the Master's so-called "authorization" or otherwise.  American law is aptly summarized in the <u>Restatement of Law (Agency)</u> 2d states:

> § 320.  Principal Disclosed
> Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract.

Here, Plaintiff clearly knew of Shanghai Agency's representation on behalf of Yong He and, indeed, has sued Yong He in this case.  Further, the charter specifically provides in clause 42 that the consequences of any discrepancies in bills issued by its agent will be the responsibility of *Yong He.*  Clearly, if Plaintiff has a claim respecting the wrongful issuance of the bills of lading, that claim can only validly be asserted against Yong He, the disclosed principal with whom Owner dealt and no direct claim can possibly lie against Shanghai Agency, who acted at all times as the agent for its disclosed principal. In short, Plaintiff has no plausible claim against Shanghai Agency since any such claim is plainly invalid under basic agency law.  Further, it is also clear from the unambiguous terms of the charter that the Owner and Master had no right to make new post charter demands with respect to the bills and, even if they did, any claim for breach of this must be asserted against Yong He, the disclosed principal on whose behalf Shanghai Agency acted in the issuance of the bills.  No claim lies directly against Shanghai Agency.

As outlined in the accompanying affidavit of Chinese attorney, Chu Beiping (Paré affidavit Exhibit "C", at ¶¶ 6-12), the same basic agency principles are true under Chinese law.  Hence, under either American or Chinese law the result is the same.

**B.**    **Plaintiff Has Not and Cannot Plead a Valid Prima Facie Maritime Claim Against Shanghai Agency under Maritime Law**

As indicated above, Plaintiff's allegations against Shanghai Agency respecting the issuance of bills of lading are deficient and should be dismissed for this reason alone[1]. If one assumes all facts and circumstances in Plaintiff's favor, its theory might be as follows:

> Plaintiff has a claim against Charterer, Yong He, for unpaid hire. Plaintiff could have secured its claim for this unpaid hire by liening cargo. Plaintiff was deprived of this right, however, because Shanghai failed to issue bills in accordance with the Master's post-charter, written demands. More specifically, Plaintiff was deprived of its lien rights because the bills were marked "freight pre-paid" and/or otherwise failed to incorporate the charter.

There are a number of broken links in any such possible chain of logic, each of which *independently* shows Plaintiff can have no valid prima facie claim against Shanghai Agency.

**1.**    **The Bills Were Issued in Conformity with the Charter and Were Not Issued "Wrongfully"**

For reasons previously outlined, charterer, Yong He, had explicit and implicit authority under the charter to issue the bills that were issued in this case. Under the charter, Plaintiff and the Master could not later validly set new and more strict demands

---

[1] As Professor Moore has noted, "Liberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists on which relief could be accorded the pleader. If it fails to do so, a motion under Rule 12(b)(6) will be granted. Thus, courts need not cull a "tangled web" of multiple pleadings and multiple actions to determine whether a plaintiff has articulated a meritorious claim, nor is the "duty to liberally construe a plaintiff complaint . . . the equivalent of a duty to re-write it for her."

Additionally, '[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.' 2 Moore's Federal Practice § 12.34[1][b], p. 12-61."

for the issuance of bills of lading at the port of loading or prohibit freight prepaid bills.
Any theory that bills could only lawfully be issued in accordance with the Master's more
strict post-charter demands is therefore fatally flawed. In fact, under English law,
Charterer also had implicit authority to issue the bills of lading in this case. See the
attached declaration of Ernest Tai Ming Yang, Paré Exhibit "B", paragraphs 7-9. See
also The "VIKFROST", [1980] 1 Lloyd's Rep. 560 ("I consider that there must be an
implied authority either upon the sub-time charterers or on their agent to issue and sign
bills of lading so as to bind the owners by reason of the demise clause.") and clause 42 of
the charter.

Plaintiff can have no viable legal theory that bills of lading were "wrongfully"
issued because they somehow exceeded the Master's post-charter demands.

## 2.    The Bills, in Fact, Were Issued in Conformity with Mates' Receipts

As shown in Exhibits "A(4A)" and "A(4B)" to the Paré affidavit, the Mates'
Receipts were all marked either "freight pre-paid" or "freight collect" or words
equivalent to this. Each of the bills of lading was also marked either "freight pre-paid" or
"freight collect" in accordance with each respective Mates' Receipts. Hence the bills
were, in fact, issued in conformity with the Mates' receipts insofar as such markings are
concerned.

