UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NAVISION SHIPPING COMPANY A/S,                  :
                                                :
        Plaintiff,                              :    07 Civ. 9517 (DC)
                                                :
    - against -                                 :    ECF CASE
                                                :
YONG HE SHIPPING (HK) LTD., PROSPER             :
SHIPPING LIMITED, JIANGSU FING AGENCY LTD.,     :
JIANGSU FAREAST INTERNATIONAL SHIPPING          :
AGENCY LTD., THE OLD EASTERN                    :
MEDITERRANEAN CO SA, CHINA MARINE               :
SHIPPING AGENCY TIANJIN COMPANY LTD.,           :
LIANYUNGANG FAREAST INTERNATIONAL               :
SHIPPING AGENCY CO. LTD., and SHANGHAI          :
FAREAST INTERNATIONAL SHIPPING AGENCY           :
CO. LTD. a/k/a FEISA,                           :
                                                :
        Defendants.                             :
------------------------------------------------------------------X

**DECLARATION OF HUANG SHUN GANG PURSUANT TO 28 U.S.C. §1746
IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO VACATE MARITIME ATTACHMENT AND/OR DISMISS THE ACTION**

I, HUANG SHUN GANG (黄顺刚), hereby affirm as follows:

1.  I am foreign counsel for Navision Shipping Company A/S ("Plaintiff" or "Navision").

2.  I submit this Declaration based on facts and information known to me personally, as well as documents and information available to me, all of which I believe to be true and accurate.

3.  I make this Declaration in support of Plaintiff's opposition to a motion filed by Shanghai Fareast International Shipping Agency Co. Ltd. ("Defendant" or "Shanghai Fareast") moving to vacate the maritime attachment issued herein and/or dismiss the action.

**EXPERIENCE AND QUALIFICATIONS**

4.  I am a lawyer licensed to practice law in China. My specific area of expertise is maritime law. I am the senior partner of SG & Co. (上海市华利律师事务所),

a law firm located at Suite A1-B1, 20th Floor, Jiangsu Mansion, 778 Dong Fang Road, Pudong, Shanghai 200122, China.

5. I graduated with a Bachelor of Arts degree from the Shanghai Maritime University in July 1982. After graduation, I worked at the Shanghai Maritime University as a lecturer on various aspects of Maritime Law from 1982 to 1998. The subjects I taught included Maritime Law, Shipping English, the Law and Practice of Sales and Purchase and other areas.

6. After being licensed as a lawyer in China, I worked from 1992 to 1998 with the Shanghai Yindu Law Firm as a part-time lawyer. In September 1998 I left the Shanghai Maritime University and started my own firm, SG & Co(上海市华利律师事务所), where I have practiced full time ever since.

7. At present, I am the Executive member of the Maritime Law Committee of the All China Lawyers Association (ACLA) and I am also a director of the China Maritime Law Association. I am also an arbitrator of the China Maritime Arbitration Commission and a visiting professor of maritime law at the Shanghai Maritime University.

8. My firm mainly works for foreign ship owners and P&I Clubs in handling cases in the China Maritime Courts. During the past ten years, I have handled many cases for foreign ship owners and members of P&I Clubs in the China Maritime Courts, and also settled many cases through negotiation and/or through the court's mediation. I specialize in areas of shipping and commercial litigation arising from disputes relating to bills of lading, cargo damage, high profile pollution cases, marine insurance claims and recoveries, shipbuilding disputes and offshore construction contracts. My non-contentious practice focuses on charter parties, shipbuilding contracts and ship sale and purchase transactions.

## LEGAL ANALYSIS AND OPINION

9. I have been instructed, on behalf of the Plaintiff, to provide an opinion on the following issues:

> **(a)** Does Navision presently have a valid cause of action against Shanghai Fareast under Chinese law?
>
> **(b)** Will the Chinese Maritime Court entertain the claim filed by Navision against Shanghai Fareast?
>
> **(c)** Is Shanghai Fareast liable to Navision for the loss suffered under Chinese law?

**Background**

10. On April 18, 2007, Orestia Shipping Ltd. ("Oresteia"), the Owner of the M/V "BRAVE JOHN" (the "Vessel"), concluded a time charter party contact with Plaintiff, Navision.

