Plaintiff, NAVISION SHIPPING COMPANY A/S (hereinafter referred to as "Navision" or "Plaintiff") by and through its undersigned counsel, Lennon, Murphy & Lennon, LLC, respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss Claim and Vacate Attachment filed by Defendant, SHANGHAI FAREAST INTERNATIONAL SHIPPING AGENCY CO. LTD. a/k/a SHANGHAI FAREAST (hereinafter referred to as "Shanghai Fareast" or "Defendant").  Defendant's motion should be denied because Plaintiff has sustained its burden to establish that it has a prima facie valid maritime claim against Defendant and has otherwise satisfied in all other respects the requirements of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereinafter referred to as "Supplemental Rule B").

## PRELIMINARY STATEMENT

The issue before the Court in this matter is straightforward, *i.e.* whether Plaintiff has satisfied the four requirements established by the Second Circuit Court of Appeals in *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 443 (2d Cir. 2006) in order to maintain the attachment?   To resolve the motion to vacate, the Court's inquiry is limited to evaluating whether Plaintiff has satisfied four requirements: (1) whether Plaintiff has alleged a prima facie valid maritime claim; (2) whether Defendant is present in the district, (3) whether Defendant's property is in the district; and (4) whether no other bar to maritime attachment exits.  Defendant, however, would have the Court ignore this clear and unambiguous test and instead urges the court to conduct an intensive inquiry of the facts and merits of the Plaintiff's claim, making substantive determinations on matters not properly before this Court.  In support of the matters not before this Court, Defendant has inundated the Court with declarations from foreign counsel regarding the factual and legal basis of Plaintiff's claim.  However, as is well established by Second Circuit case law, in a case such as this, *i.e.* where the substantive dispute will be resolved

in foreign arbitration or litigation, the Court is not to act as a trier of fact under Supplemental Admiralty Rule E(4)(F).

Defendant's attempt to cast itself as the victim is without basis and should be disregarded. Maritime attachment is a well-established remedy designed to allow maritime claimants to obtain jurisdiction over foreign defendants and to secure their claims. Courts have universally recognized that the Rule B attachment remedy is necessary in the maritime world in order to bring maritime debtors to justice under circumstances where they would otherwise be able to avoid the judicial process altogether due to the transitory nature of their assets and their presence in jurisdictions where recovery is not only inconvenient, but impossible. *See Yayasan Sabah Dua Shipping SDN BHB v. Scandinavian Liquid Carriers, Ltd.,* 335 F. Supp. 2d 441, 444 (S.D.N.Y. 2004) (stating that "[m]aritime attachment is a centuries-old remedy that antedates both the congressional grant of admiralty jurisdiction to the federal district courts and the promulgation of the first Supreme Court Admiralty Rules in 1844. Admiralty Rule B, which codifies the law, is simply an extension of this ancient practice. The device exists for the benefit of merchants engaged in the far flung maritime trade, who face special risks in seeking legal redress against perpetrators of maritime injury [who] are likely to be peripatetic. Without it, defendants, their ships, and their funds easily could evade the enforcement of substantive rights of admiralty law")(internal citations omitted)).

As established in the accompanying declarations of Mr. Huang Shun Gang (hereinafter "Huang Decl."), Mr. Nikolai Christopher Ivanov (hereinafter "Ivanov Decl.") and Mr. Carsten Bober (hererinafter "Bober Decl.") submitted in support of Navision's opposition to Defendant's motion, Defendant wrongfully and improperly issued bills of lading inconsistent with its authorization, as provided by the Vessel's Master, which caused significant damages to the Plaintiff, and is now wrongfully trying to avoid the responsibility for the damages Plaintiff

sustained as a result.  Prior to this attachment, Defendant failed to address Plaintiff's claims altogether.  Only now, after its assets have been attached, has the Defendant been forced to acknowledge and deal with Plaintiff's claims for the first time.   This is exactly what Rule B attachment was intended to accomplish.

In the context of a post-attachment hearing, Defendant would have this Court make substantive determinations of law and fact when in actuality, this action is merely ancillary to the foreign litigation that will determine whether Plaintiff is entitled to recover on its claims.  This is precisely the type of inquiry that the Second Circuit has indicated is beyond a district court's discretion under Supplemental Rule E(4)(f).   In *Aqua Stoli,* in the context of a Rule E(4)(f) attachment hearing, the Court held that it is inappropriate for the district court to engage in fact intensive inquiries into the substantive aspects/merits of the underlying matter.  See *Aqua Stoli Shipping Ltd.,* 460 F.3d  at 443-45.

Thus, in keeping with *Aqua Stoli*, it is inappropriate for this Court to engage in the type of inquiry regarding the merits of Navision's underlying claim that Shanghai Fareast urges; instead, the Chinese and/or English court which has jurisdiction over the substantive action must weigh the merits of Plaintiff's claim.  This is only logical.   The court with jurisdiction over the substantive case will hear the substantive dispute, and thus will address the substantive merits of the case.  This Court has jurisdiction over the ancillary action to obtain security, and thus should address whether the requirements of Supplemental Admiralty Rule B have been met.   As will be set forth more fully herein, Plaintiff has more than adequately met its burden to sustain the attachment.

## FACTS

### The Underlying Dispute

The facts of this matter are set forth fully in the accompanying Huang, Ivanov and Bober declarations submitted in support of Navision's opposition to Defendant's motion, and are adopted herein.  However, a short summary of the facts is provided below.

On April 18, 2007, Navision chartered the vessel M/V "BRAVE JOHN" (hereinafter "the Vessel") from the Vessel's head owners, Oresteia Shipping Ltd., Malta.   The charter was concluded on an amended NYPE 1946 charter party form, and was for a period of minimum 3 to about 5 months (+/- 15 days at charterers' option).  *See Exhibit "1" to Bober Declaration.*

On July 12, 2007 Navision sub-chartered the vessel to Yong He Shipping (HK) Ltd. (hereinafter "Charterers" or "Yong He") for a one time charter trip of about 60 days WOG. The charter is evidenced by a fixture recap dated July 12, 2007.  *See Exhibit "2" to Bober Declaration.*

Shanghai Fareast was appointed by Charterers, Yong He, as port agents for the vessel's call at Shanghai in August 2007.  On August 22, 2007, the Master of the Vessel provided a letter of authorization to Shanghai Fareast, authorizing the latter to sign bills of lading on his behalf. Such authorization was expressly envisaged and indeed required under the charter party.  The terms of such authorization were clearly set out in the letter.   The terms were expressly acknowledged and accepted by Mr. Zhuo Zong Gen of Shanghai Fareast, who signed the letter.