12

### 3.    There Is No Right of the Owner under the Charter or English Law to Bar Freight Pre-Paid Bills of Lading or to Require Lien Protection

It appears that Plaintiff urges that it was wrongful for Plaintiff to issue "freight pre-paid" bills of lading.  In the first place, the charter does *not* give the Owner the right to forbid issuance of freight pre-paid bills of lading and that should be determinative of the issue.  In fact, under English law, to which the charter is subject, a charterer is empowered to issue "freight pre-paid" bills of lading, even if that prejudices an owner's right of lien.  See the attached declaration of Ernest Tai Ming Yang, Paré affidavit, Exhibit "B", paragraphs 8, 11 and 12 and Wilford, Coughlin and Kimball, Time Charters (5th Ed. Lloyds Shipping Law Library) where the authors summarize the English decision in Federal Commerce and Navigation Ltd. v. Molena Alpha Inc., [1979] 1 Lloyd's Rep. 201 as follows:

> The owners argued, however, that they were entitled to instruct their masters to refuse to sign any bill of lading which might prejudice the owners' right under Clause 18 of the then current version of the Baltimore form to lien "all cargoes and sub-freights belonging to the Time-Charterers and any Bill of Lading freight for all claims under the Charter".
>
> It was held by the House of Lords, affirming the Court of Appeal and (on this point) Keer, J., that under the employment clause in the charter (Clause 9) the charterers could require the masters to sign "freight prepaid" bills without any mention of the terms of the time charterers; the owners might be denied rights of lien but were protected by their rights of indemnity.
>
> Time Charters at pp. 363-4

There can be no possible viable claim respecting the issuance of "freight pre-paid" bills of lading, even if they did prejudice the Owner's lien rights in this case.

13

4. **Not All Bills Were Marked "Freight Pre-Paid" and Hence Nothing Barred Owner from Taking Action Respecting Such Bills**

As shown in Exhibit "A(4B)" to Paré affidavit, not all bills of lading were marked "freight pre-paid". In fact, some were specifically marked "freight collect". Since Plaintiff's theory appears to be that it was somehow prohibited from taking some action because bills were marked "freight pre-paid", this is clearly invalid because many of the bills were marked "freight collect" and no arguable impediment prevented Plaintiff from taking action with respect to the "freight collect" bills of lading. (see Paré affidavit at Exhibit "B", paragraph 20). Hence, Plaintiff has no valid claim that it was deprived of some right to take action by the issuance of *some* freight pre-paid bills of lading in this case.

5. **There is No Clear Right to Lien Cargo Owned by a Third Party**

Plaintiff might urge (but did not do so in its complaint) that it had a right to lien the cargo and this was somehow prejudiced by the bills that were issued. As already indicated, under both the charter and English law, it was perfectly proper for bills to be issued "freight pre-paid" in this case and hence no claim can arise by reason of such markings on *some* of the bills. Further, the cargo was not owned by Yong He but, instead, by the various shippers identified in the Mates' receipts and bills of lading. Since at all times Yong He never owned the cargo, it appears Plaintiff had no clear right to lien the cargo. See the declaration of Ernest Tai Ming Yang, Exhibit "B", paragraph 18 of Paré affidavit. See also <u>The "AGIOS GIORGIS"</u>, [1976] 2 Lloyd's Rep. 192 where the Court noted the following is necessary to assert a lien on cargo:

14

> . . . alternatively, if English law applied, the owners were
> obliged to satisfy three requirements to succeed, namely, that
> (a) the cargo was the property of the charterers; (b) the
> owners intended to exercise a lien and (c) they communicated
> that intention to the charterers; (iv) none of those
> requirements was satisfied here.

The same is true under American law.  See <u>Goodpasture Inc. v. The Pollux</u>, 602 F.2d 84,

<u>cert. denied</u> 606 F.2d 321 (5th Cir. 1979).  It therefore appears Plaintiff never had a clear

right to lien the cargo in question.

### 6.    <u>The Bills Incorporated the Charter</u>

Given the above, it matters not whether the charter was, in fact, incorporated into

the bills since Plaintiff has no conceivable rights on which to premise a valid claim

against Shanghai Agency for each of the reasons mentioned above.  In fact, however, the

bills did incorporate the charter.  As already noted, the CONGEN BILL forms that were

used specifically provide that "all terms and conditions, liberties and exceptions of the

Charter Party, dated overleaf, including the Law and Arbitration clauses, are herewith

incorporated."  Under English law, this duly incorporates the charter party, even though

the date of the charter is not filled in the blank on the front side of the bills.  See the

accompanying declaration of Ernest Tai Ming Yang, Exhibit "B" to Paré affidavit at

paragraphs 13-17.  As succinctly stated in Cooke, Young, Taylor et al., <u>Voyage</u>

<u>Charterers</u> (3 Ed., Lloyd's Shipping Law Library):

> Where a charter party is expressly identified, usually
> by date, or where there is only one possible charter party,
> even if not so identified, there is no problem of
> identification. . . .