11. Navision later sub-chartered the Vessel to Defendant Yong He Shipping Ltd. ("Yong He") for a time charter trip.

12. Defendant Shanghai Fareast International Shipping Agency Co. Ltd. ("Shanghai Fareast") was appointed as shipping agent by Yong He.

13. On August 22, 2007, an authorization letter was issued and delivered to Shanghai Fareast by the Master of the Vessel. This authorization letter provided for the issuance of the bills of lading on the master's behalf with conditions and restrictions clearly set out therein.

14. Mr. Vasilakis Apostolos, the Captain of the Vessel, in his Authorization to Shanghai Fareast to sign the bills of lading on his behalf dated August 22, 2007 clearly stated: *"Should you encounter any difficulty in fully complying with this authorization you are hereby instructed to contact my ship's disponent owners via Navision Charter A/S, Denmark"*.

15. However, Shanghai Fareast wrongfully and unlawfully issued and released pre-dated, clean on board bills of lading and also provided the same with wording "freight prepaid", which was inconsistent with the master's authorization for issuing the bills of lading on his behalf, resulting in Navision's inability to exercise a lien on the cargo at the destination and to collect the hire payable and owing to it.

16. Shanghai Fareast's counsel states that *"On or about July 12, 2007, a charter party was entered into between Oresteia Shipping Ltd., as owner of the vessel M/V "Brave John" and Yong He Shipping Ltd., as charterer."* See Declaration of Shanghai Fareast's counsel, Armand Pare, ¶4. However, as will be discussed herein, it appears from the evidence that this charter party is invalid and/or non-existent.

**Question 1   Does Navision presently have a valid cause of action against Shanghai Fareast under Chinese law?**

17. In my opinion after reviewing the facts of this case and the relevant legal authority, Navision has a valid maritime claim against Shanghai Fareast under Chinese law sounding in breach of contract and tort.

18. Shanghai Fareast is independently and directly liable to Plaintiff Navision for the damages suffered. Navision's claim is NOT based on indemnity or contingent on obtaining

an award against Yong He. Rather, as indicated above, Navision's claim is currently ripe and has accrued under Chinese law.

19. Furthermore, upon Navision's instructions, I intend to commence proceedings against Shanghai Fareast in the maritime court(s) of the People's Republic of China.

20. The first thing I would like to address is the alleged "charter party" between Oresteia and Yong He.

21. Upon examination of the alleged charter party between Oresteia Shipping Ltd. and Yong He, I have come to the conclusion that it is invalid and/or non-existent. Thus, among other things, Shanghai Fareast's argument that Plaintiff does not have standing to bring suit in the Chinese courts is entirely without merit.

22. Plaintiff has standing to sue Shanghai Fareast for its claim(s) under Chinese law.

23. Having read the charter party dated July 12, 2007 between Oresteia Shipping Ltd., Malta and Yong He Shipping Ltd., I note that both parties agreed that the *"time shall not to commence before 21st July 2007 00:01 HRS local time."*

24. However, the charter party dated April 18, 2007 between the Oresteia Shipping Ltd. Malta, as the owner of the M/V "Brave John", and Navision Shipping Company A/S, as charterer, clearly stated that both parties agreed *"the said Charterer agree to hire the said vessel from the time of delivery, for timecharter period of minimum 3 to about 5 months (about meaning +/- 15 days in charterers' option) world-wide timecharter...."* And it further stated that *"the time not to commence before 26th Apr.2007."*

25. Judging from the relevant contents of the said two charter parties and the master's authorization, it is unlikely that the owner, Orestetia Shipping Ltd. Malta, could have time chartered the vessel "Brave John" to Yong He directly for a period that the Vessel was already under another time charter.

26. Furthermore, according to the master's authorization letter, it is obvious that the master was fully aware that there was a disponent owner (Navision) at the time he issued the same. In light of the foregoing, it is only logical that the charter party dated April 18, 2007 between Oresteia and Navision should be the only true and valid one.

27. Furthermore, considering that Navision has submitted the recap between Yong He and Navision to the court in New York (see Exhibit "1" to the Second Amended Complaint") and the master also stated in his authorization letter to Shanghai Fareast that *"should you encounter any difficulty in fully complying with this authorization you are hereby instructed to contact my ship's disponent owner via Navision Chartering A/S"*, it is clear that Navision was at all material times the disponent owner of the Vessel and Yong He actually chartered it from Navision.