Wrongfully and unlawfully, and in clear breach of the strict terms of agreement as evidenced in the letter of authorization, Shanghai Fareast arranged for the issuance and release of antedated, clean on board bills of lading which had been marked "freight prepaid."  As a direct consequence, Navision was unable to exercise a lien on the cargo at the discharge ports in order to secure unpaid hire. As a result of Shanghai Fareast's unlawful authorization of the bills of lading, Plaintiff has suffered losses in the approximate amount of $2,044,357.18, exclusive of interest, costs and attorneys fees.

**The Attachment**

As will be discussed further herein, Plaintiff has valid prima facie claims against Shanghai Fareast under both Chinese and English law sounding in tort and breach of contract. Nevertheless, despite due demand, Shanghai Fareast failed to pay Plaintiff for the damages caused as a result of its wrongful and tortious actions.  In light of the foregoing, Plaintiff began to analyze the legal issues presented in preparation for bringing suit in China, London or both.

In the meantime, Plaintiff sought to obtain jurisdiction over Shanghai Fareast and security for the underlying claim.   Particularly, on December 18, 2007 Plaintiff applied for and was granted an Ex-Parte Order of Maritime Attachment and Garnishment against Defendant Shanghai Fareast in this action pursuant to Supplemental Rule B in order to secure satisfaction of its maritime claim.[1]   Process was subsequently issued by the Clerk of the Court and served on the garnishee banks provided for therein authorizing restraint of Defendant's property up to $2,694,270.59.  An estimate of recoverable interest ($399,913.41), costs ($50,000.00) and attorneys' fees ($250,000.00) was included in the final request for security.  As attested to by Mr. Ivanov, Navision's English solicitor, these amounts are reasonable estimates of the amounts to be recovered in the final judgment against Shanghai Fareast and were properly part of the request for security.[2]   *See Ivanov Declaration, ¶19.*

Pursuant to the Ex-Parte Orders and Process of Attachment issued herein, garnishee Citibank restrained Shanghai Fareast's funds in the amounts of $215,300.52, $8,024.00 and $51,492.00.  Garnishee Deutsche Bank restrained Shanghai Fareast's funds in the amount of $187,175.87.   In addition, Plaintiff was recently notified that garnishee Bank of China restrained

---

[1]      Plaintiff filed the initial Complaint in this action against charterer, Yong He Shipping on October 25, 2007. On November 13, 2007 an Amended Complaint was filed adding Defendants, Prosper Shipping Ltd., Jiangsu Fing Agency Ltd., and Jiangsu Fareast International Shipping Agency Ltd.  Defendant Shanghai Fareast was added to this action with the filing of the Second Amended Complaint on December 17, 2007.

[2]      The Second Amended Complaint referred to "arbitration costs," however, as set forth herein, "litigation costs" would be the appropriate label with respect to the Defendant "Shanghai Fareast."

Shanghai Fareast's property in the amounts of $1,000,000.00 and $14,904.54. Notice of Attachment was sent to Shanghai Fareast by FedEx courier, facsimile and/or e-mail. Plaintiff currently has a total of $1,476,896.93 of Shanghai Fareast's property attached within this District.

Plaintiff is now undergoing preparations to initiate the underlying action in England, China, or both. Defendant makes a great deal out of the fact that the underlying action was not initiated at the time it filed this action, despite the fact there is <u>no</u> requirement to do so under Rule B or otherwise.

As will be more fully addressed herein, Plaintiff has met its burden to sustain the attachment. To the extent that Defendant's motion to vacate addresses the facts involved in the underlying dispute between the parties, Plaintiff respectfully submits that such issues are properly subject to Chinese and/or English court proceedings.

As such, this Court should decline to consider the substantive merit of the underlying dispute which is more properly the subject of the English and/or Chinese litigation. *See World Reach Shipping Ltd. v. Industrial Carriers Inc,* 06 Civ. 3756 (NRB), 2006 U.S. Dist. LEXIS 83224 at *7 (S.D.N.Y. 2006)(indicating that the substantive merits were more properly the subject of the "underlying arbitration").

<u>**ARGUMENT**</u>

**POINT I**

**PLAINTIFF HAS SATISFIED ITS BURDEN OF PROOF**
<u>**UNDER SUPPLEMENTAL ADMIRALTY RULES B AND E(4)(f)**</u>

**A.      Plaintiff need only meet the four requirements of Supplemental Rule B in order to satisfy its burden at a Supplemental Rule E(4)(f) post-attachment hearing**

Supplemental Rule B "permits a plaintiff to attach an absent defendant's property if the plaintiff has an admiralty or maritime claim *in personam*." *See Reibor International, Ltd. v. Cargo Carriers (KACZ-CO.), Ltd.,* 759 F.2d 262, 265 (2d Cir. 1985). *Quasi in rem* process can be used to attach or garnish any tangible and intangible property. "Rules B(1) and B(3) refer to goods, chattels, debts, credits and effects. The terms 'goods,' 'chattels,' and 'effects' have been interpreted to apply to virtually all tangible property . . . In addition to tangible property, service of quasi in rem process can also be used to reach a variety of intangible property, such as bank accounts, accounts receivable, and other debts owed to the defendant." *See 29-0705 Moore's Federal Practice - Civil § 705.04.* A party may attach the funds used to pay a debt that is owed or will be owed to a defendant and the court may require such person to pay the debt to the attaching party upon maturity. *See Iran Express Lines v. Sumatrop, A.G.,* 563 F.2d 648, 649-50 (4th Cir. 1977).

Under Supplemental Rule B, an order of maritime attachment must issue upon a minimal *prima facie* showing provided that the defendant cannot be "found within" the district in which the property is sought to be attached. *See Supplemental Admiralty Rule B.* Under Supplemental Admiralty Rule E(4)(f), any person claiming an interest in the attached property shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the attachment should not be vacated or other relief granted consistent with these rules. It is clear from the text of Supplemental Admiralty Rule E(4)(f) that the party having obtained the maritime attachment bears the burden of showing that the attachment should not be vacated.