> Where, however, there is more than one charter party
> and the incorporation clause fails to identify which charter is
> to be incorporated, the presumption made is that it is the head
> charter party which is intended to be incorporated, since that
> is the one to which the shipowner is a party.
>
> § 18.59-18.60 at p. 475

As also outlined in the declaration of Ernest Tai Ming Yang, incorporation in this case

means that the bills incorporated lien rights under the charter party.  Hence, Owners were

not deprived of any theoretical rights to lien the cargo because of the bills issued in this

case, especially under the freight collect bills.  In the circumstances, Plaintiff has no

plausible claim against Shanghai Agency respecting issuance of the bills for this

*additional reason.*

**C.**      **Plaintiff, Navision Has Not Sued in an "Appropriate Venue" and, in Fact, Has No Standing to Do So.**

Plaintiff asserts in its Second Amended Complaint it "will commence proceedings

against Lianyungang in an appropriate venue."  Obviously, Shanghai, China, where the

operation events took place and where Shanghai Agency is located, would be the

appropriate venue.  Plaintiff, however, has not commenced suit there or elsewhere.  It

has, however, attached almost 1.5 million dollars in assets.  Plaintiff has no right to

subject Shanghai Agency's property to attachment with no suit pending.  Attachments are

only typically allowed in aid of *ongoing* foreign lawsuits.  See <u>Ullises Shipping Corp. v.</u>

<u>Fal Shipping Co.</u>, 415 F. Supp.3d 315, 321.  Ex parte prejudgment attachment of property

without the filing of a suit to adjudicate the merits of the claim that are the subject of the

attachment is not sanctioned by any precedent.  This amounts to an unfair (and

unconstitutional) deprivation of property rights.

16

Furthermore, neither the charter nor the fixture notes attached to Plaintiff's complaints identifies Navision as the owner under the charter. As outlined in the declaration of Chinese attorney Chu Beiping (Paré Exhibit "C", paragraph 5), Navision therefore has no right or standing to sue Shanghai Agency in China because of this.

## POINT II

### PLAINTIFF HAS NO "PLAUSIBLE"
### CLAIM AGAINST SHANGHAI AGENCY
### ON WHICH RELIEF MAY BE GRANTED

The former test for when a complaint fails to state a claim on which relief can be granted was quoted in the following passage in <u>Bloor v. Carro, Spanbock, Londin, Rodman & Fass</u>, 754 F.2d 57 (1985):

> In considering a Rule 12(c) motion, the court must accept as true all of the well pleaded facts alleged in the complaint and may not dismiss the action unless the court is convinced that "'the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.'" *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir. 1977), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957).
>
> (emphasis added)<br>754 F.2d at 61

More recently, however, the Supreme Court relaxed this "no set of facts" standard which had derived from the Court's half century old decision in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). In May of last year in <u>Bell Atlantic Corp. v. Towmbly</u>, 127 S.Ct. 1955 (2007), the Supreme Court rejected the "no set of facts" standard stating that "after puzzling the profession for 50 years, the famous observation (i.e. the "no set of facts"

17

language) has earned its retirement." 127 S.Ct. at 1969. In its place, the Court found that a cause of action must be "plausible", explaining:

> Asking for *plausible grounds* to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a *reasonable expectation* that discovery will reveal evidence of . . . [an "illegal agreement" in that case.]
> 127 S.Ct. at 1965

The Court further pointed out that a series of its earlier cases had eroded the authority of Conley v. Gibson and paved the way for its recognition of the "plausibility" standard in Bell Atlantic. This included cases that recognized the need for a plaintiff to show "a 'reasonably founded hope' that a plaintiff would be able to make a case," and '[i]n practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory" (emphasis in original; underlining added). 127 S.Ct. at 1969.

Hence, under Bell Atlantic, it is now no longer necessary for a defendant to show that there are no *conceivable set of facts* by which a plaintiff might recover. Instead, if the plaintiff does not have a "plausible" theory of recovery, it cannot survive a motion to dismiss for failure to state a claim on which relief can be granted. The Court recognized in Bell Atlantic the need for this more relaxed standard of dismissal because of the high costs of pre-trial litigation and the unfairness this can cause a defendant. Of course, here one can add the harshness of an ex parte pre-judgment attachment of substantial assets based on an ill-pleaded and implausible legal theory.