28. Therefore, Navision, as the disponent owner of the Vessel, is entitled to exercise the relevant obligations and rights under the charter party and law, which include but are not limited to issuing the bills of lading, exercising liens on the cargo and etc.

**Navision's cause of action against Shanghai Fareast sounding in breach of contract**

29. Article 10 of Contract law of PRC states:

*"A contract may be in a written form, in an oral conversation, as well as in any other form."*

Article 14
*"An offer is a party's manifestation of intention to enter into a contract with the other party, which shall comply with the following:*
*(i) Its terms are specific and definite;*
*(ii) It indicates that upon acceptance by the offeree, the offeror will be bound thereby."*

Article 21
*"An acceptance is the offeree's manifestation of intention to assent to an offer."*

Article 22
*"An acceptance shall be manifested by notification, except where it may be manifested by conduct in accordance with the relevant usage or as indicated in the offer."*

Article 32
*"Where the parties enter into a contract by a memorandum of contract, the contract is formed when it is signed or sealed by the parties."*

Article 107
*"If a party fails to perform its obligations under a contract, or rendered non-confirming performance, it shall bear the liabilities for breach of contract by specific performance, cure of non-conforming or payment of damages, etc."*

Article 113
*"Where a party failed to perform or rendered non-conforming performance, thereby causing loss to the other party, the amount of damages payable shall be equivalent to the other party's loss resulting from the breach, including any benefit that will be accrued from performance of the contract, provided that the amount shall not exceed the likely loss resulting from the breach which was foreseen or should have been foreseen by the breaching party at the time of*

*conclusion of the contract."*

30. Applying the facts of this case to the relevant Chinese law, I am of the opinion that the letter of authorization did constitute a contract between the Navision and Shanghai Fareast and Shanghai Fareast breached the letter of authorization.

31. Furthermore, Navision/the Master's issuance of a letter of authorization to Shanghai Fareast on August 22, 2007 would be considered an offer.

32. Shanghai Fareast signed the letter at the bottom and it would be regarded as an acceptance under Chinese law. Therefore, the letter of authorization would be deemed a contract between the parties.

33. Defendant breached the letter of authority by issuing bills of lading contrary to the Master's instructions which prevented Navision from exercising lien rights against the cargo on board at the discharge ports and thus from securing its claim for unpaid hire which caused Navision losses.

34. Shanghai Fareast's argument that it did not accept the master's authorization is without merit.

35. Mr. Zhuo Zhonggen, an Employee of Shanghai Fareast, (see ¶6 of Exhibit A, to the Pare Declaration) stated that "*On August 22, the Master of the M.V Brave John handed me a letter respecting issuance of the bill of lading. Since Shanghai Agency had been appointed by Yong he and not the vessel's owners, I and Shanghai Agency did not agree to the terms of this letter and we did not consider that we were bound by this. I therefore signed with the notation "RCVD THIS LETTER"*".

36. However, on the contrary, Shanghai Fareast was bound.

37. Mr. Zhuo, was, and remains, an employee of Shanghai Fareast. Thus his actions were, and are, attributable to his employer. His confirmation of having received the master's authorization would be deemed an action for Shanghai Fareast. In addition, the fact that Shanghai Fareast issued the relevant bills of lading confirms that they were issued as per the authorization of the master.

38. The authorization letter was addressed to Shanghai Fareast, and Mr. Zhuo was handed this letter by the Master. His signature and remarks in handwriting on the letter prove that the Master gave Shanghai Fareast authorization to issue the bills of lading on his behalf. This formed a binding relationship and Shanghai Fareast must act accordingly. If Shanghai Fareast did not believe it could agree to the terms of the letter, it could easily have refused to receive the letter.

39. Mr. Zhuo and Shanghai Fareast's lawyer's arguments on this issue are baseless.

In accordance with applicable Chinese law, I am of the view that "RCVD THIS LETTER" in such circumstances means that Shanghai Fareast had been notified of the contents of the authorization and had accepted the master's authorization.

40. Shanghai Fareast further argues that they issued the disputed bills of lading in accordance with the instructions of Yong He, and thus are not liable for Navision's damages. However, this argument is unavailing.

41. In accordance with Chinese law, I am of the view that once Shanghai Fareast accepted the authorization from the Master to issue the bills of lading for the cargo on board the Vessel, it could not escape liability arising from its failure to adhere to the terms thereof by accepting any other party's authorization to issue those same bills of lading.