As set forth above, the Second Circuit Court of Appeals in *Aqua Stoli, supra,* held that a Supplemental Admiralty Rule (E)(4)(f) post-attachment hearing is not intended to resolve the dispute between the parties, but rather merely to determine if the procedural requirements of Supplemental Admiralty Rule B were met. Yet, this is precisely what Shanghai Fareast has

asked this Court to do.  Under *Aqua Stoli,* however, as long as the plaintiff establishes that it has alleged a *prima facie* valid maritime claim, the defendant is not present in the district, the defendant's property has been restrained in the district and no other statutory bar to the attachment exists, the attachment should be upheld.  *See Aqua Stoli*, 460 F.3d at 445.

Once a plaintiff has satisfied the *Aqua Stoli* requirements, the burden then shifts to the defendant to prove one of the limited bases for vacatur.  *Aqua Stoli* provides that an otherwise facially valid Supplemental Rule B attachment may only be vacated upon three bases.  *Id.*

Here, as set forth more fully below, Plaintiff has met its burden to allege a prima facie maritime claim, and Defendant has failed to show that any of the *Aqua Stoli* bases for vacatur exist in this case.  Defendant does not allege that it is subject to suit in an adjacent jurisdiction, does not allege that Plaintiff could obtain *in personam* jurisdiction over it in the district where Plaintiff is located, has not shown that Plaintiff has otherwise obtained sufficient security and has not argued that the funds under attachment do not belong to it.  Based on the foregoing, Defendant's motion to vacate must be denied as it fails to advance any legitimate basis upon which the attachment may be vacated pursuant to Supplemental Admiralty Rule E(4)(f).

> **B.    Plaintiff has a valid maritime claim against Shanghai Fareast sounding in tort and breach of contract**

There is no question that under Supplemental Rule B the Plaintiff has a *prima facie* valid maritime claim against Shanghai Fareast.

### 1.    Plaintiff's claim is maritime in nature

Defendant does not dispute the maritime nature of the claims Plaintiff has asserted.   It is axiomatic that a claim based on the wrongful and tortious actions of a defendant with regards to maritime commerce, such as the improper issuance of bills of ladings, as is involved here, is maritime in nature.  *See Sirius Ins. Co. (UK) Ltd. v. Collins,* 16 F.3d 34, 36 (2d Cir. 1994)

(citations omitted)(holding that the jurisdictional grant extends to contracts which relate to the navigation, business, or commerce of the sea).

### 2. Plaintiff's burden to show a legally sufficient claim

Plaintiff's burden of alleging a legally sufficient, *i.e. prima facie* valid, claim in order to sustain the attachment is governed by federal procedural law. *See Mediterranea Di Navigazione Spa v. Int'l Petrochemical Group S.A.,* 06 Civ. 6700 (JGK), 2007 U.S. Dist. LEXIS 35869, *15-*16 (S.D.N.Y. 2007) citing *Dominion Bulk Int'l, S.A.* v. *Naviera Panoceanica*, 06 Civ. 6854 (LAP), 2006 U.S. Dist. LEXIS 85616, (S.D.N.Y. 2007) at *1 (holding "federal procedural law applies to the requirements of an attachment. The attachment of funds is considered a procedural remedy, and federal law applies to procedural issues in admiralty cases). *Id.; see also Winter Storm Shipping v. TPI,* 310 F.3d 263, 275 (2d Cir. 2002); *Filia Compania Naviera, S.A. v. Petroship*, S.A., No. 81 Civ. 7515 (RWS), 1982 U.S. Dist. LEXIS 9404, at *8 (S.D.N.Y. 1982) (holding that "[a] general principle of conflict of laws provides that on procedural matters, as opposed to substantive rights of the parties, the law of the forum applies due to the interest of the forum in the manner of judicial administration."). The law of the contract applies to the question of whether a claim has accrued, but federal law governs the determination of whether an attachment is appropriate. *See T&O Shipping v. Lydia Mar Shipping Co. S.A.*, 415 F. Supp. 2d 310, 314 (S.D.N.Y. 2006) *overruled on other grounds in Aqua Stoli, supra.*

Here, the attachment has been obtained pursuant to the laws of the United States, and thus in determining whether Plaintiff has <u>alleged</u> a prima facie valid claim, the Court should look to federal pleading requirements. *See Tide Line v. Eastrade Commodities,* 06 CV 1979 (KMW), 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. 2006). Applying federal law, the Plaintiff has established its burden of alleging its claim for breach of contract and tort.

As long as the plaintiff alleges enough facts such that the defendant can determine the basis of its claim and form a responsive pleading, plaintiff has satisfied the "prima facie valid maritime claim" requirement.  *See Ice Flake Maritime Ltd. v. Westcoast AS*, 2007 U.S. Dist. LEXIS 75677 (S.D.N.Y. 2007) (finding that plaintiff had alleged a prime facie valid admiralty claim despite defendant's arguments  that damages were not recoverable under applicable law); *See also Ronda Ship Mgmt. v. Doha Asian Games Organising, Comm.*, 511 F. Supp. 2d 399, 403 (S.D.N.Y. 2007)(finding that notwithstanding the numerous declarations submitted by foreign counsel on the alleged lack of merit (on a factual and legal basis) of plaintiff's claims, plaintiff met its burden to allege a prima facie valid maritime claim).  While, of course, a claimant cannot support an attachment with an entirely frivolous claim, the burden to prove a claim is frivolous is very high.  The courts are rightfully loathe to act as triers of fact and make such a finding where the substantive case is to proceed in another forum.   To be frivolous, it appears a party must show that a claim must be so lacking in merit that it was advanced solely to secure a negotiating advantage over the complainant.  *See Tang Kheok HWA Rosemary v. Jaldhi Overseas Pte Ltd*., 2008 U.S. Dist. LEXIS 1728, *7 (S.D.N.Y. 2008)(finding that despite questions as to the validity of defendant's counter-claim, that it should be awarded counter-security").   Such an argument cannot be seriously entertained here.  As established in the declarations of Mr. Ivanov and Mr. Huang, Navision's claims are valid and are far from frivolous.

In *Wajilam Exps. (Singapore) PTE Ltd., v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275 (S.D.N.Y. 2006), Judge Lynch addressed the level of scrutiny to be used when presented with a motion to vacate post *Aqua Stoli*.  Judge Lynch held that a plaintiff is not required to prove its case in order to defeat a motion to vacate – discovery had not been had and it would defeat the purpose of a Rule B attachment to require a plaintiff asserting a valid prima facie maritime claim to prove that the facts in the complaint are true.  475 F. Supp. 2d. at 279 (*citing to Japan Line,*

*Ltd. v. Willco Oil Ltd.,* 424 F. Supp. 1092. 1092, 1094 (D. Conn. 1976); *compare Finecom Shipping Ltd. v. Multi Trade Enterprises AG*, 2005 U.S. Dist LEXIS 25761 * 4 (S.D.N.Y. 2005)(In evaluating a claim on motion for counter-security, the district court cautioned; "[h]owever, a court's ability to understand the merits of a dispute at an early stage is limited, and courts should be reluctant to prejudge the merits of claims based essentially on the pleadings and sparse record consisting of a few documents, in advance of discovery.  This is particularly so when the ultimate merits will be decided not by this Court, but by an arbitration panel in another country").