18

It should also be pointed out that on a motion to dismiss for failure to state a claim, a court may look to both documents appended to the complaint (such as the charter party fixture agreement and Plaintiff's hire statement in this case) *and* documents that are "integral" to the plaintiff's claims but that are not attached to the complaint. As the Court of Appeals for the Second Circuit noted in I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co., 936 F.2d 759 (2d Cir. 1991):

> In considering whether Pincus' complaint states a claim under either Section 10(b) or Section 11, we examine the prospectus together with the allegations contained on the face of the complaint. We do so despite the fact that the complaint contains only "limited quotation" from that document. *See Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985). The prospectus is integral to the complaint. The claims pleaded therein are based *only* on an alleged written misrepresentation appearing within the prospectus; plaintiff alleges no misrepresentations stemming form any other source, such as words, conduct, or other documentation. We therefore decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference.
>
> (underlining added; italics in original)
> 936 F.2d at 762

In Oppenheimer, the Court of Appeals affirmed a dismissal for failure to state a claim under the then prevailing standard that "Pincus can prove no set of facts which would demonstrate that the language of page 5 of the prospectus, read in context, is materially misleading." 936 F.2d at 763.

In this case, what is "integral" to Plaintiff's attempted claim against Shanghai Agency is the charter party (the main charter party fixture terms are attached to Plaintiff's

complaint), the Master's so-called "authorization" (referred to in the complaint) and the bills of lading (referred to in the complaint) and their corresponding Mates' Receipts. Those show that Plaintiff has no plausible right of recovery against Shanghai Agency. In the circumstances, Shanghai Agency is entitled to dismissal on the grounds that Plaintiff has failed to state a plausible claim against Shanghai Agency on which relief can be granted.

## POINT III

### IN THE ALTERNATIVE, SHANGHAI AGENCY IS ENTITLED TO SUMMARY JUDGMENT RESPECTING PLAINTIFF'S CLAIM UNDER RULE 12(b)(6)

There is frequently overlap between a motion to dismiss and a motion for summary judgment and, because of this, FRCP Rule 12(b)(6) authorizes the Court, in the alternative, to award summary judgment. Summary judgment is appropriate here because there is and can be no genuine issue regarding the following material facts:

1.    Shanghai Agency acted, at all times, as the agent for its disclosed principal, Yong He.

2.    The charter party is governed by English law and both the charter and English law authorize the issuance of freight prepaid bills of lading.

3.    The charter party specifically provides in clause 42 that Charterers are responsible for their agents "not adhering strictly to their authority."

4.      Some bills of lading are marked "freight pre-paid" and some are marked "freight collect", or similar such words, and in this very respect, each of the bills is in conformity with its corresponding Mate's receipt.

5.      The cargo was shipped by various shippers identified in Mates' receipts and bills of lading and was at no time owned by Yong He.

6.      The bills of lading incorporated the Owner/Yong He charter party under English law, including the charter party lien clause.

7.      At the very least, under English law, there is no impediment to the Owner asserting a lien on cargo under bills of lading marked "freight collect".

8.      Plaintiff, to date, has not commenced suit against Shanghai Agency in any other jurisdiction.

9.      Plaintiff is not referred to as the owner either in the charter party recap or the charter party.

The award of summary judgment is controlled by a familiar standard. The moving party bears the burden of showing that no genuine issue of material facts exists and any ambiguities are to be resolved and inferences drawn against the moving party. Estate of Detwiler v. Offenbacher, 728 F. Supp. 103, 134 (S.D.N.Y. 1989). On the other hand there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(a) . . . suggests the absence of such a requirement." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Indeed, Rule 56 requires the *non-moving party* "to go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue

for trial'." Celotex, supra, 477 U.S. at 324. Furthermore, awarding summary judgment

should not be viewed as "disfavored" but rather as an "integral" rule to weed out

factually insufficient claims. As the Supreme Court said in Celotex:

> Summary judgment procedure is properly regarded not as a
> disfavored procedural shortcut, but rather as an integral part
> of the Federal Rules as a whole, which are designed "to
> secure the just, speedy and inexpensive determination of
> every action." Fed.Rule Civ.Proc. 1; see Schwarzer,
> Summary Judgment Under the Federal Rules: Defining
> Genuine Issues of Material Fact, 99 F.R.D. 465, 467 (1984).
> Before the shift to "notice pleading" accompanied by the
> Federal Rules, motions to dismiss a complaint or to strike a
> defense were the principal tools by which factually
> insufficient claims or defenses could be isolated and
> prevented from going to trial with the attendant unwarranted
> consumption of public and private resources. But with the
> advent of "notice pleading," the motion to dismiss seldom
> fulfills this function any more, and its place has been taken by
> the motion for summary judgment. Rule 56 must be
> construed with due regard not only for the rights of persons
> asserting claims and defenses that are adequately based in fact
> to have those claims and defenses tried to a jury, but also for
> the rights of persons opposing such claims and defenses to
> demonstrate in the manner provided by the Rule, prior to trial,
> that the claims and defenses have no factual basis.
>                                              477 U.S. at 327

In this case, summary judgment is appropriate because there is no basis on which

Plaintiff can succeed on its claim against Shanghai Agency. This is so for the reasons

previously outlined in Point I but which are briefly summarized below.