42. Rather, given that Shanghai Fareast failed to issue the bills of lading according to the master's authorization, it is liable for all damages caused by their breach.

43. To sum up, as Shanghai Fareast did not issue the bills of lading as per the Master's authorization, which infringed upon Navision's rights, in accordance with my legal analysis, Navision should be entitled to claim against Shanghai Fareast in the Chinese Maritime Court.

44. There can be no question that Navision's claim in this regard has accrued under Chinese law.

45. In sum, in my opinion, Navision has established the elements for/can make a claim against Shanghai Fareast sounding in breach of contract under Chinese law.

**Navision's claim against Shanghai Fareast sounding in tort**

46. Article 66 Civil Law of PRC provides:
*"The principal shall bear civil liability for an act performed by an actor with no power of agency, beyond the scope of his power of agency or after his power of agency has expired, only if he recognizes the act retroactively. If the act is not so recognized, the performer shall bear civil liability for it. If a principal is aware that a civil act is being executed in his named but fails to repudiate it, his consent shall be deemed to have been given.*

*An agent shall bear civil liability if he fails to perform his duties and thus causes damage to the principal."*

Article 106
*"Citizens and legal persons who breach a contract or fail to fulfill other obligations shall bear civil liability.*

> *"Citizens and legal persons who throughout their fault encroach upon state of collective property or the property or the property or person of other people shall bear civil liability).*
> *Civil liability shall still be borne even in the absence of fault, if the law so stipulates."*

Article 117.
> *"Anyone who encroaches on the property of the state, a collective or another person shall return the property; failing that, he shall reimburse its estimated price. Anyone who damages the property of the state, a collective or another person shall restore the property to its original condition or reimburse its estimated price. If the victim suffers other great losses therefrom, the infringer shall compensate for those losses as well."*

47. Applying the facts to the relevant Chinese law, it my opinion that Navision will be able to establish all of the elements required for a claim by tort, including that Shanghai Fareast infringed upon Navision's rights, Navision suffered losses, there was causation between the infringement and the loss and there was fault by Shanghai Fareast.

48. There can be no question that Navision's claim in this regard has accrued under Chinese law.

49. In sum, in my opinion, Navision has established the elements for/can make a claim against Shanghai Fareast sounding in tort under Chinese law.

**Question 2    Will the Chinese Court accept the claim filed by Navision against Shanghai Fareast?**

50. Pursuant to Article 108 and Article 111 of Civil Procedure Law of China, the court must entertain the lawsuit should the following four conditions be met:

> (1) *"The plaintiff must be a citizen, legal person or any other organization that has a direct interest in the case."* With respect to this point, it is without any doubt that Navision is a legal person and shall have direct interest in the case as analyzed above.
>
> (2) *"There must be a definite defendant."* With respect to this point, it is obvious that one of the definite defendants is Shanghai Fareast.
>
> (3) *"There must be specific claim, facts or cause or causes for the suit."* With respect to this point, the claim, fact and cause have been clearly illustrated in the complaint filed by Navision with New York Court. The facts as alleged in the New York action would be sufficient to support Plaintiff's claim in the Chinese courts.

> (4) *"The suit must be within the scope of acceptance for civil actions by the People's courts and under the jurisdiction of the People's Court where the suit is entertained."* It is obvious that the concerned dispute arising from the wrongful issuance of the bills of lading belong to the civil action. Meanwhile, given that the act of issuance of bills of lading was carried out in China and Shanghai Fareast is also domiciled in China, the Chinese court would have jurisdiction over the dispute pursuant to the Article 29 of Civil Procedure Law, which provides that *"a lawsuit brought on a tortuous act shall be under the jurisdiction of People's court of the place where the tort is committed or where the defendant has his domicile"*.

51. Given the above, there can be no doubt that the Chinese court would accept Navision's claim against Shanghai Fareast. In addition, Article 4 of the "Special Procedure Law for Maritime Lawsuits of the P.R. China provides that *"The maritime court shall entertain lawsuits in respect of maritime torts, maritime contracts and other maritime disputes brought by the parties as provided for by law."* And Article 2 of the 'China Supreme Court's Direction on Certain Issues of Civil Procedure Law of the P.R.China' also provides that *"The maritime court shall have jurisdiction over admiralty and maritime cases."*

52. As the issues in dispute involve maritime elements and factors, Navision would be able to lodge its maritime claim against Shanghai Fareast in maritime court in China.