In *Ronda Ship Mgmt.*, 511 F. Supp. 2d at 403, the Court elaborated on (and endorsed) the standard to be applied when considering the adequacy of a claim:

> [M]aritime plaintiffs are not required to prove their cases at this stage of a Rule E(4) hearing.  *Transportes Navieros Y Terrestes, S.A. De D.V. v. Fairmount Heavy Transp. N.V.*, No. 07 Civ. 3076 (LAP), 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007) (citation omitted). Moreover, Aqua Stoli implies that a plaintiff need not provide evidence showing that it has a claim against the defendant to satisfy its burden under Rule E(4)(f). *Tide Line*, 2006 U.S. Dist LEXIS 95870, at *16.. . . The prima facie standard in the maritime attachment context is a pleading requirement, not an evidentiary standard, and differs from the use of that phrase in other contexts. 2006 U.S. Dist LEXIS 95870, at *17.  To plead a valid prima facie admiralty claim, Supplemental Rule E(2)(a) requires that a complaint "… state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."

*Ronda Ship Mgmt.*, 511 F. Supp. 2d at 403; *See also* Fed. R. Civ. P. Supp. R. E(2)(a).

As indicated above, as long as Plaintiff alleges sufficient facts from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading, it has met its burden to show a *prima facie* valid claim.

While a few district courts have cursorily examined the underlying substantive claim to determine whether it has <u>accrued</u> under foreign law, this appears to be limited to situations where

the plaintiff has requested security for an <u>indemnity</u> claim against the defendant.   Such an analysis would not apply here, as Plaintiff has alleged claim(s) for <u>direct</u> damages.  *See Huang Declaration ¶18 and Ivanov Declaration ¶16.*

Regardless, despite the fact that Plaintiff is not required to prove the merits of its claim in this ancillary proceeding, for the sake of good order, it has submitted declarations from Chinese and English counsel which establish that it has alleged a valid, *prima facie* maritime claim under Chinese and English law against Shanghai Fareast that can be pursued in the applicable foreign court(s).  As will discussed in more detail below, because Plaintiff has met the federal pleading requirements, and because its claim is ripe and otherwise valid under Chinese and English law, the Defendant's motions to dismiss, for summary judgment and to vacate the attachment should be denied.

**3.  Plaintiff has met its burden of alleging a prima facie valid maritime claim under federal procedural, English and Chinese law.**

**(a) Plaintiff has satisfied the requirements of Federal procedural law**

Plaintiff has clearly alleged a valid prima facie valid claim under federal procedural law. The Plaintiff's claim asserted against Shanghai Fareast is that Shanghai Fareast breached its agreement with Plaintiff and disregarded the limited authority provided therein with respect to the issuance of bills of lading for cargo that was to be carried on board the vessel M/V BRAVE JOHN.  Plaintiff's claim(s) sound in both breach of contract and tort.

Thus, Plaintiff alleged as follows:

55.    By a charter party dated July 7, 2007, Plaintiff chartered the Vessel to Yong He for the carriage of cargo.

56.    Shanghai Fareast wrongfully and unlawfully issued and released pre-dated bills of lading, and also provided the same with the wording "freight prepaid" which was clearly inconsistent with the master's authorization to sign the bills of lading.

57.    As a result of Shanghai Fareast's unlawful authorization of the bills of lading, Plaintiff has suffered losses in the principle amount of $2,044,257.18, exclusive of interest, costs and attorneys fee.

58.    Despite due demand, Lianyungang[3] has failed and/or refused to pay the sums due and owing to Plaintiff.

59.    Thus, in due course, Plaintiff will commence proceedings against Lianyungang in an appropriate venue.

*See Second Amended Complaint, ¶¶55-59.*

Plaintiff has alleged the nature of claim, *i.e.* Defendant's breach of the Master's letter of authorization and/or Defendant's breach of the duty thereunder by wrongfully and unlawfully issuing ante-dated bills of lading and providing the same with the wording "freight prepaid." Plaintiff also alleged that it sustained damages as a result of Defendant's breach, and set forth its intention to bring a claim thereon in the appropriate venue.   It is abundantly evident that Defendant, based on Plaintiff's allegations in the Second Amended Complaint, has been able to conduct an investigation of the facts and frame a responsive pleading.  In fact, it has been able to submit numerous declarations on the alleged weaknesses of Plaintiff's claim.  Thus, any argument that Plaintiff's allegations were insufficient according to the standard set forth above is disingenuous and should be disregarded.  *See Flora Maritime Ltd. v. Inter Elfra International GMBH et al.*, (06 Civ. 6372) (RMB) annexed hereto as Exhibit "A" (upholding attachment and denying defendant's argument that plaintiff failed to allege a prima facie valid claim stating that "Defendants can hardly argue that [they] ha[ve] been unable to commence an investigation of the

---

[3]    We note that the reference to "Lianyungang" in paragraphs 58 and 59 was clearly supposed to state "Shanghai Fareast."  We apologize to the court for this error.  As provided for in the case, *Flora Maritime Ltd. v. Inter Elfra International GMBH et al.*, *infra,* we request that Plaintiff be afforded leave to correct the inadvertent mis-reference.  *See Flora Maritime Ltd. v. Inter Elfra International GMBH et al., (06 Civ. 6372 (RMB) citing Fama v. Comm'r of Corr. Servs*., 235 F.3d 804, 815 (2d Cir. 2000) (upholding attachment and finding that pursuant to the 'liberal policy in non-habeas civil proceedings of allowing amendments to correct a defective pleading,' that Plaintiff be allowed ten days from the date of the decision to correct its typographical errors by amended complaint).

facts and frame a responsive pleading, because [they] ha[ve] already done both.") (internal citations omitted).