First, because Shanghai Agency acted at all times as agent for its disclosed

principal, Yong He, Owners can have no valid claim against Shanghai Agency respecting

issuance of the bills of lading either under the Master's so-called "authorization" or

otherwise by reason of basic agency law. In fact, charter party clause 42 reinforces this

since it specifically makes Charterer, Yong He, responsible for its agents "not adhering strictly to their authority."

Second, it is entirely in accordance with the charter and governing English law for bills of lading to be issued which are marked freight pre-paid, even if such bills prejudice the Owner's lien rights on cargo, and the Master and owner had no rights to later insist that freight prepaid bills of lading not be issued.

Third, the bills of lading incorporated the charter, including the provision for English law to govern and the charter party lien clause.

Fourth, not all the bills of lading were marked "freight pre-paid"; some were marked "freight collect" and these presented no impediment to Owner's lien rights, if any.

Fifth, Plaintiff never had any clear right to lien the cargo as it was not owed by Yong He.

It is respectfully submitted that Plaintiff's claim cannot survive a motion for summary judgment and should be dismissed.

**POINT IV**

**PLAINTIFF'S CLAIM IS CONTINGENT AND
HENCE PREMATURE AND CANNOT PROVIDE
THE BASIS FOR A MARITIME ATTACHMENT**

The Court of Appeals for the Second Circuit has made it clear that if a claim is subject to a contingency such as an indemnity claim is, it is premature and cannot provide a basis for obtaining a maritime attachment except "in isolated situations under peculiar

23

factual circumstances." Greenwich Marine, Inc. v. S.S. ALEXANDRA, 339 F.2D 901 (2d Civ. 1965). In Greenwich Marine a charterer had obtained a maritime attachment against a shipowner. The charterer's claim was a contingent one since it urged that it was entitled to claim in indemnity against the shipowner because cargo interests had claimed against charterer for a cargo claim. Both the district court and the Court of Appeals held that the charterer's contingent indemnity claim was premature because the charterer had not yet had liability imposed against it and, for this reason, vacated the maritime attachment.

The same essential problem exists in this case. Plaintiff has not yet established by an arbitration award or otherwise that it is entitled to recover any amount from the charterer, Yong He. It is entirely possible that it will be determined that Yong He owes no amounts. If Shanghai Agency has any liability to Plaintiff (which is denied for reasons previously outlined), that liability is entirely *contingent and derivative* and depends on the yet unfulfilled contingency that Plaintiff is entitled to recover against Yong He and in the amounts alleged. If it is ruled that Yong He has no liability (or reduced liability), then the contingent attachment against Shanghai Agency would have been unduly harsh. Such an ex parte prejudgment attachment is entirely too speculative and premature and should not be allowed. There must be limits to how far one can stretch the attachment rules based on contingent theories of possible liability which depend on future events.

24

**FINAL POINT**

For reasons outlined at page 8, Plaintiff has no demonstrated right to recover "arbitrators' fees" nor legal costs against Shanghai Agency in the amount of $250,000 and, in all events, the attachment order should be reduced by this amount. If these amounts are nevertheless allowed, Shanghai Agency should have countersecurity for this same amount under Supplemental Admiralty Rule E(7). Ullises Shipping Corp. v. Fal Shipping Co. Ltd., 415 F. Supp. 318, 329 (S.D.N.Y. 2006).

**Conclusion**

It is respectfully submitted that Plaintiff's claim should be dismissed and all attachments and orders of attachments vacated or reduced and that Shanghai Agency be granted any further and different relief as may be just and equitable.

Dated: New York, New York
       January 30, 2008

                 NOURSE & BOWLES, LLP
                 Attorneys for Defendant
                 SHANGHAI FAREAST INTERNATIONAL
                  SHIPPING AGENCY CO. LTD.

                 By:    _____
                   Armand M. Paré, Jr (AP-8575)
                   One Exchange Plaza
                   At 55 Broadway
                   New York, NY 10006
                   (212) 952-6200