**Question 3    Is Shanghai Fareast liable to Navision for the loss suffered under Chinese Law?**

53. Navision has a valid claim against Shanghai Fareast for the loss suffered under Chinese law by tort or by breach of contract. Pursuant to Article 146 of General Principles of the Civil Law of the P.R.C ("Civil Law"), *"the law of the place where an infringing act is committed shall apply in handling compensation claims for any damage caused by the act."* Given that the bills of lading were issued in China, Chinese law would apply should we file the claim in tort against Shanghai Fareast in China.

54. It should be noted that the bills of lading issued by Shanghai Fareast were described as "on behalf of the master of the vessel" rather than on behalf of Yong He. Pursuant to Article 72 of Maritime Law of China, *"a B/L signed by the Master of the ship carrying the goods is deemed to have been signed on behalf of the carrier."* Under such circumstances, the Chinese court would invariably hold that the bills of lading were issued by the ship owner side who employed the master, rather than the charterers who appointed the shipping agent. Therefore, Shanghai Fareast should be regarded as issuing the bills of lading as per the instruction of the ship owner side.

55. Moreover, as per the charter party between Oresteia and Navision dated April 18, 2007, charterer's bills of lading could be used (see Cl.42).

56. Therefore, Navision had the right to use their bills of lading.

57. The fact that the master's authorization expressly stated that *"should you encounter any difficulty in fully complying with this authorization you are hereby instructed to contact my ship's disponent owner via Navision Chartering A/S"* proved this fact that the master's authorization letter issued to Shanghai Agency was made by the master on behalf of and instructed by Navision. In such case, Shanghai Agency would be regarded as the agent of Navision rather than Yong He and therefore, the alleged agency-principle would not be applied. Thus, Shanghai Agency should be responsible for the loss suffered by Navision due to their failure of strictly adhering the master's authorization to sign the B/L.

58. In addition, even if Shanghai Fareast also obtained confirmation from Yong He to issue the bills of lading, they should still be responsible for the loss sustained by Navision as Article 66 of China Civil Law provides that *"if an agent and a third party in collusion harm the principal's interests, the agent and the third party shall be held jointly liable"*.

59. To end my declaration, I would like to add that no matter what argument Shanghai Fareast presents regarding principle and agent, they cannot escape liability for their acts as Article 67 of Civil Law of China provides that *"if an agent is aware that the matters entrusted are illegal but still carries them out, the principal and the agent should be held jointly liable."* There are many cases where the Chinese courts have held that the wrongful and unlawful issuance of bills of lading, such as the issuance of pre-dated or anti-dated bills of lading, is an illegal act. Shanghai Fareast's actions appear to fall within Article 67 of the Civil Law of China.

60. Shanghai Fareast was fully aware that as per the authorization of the master and the relevant facts that many remarks should be described on the bills of lading.

61. However, Shanghai Fareast still issued pre-dated, clean and freight prepaid bills of lading. This could be deemed an illegal action. And, Shanghai Fareast would be held liable to Navision for the damages resulting from their illegal act under Chinese law.

62. Finally, I would repeat that the Shanghai Fareast's allegation that the bills of lading were issued in conformance with the mate's receipt would not affect the validity of Plantiff's claim under Chinese law. Because firstly, it is clearly that they failed to issue the B/L according to the authorization of the Master while they were authorized by the Master to sign the B/L for and on his behalf. Secondly, even if they alleged that the B/L were issued in conformance with the mate's receipt ( which I do not agree), they should have also claused according to the Master's handwriting remarks in the Mate's Receipt as there were clearly master's handwriting in mate's receipt that they were attached by P&I Club surveyor's report regarding the cargo condition.- *See Declaration of Shanghai Fareast's counsel, Armand Pare, Exhibit A –4 (A, B)*. Last but not least, they did issue "Freight Prepaid" B/L which is STRICTLY FORBIDDEN as per the master's authorization.

      I state under penalty of perjury of the laws of the United States that the foregoing is true to the best of my knowledge and belief and that the opinions I have expressed are correct.

Signature: _____

Huang Shungang (黄顺刚),
SG&CO. (上海市华利律师事务所)

Executed on: March _3_, 2008
            Shanghai, China