Any substantive arguments as to the validity of Plaintiff's claim should be directed to the Tribunal that considers the merits of Plaintiff's substantive claim.  Thus, as Plaintiff has presented more than sufficient allegations in the Second Amended Complaint to satisfy the pleading standard under the Federal Rules of Civil Procedure, it has alleged a prima facie valid admiralty claim and the attachment cannot be vacated.[4]

Even assuming *arguendo* that Defendant's challenges to the merits of Plaintiff's claim are proper, which is denied, they are based on a flawed interpretation of English law and Chinese law.   As established below, Plaintiff has a valid claim under both Chinese and English law.

### (b) Plaintiff has a valid prima facie claim under Chinese law

Navision maintains that it has alleged valid, maritime claim against Shanghai Fareast under Chinese law and presents the accompanying Huang Declaration in support thereof.  Mr. Huang's legal opinion is based on his review of the facts and, also his analysis of the legal position under Chinese law.  His analysis of Chinese law directly contradicts the arguments made by Defendant, and Mr. Huang concludes that "Navision has a valid claim against Shanghai Fareast for the loss suffered under Chinese law by tort or by breach of contract."  *See Huang Declaration ¶41.*

 With respect to the claim for breach of contract, Mr. Huang opines that the letter of authorization presented by the Master of the M/V BRAVE JOHN constitutes a contract[5] under Chinese law, and that Shanghai Fareast breached that contract when it issued the bills of lading

---

[4]     As stated above, a defendant could theoretically vacate an attachment by making a definitive showing that plaintiff's claim is entirely frivolous.  However, here, Defendant cannot make and has not made such a showing. *See accompanying Ivanov and Huang Declaration.*

[5]     Both Mr. Ivanov and Mr. Huang establish that Defendant's argument that it did not "accept" the terms of the contract is without merit under Chinese and English law.  *Ivanov Declaration,¶ (1) g; Huang Declaration, ¶39.*

contrary to the Master's instructions.  *See Huang Declaration, ¶¶26-37.*  According to Mr. Huang, Shanghai Fareast acted in violation of Chinese law when it acted contrary to the Master's authorization.  In the alternative, Mr. Huang confirms that Navision can pursue a claim for maritime tort against Shanghai Fareast by reason of the fact that Navision will be able to establish all the elements for a claim of tort under the circumstances of this case and Chinese law.[6]

Mr. Huang further confirms that Plaintiff would have standing to bring such claims in a Chinese court, and they would not be hindered by Defendant's competing charter party and/or agency arguments.  *Huang Declaration ¶¶22-26.*  Particularly, Mr. Huang establishes that Navision's charter party with Yong He appears to be the true and valid one, notwithstanding Shanghai's argument to the contrary.  *Id.*  Defendant's contention that a different charter party was in place between the head owner, Oresteia, and Yong He is unconvincing and is merely one of the many factual disputes between the parties.  The competing, seemingly invalid charter party offered by Shanghai Fareast is a red herring and does not in any event act as an impediment to Plaintiff's cause(s) of action under Chinese law.

Countering Defendant's argument that it is not liable under principle-agent theory, (*i.e.* that it was purely an agent of the charterer, Yong He, Mr. Huang clarifies that Shanghai Fareast could be regarded as the <u>agent of Navision</u> rather than Yong He.  *Huang Declaration ¶57.* As an agent of Navision, Shanghai Fareast would be clearly liable for its wrongful actions.  Furthermore, no matter what argument Shanghai Fareast presents regarding principle and agent,

---

[6]    Shanghai Fareast also claims that Plaintiff "Navision Shipping Company A/S" is not the correct party in interest in this action because the name "Navision Chartering A/S" appears on the Fixture-Recap and the master's authorization.  However, as alleged in the Second Amended Complaint, Plaintiff Navision was at all material times the disponent owner of the Vessel in relation to the Defendant Yong He.  "Navision Chartering A/S" is Plaintiff's general agent and the charter to Yong He was entered into by "Navision Shipping A/S" c/o or via "Navision Chartering A/S."  This does not alter the fact that Navision Shipping A/S is the real party in interest.   As stated above, Navision Chartering was merely Navision Shipping's general agent.

it cannot escape liability for its acts as Article 67 of the Civil Law of China provides that if an agent is aware that the matters entrusted to it are illegal, but still carries them out, the principal and the agent should be held jointly liable. *Huang Declaration ¶¶59.* There are many cases where the Chinese courts have held that the wrongful and unlawful issuance of bills of lading, such as the issuance of pre-dated or ante-dated bills of lading is an illegal act. And, Shanghai Fareast's actions appear to fall within Article 67 of the Civil Law of China. *Id.*

As Plaintiff has a prima facie claim(s) against Shanghai Fareast under Chinese law, Defendant's challenges should be regarded as just that, challenges to be more appropriately raised in the Chinese court proceeding. Therefore, Defendant's motion to vacate and/or dismiss should be denied for this reason alone.

### (c) **Plaintiff has a valid prima facie claim under English law.**

Navision maintains that it has a valid claim against Shanghai Fareast under English law as well, and presents the accompanying Ivanov Declaration in support thereof. Mr. Ivanov's legal opinion is based on his review of the facts and, and his analysis of the legal position under English law. His analysis of English law directly contradicts the arguments made by Defendant, and he concludes that "Navision would have a prima facie valid cause of action under English Law against Shanghai Fareast irrespective of whether or not Navision was a strict party to the bill of lading." *See Ivanov Declaration ¶(4) a.*

As under Chinese law, Mr. Ivanov posits that that the letter of authorization presented by the Master of the M/V BRAVE JOHN could be found a contract under English law. Furthermore, Shanghai Fareast could be found to have acted in violation of English law when it acted contrary to the authorization from the Master. *See Ivanov Declaration ¶(1) q.*

The issuance of freight pre-paid bills of lading by Shanghai Fareast was in direct contradiction to the terms of the Master's letter of authorization and was manifestly wrongful.

*Ivanov Declaration ¶3(b).*  Navision sought to obtain a lien on the cargoes at discharge ports both in Italy and Spain, however it was advised in both jurisdictions that it would not be possible to exercise a lien on the basis that the bills of lading were marked "freight prepaid."  Therefore, irrespective of the strict legal position, Shanghai Fareast's deliberate failure and/or refusal to comply with the clear terms of the Master's letter of authorization in issuing and releasing "freight prepaid" bills of lading, directly resulted in Navision being deprived of its right to exercise the lien on the cargo and gives rise to a cause of action under English law. *See Ivanov Declaration, ¶(3)i.*  Therefore, Plaintiff has a sound claim for its damages against Shanghai Fareast under English law.

Finally, and because Shanghai Fareast has chosen to argue the merits of its defenses to Navision's claim(s) with reference to English law, it is necessary to address those arguments. Briefly stated, things are not as clear cut as Shanghai Fareast pretends them to be.  Most certainly, there are no absolute rules of English law that required Shanghai Fareast to issue ante-dated "freight prepaid" bills of lading which would otherwise operate to preclude Navision from asserting and prosecuting its maritime claims against Shanghai Fareast.  In support of Navision's position on these issues, the Court is directed to the accompanying Ivanov Declaration.

Mr. Ivanov makes a more than compelling argument that Shanghai Fareast has either misapplied and/glossed over the points of English law in its effort to vacate the attachment.  As established in the Ivanov Declaration, none of Plaintiff's arguments as applied to the instant facts preclude Plaintiff's valid cause of action against Shanghai Fareast under English law. Defendant's arguments are addressed in the order presented in Defendant's Memorandum of Law.

Defendant first argues that Plaintiff cannot allege a prima facie valid claim because Shanghai Fareast acted at all times as an agent for its disclosed principle, Yong He.   However,

this is no such hard and fast rule under English law.  As a matter of English law, there is no

reason why an agent cannot be entitled and/or liable on a contract which it has made for his

principal, or upon a separate or related contract.  An agent can, for example, undertake a separate

liability on a collateral contract.  Mr. Ivanov refers the Court to the leading text Bowstead &

Reynolds on Agency  (18th ed. 2006 at 9-005 which states that "***In all cases** the parties can by

*the express contract provide that the agent shall be the person liable either concurrently with or

to the exclusion of the principal*".[7]  The question of whether an agent is deemed to have

contracted personally, and if so the extent of his liability, will be deduced from the nature and

terms of the particular contract and the surrounding circumstances.  As in all matters of

formation, the test is objective.  *Ivanov Declaration, ¶(1) o.*  Therefore, whether Shanghai

Fareast's actions fall within the scope of this defence will have to be determined in the English

court proceeding.  The fact that Defendant may raise and ultimately attempt to prove this defence

in the English proceeding in no way proves that Plaintiff has failed to allege a prima facie

maritime claim under English law.

Next, Defendant argues it is not liable because the bills of lading were issued in

conformity with the charter and /or the mate's receipts and that Navision and the Master had no

right to impose additional conditions on the issuance thereof.   Both of these arguments are

unavailing.

The letter of authorization transferred to the vessel charterers, Yong He, and its agents the

right to issue and sign bills of lading, under certain terms and conditions.   There is nothing

hostile to or inconsistent with the charter party within the letter of authorization.  Indeed, Yong

He and its agents have a positive duty to ensure that Navision's lien rights are protected when

issuing bills of lading.  The fact that the terms of authorization may go beyond the terms of the

---

[7]   See also  Montgomerie v UK Mutual S.S. Assn [1891] 1 Q.B. 370 at 372.

charter does not alter the position (indeed, this must have been envisaged given the charter party requirement to procure separate authorization by agreement).  Moreover, there is little doubt that Shanghai Fareast intended to be bound by these terms as set out in the letter of authorization. Ivanov Declaration, ¶(1) j.

Moreover, in Mr. Ivanov's opinion, the fact that Mate's Receipts were similarly claused will not preclude Plaintiff's cause of action against Shanghai Fareast.  The Mate's Receipts are not binding contractual documents in these circumstances, and Shanghai Fareast should not be held in a position to rely on these, given that the relevant information on which they seek to rely is, or should be, fairly within their own or their principal's knowledge. *Ivanov Declaration, fn. 11*.

Defendant then argues that there can be no possible viable claim respecting the issuance of "freight pre-paid" bills of lading as a charterer is empowered to issue "freight-prepaid" bills of lading even if that prejudices a vessel owner's right of lien.   However, this legal assertion improperly glosses over the fine points of English law.  In making this statement, Shanghai Fareast's solicitor, My Earnest Yang, improperly relies on the decision in the "*Nanfri*" which is not applicable here.

As Mr. Ivanov explains, *the Nanfri* decision is clearly distinguishable from the present case and Defendant's argument on this point is without merit. *Ivanov Declaration ¶¶ ((1) b-d.* Contrary to Defendant's argument, Shanghai Fareast's issuance of the "freight pre-paid" bills of lading was wrongful for the following reasons.  First, in the present case there is no evidence of commercial necessity for "freight prepaid" bills being issued.  Indeed, quite the opposite, the sub-charter imposes on Yong He a positive duty to use its best endeavors to ensure that the lien clause is incorporated into the bill of lading.  It seems common ground that a "freight prepaid" endorsement on a bill would operate contrary to this. *Ivanov Declaration, ¶¶(1) d.*

Second, and more decisively, "in the present case we are ***not*** dealing with an *unamended* NYPE clause 8.  An unamended clause 8 permits charterers and/or their agents to issue and sign bills of lading themselves on behalf of shipowners, rather than presenting the bills to the master for signature.[8]  However, in this case the relevant NYPE clause 8 has been *amended* to require prior and separate authorisation from the Master before bills of lading can be signed by charterers or their agents on his behalf.  *In The Berkshire* [1974] 1 Lloyd's Rep 185, the English Court envisages that such authorization be given either by special charter clause (not the case here) or '*by agreement after the charterparty is signed*'".[9]  *Ivanov Declaration ¶(1) e.*

Therefore, under the amended clause 8, express authorization by agreement was required in order to transfer to Yong He and its agents the right to issue and sign bills of lading on Navision's behalf.  This right was ordinarily vested in the Master but was transferred to Yong He and its agents under specific terms and conditions to be complied with when issuing the bills of lading.   The terms of this agreement are evidenced in the signed agreement entitled "Authorization to Sign Bills of Lading on My Behalf" and dated August 22, 2007.  Thus, the Master was entitled to present this agreement as he did, and to set out the terms and conditions for granting such authorization to Yong He and Shanghai Fareast.  *Ivanov Declaration ¶(1) f.*

The fact that some bills were marked "freight collect" does not extinguish Navision's cause of action in these circumstances, although, after discovery in the underlying English action, it could theoretically effect the quantum of the claim.  Whether a lien could have been exercised on part cargo would depend upon numerous factors, including whether the cargo was clearly separable and/or identifiable etc.  Thus, only after discovery, can it be determined if

---

[8]    *The Berkshire*:  See footnote 2 above.

[9]    In <u>Wilford on Time Charters</u> (2003) (the leading text ofter referred to in English Court or arbitration proceedings) at para 21.48 it states: "*In The Berkshire the master had in fact given the express authority to the charterers' agents to sign the bills of lading.  Where there is such actual authority from the owners or the Master,* <u>*either by special charter clause to that effect of by agreement after the charter is signed*</u>*, then there is no doubt that the charterers or their agents may bind the owners*".

amounts should be deducted from the principle claim for those bills of lading allegedly marked "freight collect." *Ivanov Declaration (3) j.*

Defendant also asserts that Plaintiff has no cause of action because there is no clear right to lien cargo owned by a third party. However, this is starkly contradicted by Mr. Ivanov who states, "in accordance with the facts as presented to me, Navision have, in principle, a contractual right to lien cargo owned by third parties as long as the charter lien cause (clause 18) has been incorporated into the bills of lading." *Ivanov Declaration ¶¶ (4) a; (3)(d).* Defendant's own English counsel appears to indicate that that the lien clause was incorporated into the bills of lading. *Ivanov Declaration ¶¶3(d)-(e).* Thus, Defendant's argument must fail on this point as well.

Defendant implies that Plaintiff was required to allege that it had a right to lien the cargo in the Complaint. This is not true. Plaintiff alleged the facts and circumstances surrounding its claim including, but not limited to, the contract, the breach, and the damage caused. If the nature of Plaintiff's cause of action was really so obscure, then Defendant would not have been able to attack it with such specificity in its Memorandum of Law. *See Defendant's Memorandum of Law, at* 11 (stating "[i]f one assumes all facts and circumstances in Plaintiff's favour, its theory might be as follows . . .").

Finally, Defendant's argument that Plaintiff has no cause of action because the bills of lading incorporated the charter party, including a lien clause, is similarly without merit. Even if Shanghai Fareast did incorporate the charter party lien clause into the bills of lading, which has not been definitively proven here, by subsequently marking the bills "freight prepaid" Navision's right to exercise such lien <u>was still prejudiced</u>, and in practice they were prevented from doing so. *See Ivanov Declaration, ¶¶4(a)(ii); 3 (e)(j).* Thus, Navision was still aggrieved by

Defendant's wrongful actions and has a cause of action against Shanghai Fareast under English law.

### C.    Defendant is not present in the District

Based on the Affidavit submitted by Plaintiff at time it sought issuance of the Second Amended Rule B attachment and the lack of any contrary argument, it is clear that Defendant is not present within the Southern District of New York.  Shanghai Fareast has not claimed otherwise in any event.

### D.    Defendant's property has been attached in the District

Defendant concedes that its property has been attached as a result of Plaintiff's service of the PMAG on garnishee banks within the District.  *See Defendant's Memorandum of Law* at 9.

### E.    There is no other statutory bar to Plaintiff's attachment

Defendant fails to identify any statutory bar that would serve to defeat Plaintiff's attachment.  Based on the foregoing, it is clear that Plaintiff has satisfied its burden of proof to maintain its the attachment of Defendant's property in this action.   Thus, Defendant's motion to vacate attachment and dismiss the action should, accordingly, be denied.

### F.    Shanghai Fareast's objection to venue is inapplicable here

Defendant's argument that the New York venue is inappropriate completely disregards the nature of Rule B.  Plaintiff is not attempting to bring the substantive action this Court.  And, equally maritime attachment is available *only if* the defendant *cannot* be found in the district.  *See* Supp. Adm. R. B (2005).   Similar to a forum non-conveniens argument, venue concerns are misplaced in the Rule B context.

"The very nature of Rule B assumes that the defendant cannot be found in the district.  Forum non-conveniens concerns do not automatically trump either an agreement to arbitrate or Rule B.  Supplemental Rule B attachment is premised upon and exists only

if it is inconvenient.  If complaints of inconvenience could remove an action form [a]

forum, then the Rule would be rendered hollow."  *See Linea Naviera de Cabotaje,C.A. v.*

*Mar Caribe de Navegacion, C.A*., 169 F. Supp. 2d 1341, 1352-1353 (D. Fla. 2001)*; see*

*also Opinion in Prestigious Shipping v. Agrocrop, 07 Civ. 7101 (CM) annexed hereto as*

*Exhibit "B"*(holding that such concerns are inapplicable in Rule B context).

**POINT II**

**NAVISON'S CLAIM IS FOR DIRECT DAMAGES AND
HAS ACCURED UNDER ENGLISH AND CHINESE LAW,
<u>THUS ANY ARGUMENT AS TO "PREMATURITY" IS MISPLACED</u>**

Navison's claim is not premature.  *See Huang Declaration ¶18 and Ivanov Declaration*

*¶16.*  In fact, Defendant's entire prematurity argument is inappropriate in the instant scenario.

Prematurity is a factor which is considered when evaluating whether an <u>indemnity</u> claim may

serve as the basis of a Rule B attachment.  Here, Plaintiff has not alleged an indemnity claim, but

rather a direct claim for damages.   All of the cases cited by Defendant in support of its

prematurity argument are inapposite as they all involve the question of whether an indemnity

claim is sufficiently mature or ripe.  In the context of an indemnity claim prematurity issues can

arise.  Thus, some district courts have found that where a claim is based on indemnity and the

<u>underlying matter upon which the indemnity is based has not been resolved,</u> the claim is unripe

and is not a proper basis for a maritime attachment pursuant to Supplemental Admiralty Rule B.

However, where the underlying claim is not based on indemnity, it is well accepted that a

plaintiff may apply for an attachment in <u>contemplation</u> of litigation.  *See Ronda Ship Mgmt.*, 511

F. Supp. 2d at 403 (holding that as plaintiff sought an attachment in contemplation of litigation in

London, its action was not premature)*; AET Inc. v. Martimos, Cardoso & Fonesca,* 464 F. Supp.

2d 241, 243 (S.D.N.Y. 2006) (indicating that a plaintiff may file an attachment to obtain security

23

where "the plaintiff contemplates litigation in Brazil, where Proc [the alleged debtor] is located").

Notably absent from the applicable case law and the Supplemental Admiralty Rules is any provision requiring that the underlying action be initiated before Plaintiff obtains an attachment pursuant to Supplemental Rule B.  Rather, it is a well-settled principle of maritime attachment that a plaintiff may seek security for its claim before the underlying claim is initiated. *See World Reach Shipping Ltd. v. Industrial Carriers Inc.*, 2006 U.S. Dist. LEXIS 83224, at *1 (Nov. 9, 2006)("the issues presented to this Court involved the parties' efforts to secure their claims before proceeding to arbitration")(emphasis added)).

Judge Karas rejected an argument similar to Shanghai Fareast's in *Front Carriers Ltd. v. Transfield ER Cape Ltd.,* 07-cv-06333 (RJS) holding that even though the underlying proceeding had not be initiated (almost three months after funds had been restrained in New York) that attachment was still valid and defendant's motion to vacate on this basis should be denied. *Please find attached hereto as Exhibit "C" the transcript of that proceeding.*

Plaintiff intends to diligently pursue its claim in England and/or China.  Any perceived delay is due to Plaintiff's efforts to investigate and prepare the claim as all of the relevant information is not directly within its control.  Regardless, since Plaintiff's claim is not based on indemnity and has accrued under applicable law, the Defendant's prematurity argument is wholly inapplicable, and Defendant's motion to vacate should therefore be denied.

## POINT III

### AS PLAINTIFF HAS SATISFIED THE REQUIREMENTS OF RULE B, DEFENDANT'S MOTION TO DISMISS AND REQUEST FOR SUMMARY JUDGMENT SHOULD BE DENIED

As shown above, since Plaintiff has met the requirements of Rule B, including pleading a *prima facie* valid claim under federal procedural law, Defendant's motion to dismiss the case

should be denied. It is notable that Defendant did not cite any cases involving maritime attachment in support of its motion to dismiss. This is because in an action brought pursuant to Supplemental Rule B, where the substantive proceeding is to take place in a foreign court, the inquiry in a motion to dismiss should be is limited to examining whether the requirements of the Supplemental Rules have been met, including the pleading requirement. *See Wajilam Exps. (Singapore) Pte, Ltd. v. ATL Shipping Ltd.,* 475 F. Supp. 2d 275, 276 (S.D.N.Y. 2006)(applying the standard for a motion to vacate pursuant to Rule E(4)(f) in the context of a motion to dismiss pursuant to Rule 12(b)(6) and upholding the attachment).

Under its law, the applicable foreign court will ultimately determine the merits of Navision's claim because it will have proper jurisdiction over the substantive matter. Here, where the underlying action is to proceed in a foreign court (China and/or England), this Court's inquiry should be limited to determining whether the requirements of the Rule have been met, which would determine whether the Court has subject matter and personal jurisdiction over the case.

In addition, as confirmed by its Chinese and English counsel, and as set forth above, Navision has indeed alleged a prima facie valid maritime claim under Chinese and English law. Moreover, it should be taken into account that in a motion to dismiss or for judgment on the pleadings "the court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003).

Taking all facts alleged by Navision in its Second Amended Complaint as true (the charter party, the Master's authorization, the Defendant's breach thereof and the corresponding liability/damages), it is clear that Navision has pled a prima facie valid maritime claim against Shanghai Fareast sounding in tort and breach of contract. Defendant's arguments that the sum of

Plaintiff's pleadings do not amount to a cause of action are specious and are belied by the declarations of Plaintiff's Chinese and English counsel.  Thus, Defendant's motion to dismiss pursuant to Rule 12(b)(6) must denied.

Finally, Defendant's request that the Court consider and enter summary judgment should fail as: (1) it is inappropriate to engage in a summary judgment inquiry at this time before any discovery has taken place or the underlying action has been initiated; and (2) a myriad of "undisputed" facts are in fact disputed in the Second Amended Complaint itself.
some of the alleged undisputed facts are disputed in the Second Amended Complaint itself.

Summary judgment is only proper if the Court finds that: (1) there are no genuine issues of material fact; and (2) the movant is entitled to judgment as a matter of law.  In making these determinations, the court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought."  *Heyman v. Commerce & Indus. Ins. Co.*, 524 F. 2d 1317, 1320 (2d Cir. 1975).  It is Defendant's burden to show there is no issue of material fact.    Furthermore, even where there are no material facts in dispute, the court should nonetheless deny summary judgment were the moving party set forth a flawed legal theory in support of summary judgment, as is the case here.  *See Schwab v. Philip Morris USA Inc.,* 449 F. Supp. 2d 992, 1080, 1080 (E.D.N.Y. 2006)(denying summary judgment where defendants misunderstood relevance of facts with respect to plaintiff's legal theory).

Here, Defendant cannot and has not met its burden.  Mere comparison of the competing declarations on English and Chinese law reveals that there are genuine disputes on a majority of relevant material facts, including but not limited to the operative documents, Defendant's role in relation to Navision and Yong He under the Master's letter of authorization, Defendant's duty under the Master's letter of authorization, the law to be applied to the dispute (Defendant urges

26

U.S. law at times), the clauses contained in the charter party and exact contents of the bills of lading.

Finally, the Court should decline Defendant's invitation to enter summary judgment via its 12(b)(6) motion as there has been no discovery in this matter.  As rightly noted by Judge Lynch in denying a defendant's request to convert a motion to dismiss into a motion for summary judgment, "[t]here would be little point in considering a summary judgment motion when significant relevant facts may yet be discovered."  *Wajilam Exps. (Singapore) Pte, Ltd.*, 475 F. Supp. 2d at 278 (S.D.N.Y. 2006).[10]

## CONCLUSION

For all of the foregoing reasons, Defendant's motion to vacate the attachment and/or dismiss the claim should be denied.

Dated:  March 3, 2008
        Southport, CT

                                    The Plaintiff,
                                    NAVISION SHIPPING COMPANY A/S


                                    By:_____/s/_____
                                        Nancy R. Peterson (NP 2871)
                                        Patrick F. Lennon (PL 2162)
                                        LENNON, MURPHY & LENNON, LLC
                                        The Gray Bar Building
                                        420 Lexington Ave., Suite 300
                                        New York, NY 10170
                                        Phone (212) 490-6050
                                        Fax (212) 490-6070

---

[10]    If the Court deems it appropriate to consider Defendant's request for summary judgment at this early juncture, to which Plaintiff object's in any event, Plaintiff's requests that the adjudication of the motion be postponed and the parties be allowed a reasonable time to conduct discovery pursuant to Rule 56(f).  *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986); *See also accompanying Declaration of Nancy R. Peterson.*

## <u>AFFIRMATION OF SERVICE</u>

I hereby certify that on March 3, 2008, a copy of the foregoing Memorandum of Law in Opposition, with exhibits attached thereto, was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.


By:_____/s/_____
Nancy R. Peterson (NP 2871)