EXHIBIT "C"

```
                           78t6froc
                                                                    1
     78t6froc
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   FRONT CARRIERS LTD.,
 3
 4              Plaintiff,
 4
 5        v.                              07 CIV 6333(KMK)
 5
 6   TRANSFIELD ER CAPE LTD.,
 6
 7              Defendant.
 7
 8   ------------------------------x
 8                                        New York, N.Y.
 9                                        August 29, 2007
 9                                        10:15 a.m.
10
10   Before:
11
11                 HON. KENNETH M. KARAS,
12
12                                        District Judge
13
13                       APPEARANCES
14
14   HOLLAND + KNIGHT
15        Attorneys for Plaintiff
15   BY:  MICHAEL J. FREVOLA
16
16   LENNON MURPHY & LENNON, LLC
17        Attorneys for Defendant
17   BY:  PATRICK F. LENNON
18
19
20
21
22
23
24
25
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                                    2
     78t6froc
 1           (Case called; in open court)
 2           MR. FREVOLA:  Michael Frevola, Holland Knight for the
 3   plaintiff.
 4           THE COURT:  You guys are in the wrong seats.
 5           MR. FREVOLA:  I got it wrong, your Honor.
 6           MR. LENNON:  Patrick Lennon, your Honor, for the
 7   defendant, Transfield ER Cape Ltd.
 8           THE COURT:  Good morning.  Have a seat.
 9           We're here because Mr. Lennon wants me to vacate an
10   attachment I signed back in the early part of the summer and so
11   I have read your papers, Mr. Lennon.
12           Mr. Frevola, responded in a very short order and I do
13   appreciate that, Mr. Frevola.
14           Let me ask you this, Mr. Lennon:  You all knew about
15   this back within days I am told of when I signed the order
                              Page 1
```

```
                              78t6froc
16   because your client's money got attached so they call you up
17   and they say, Help.  Why the delay?
18           MR. LENNON:  You mean the delay in making the
19   application?
20           THE COURT:  Yes.
21           MR. LENNON:  It wasn't actually the case we found out
22   about it because the client's money was attached.
23           THE COURT:  However you found out, you knew about it
24   sometime ago.
25           MR. LENNON:  Right.  The impact at that time was
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    3
                              78t6froc
 1   dominiums.  There was an order out and they knew they were
 2   going have problems with their funds moving.  But as time went
 3   on and even up until the time we had our e-mail exchange days
 4   after, there was a small amount -- relatively speaking in the
 5   context of this claim -- of several hundred thousand dollars
 6   attached.
 7           I was taking instructions from my client at the time
 8   about a counterclaim that they intended to pursue and still
 9   intend to pursue.  As the weeks went on, I continued to get
10   notices from Mr. Frevola that money kept continuing to be
11   attached.  We are now up to 3.2 or 3 million dollars that is
12   under attachment.
13           In terms a delay, there is really no delay.  In the
14   context of the discussions we had, it really has nothing to do
15   the issues that we raised about the premature nature of the
16   claim.  It has to do with whether or not we might have posted
17   substitute security and demanded counter security.
18           The issues we are complaining about are you are here
19   in New York and you have taken this attachment order out, your
20   complaint says you are going to pursue this claim in Paris
21   arbitration and that you are preparing to do that and nothing
22   happens but our money continues to be attached.
23           I guess our principal complaint is you have no
24   substantive claim.  You said you are going to assert one, but
25   you haven't.  So for the purpose of this proceeding I don't
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                    4
                              78t6froc
 1   really dispute the notion that they could commence a proceeding
 2   by taking out an attachment order.  That is not the issue.  The
 3   issue is once you've taken out an attachment order, you have an
 4   obligation to pursue your claim of diligence.  What we have
 5   seen in these papers, and actually I was quite astonished to
 6   read it, there is no representation that they are actually
 7   going to go forward with this claim in Paris.
 8           THE COURT:  Well, I am going to ask that question in a
 9   minute.  Let's break this down.  Your first beef with this you
10   get into the weeds on whose fault it is and whether they
11   breached the contract or you breached the contract.  At this
12   stage, under Aqua Stoli, I don't get into the merits of that
13   part of the case at all, right?
14           MR. LENNON:  That's correct.  That's not our argument.
15           THE COURT:  It is part of your argument?
16           MR. LENNON:  Our argument really, your Honor, isn't
17   that they couldn't assert a proper maritime claim.
18           THE COURT:  Your argument is that they haven't.
19           MR. LENNON:  Correct.  The equities of what is at
20   issue here.  I don't think that Aqua Stoli is as narrowly --
                              Page 2
```

```
                          78t6froc
21     can be as narrowly read as the plaintiff suggests it can.
22             THE COURT:  Right.  I don't see Aqua Stoli as
23     overruling any of the cases that Mr. Frevola cites either or
24     even hinting to that that suggests somehow that there has to be
25     an actual live litigation or arbitration that proceeds the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```
                                                                    5
```
       78t6froc
 1     attachment.
 2             MR. LENNON:  I think that is correct to answer
 3     bluntly.  I think the issue is a little more subtle than that
 4     in my way of thinking because you may be able to commence your
 5     proceeding in this manner and I don't dispute that because I do
 6     it all the time.  The question then becomes:  What is your
 7     obligation, can you sit around for six months a year, two years
 8     until you have $15 million?
 9             THE COURT:  Is there a case out there that sort of
10     tells us what the limit is?  I agree with you at some point of
11     course then later Justice Marshall makes or hints that there is
12     a limit here that at some point the Court has the discretion to
13     say this isn't even close to right.  There is the whole string
14     of cases dealing with the indemnity context.  That obviously is
15     something that is not in play here, but the principle may be in
16     play here.  What is the limit?
17             Let's say right now Mr. Frevola says, It turns out
18     they don't do anything in Paris in August so come September we
19     are going to go ahead and time for arbitration.
20             Is that enough?
21             MR. LENNON:  Frankly I expected to see that in their
22     papers.
23             THE COURT:  Let's assume he says that.  Then what
24     happens?
25             MR. LENNON:  I think your Honor has to decide whether
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```
                                                                    6
```
       78t6froc
 1     or not there has been inequity by virtue of what has happened
 2     to date and whether or not there is a sufficient excuse to have
 3     sat around for three months while you are attaching my client's
 4     funds only to then commence the arbitration that you made a
 5     representation in your initial papers in this court in the
 6     verified complaint that you are preparing this case to go
 7     before an arbitration.
 8             I believe, and regardless of what is done in other
 9     cases rightly or wrongly, the minute you get an attachment
10     order in this court, you have an obligation to move forward
11     with your substantive claim whether it be in a proceeding here
12     or pursuant to a choice of law and a forum provision in the
13     contract.
14             THE COURT:  Why don't I put Mr. Frevola on the hot
15     seat.
16             MR. LENNON:  That's correct.  I have a reply
17     declaration from my client's solicitor in Paris that discusses
18     the arbitration clause.  It is very short.  I provided it to
19     Mr. Frevola by e-mail this morning.  I want to submit it to the
20     Court.
21             THE COURT:  Is there anything else?
22             MR. LENNON:  No, your Honor.  In fact, I don't think
23     it is really necessary to spend the time to read that.  It
24     spells out the procedure and costs that would be involved in
25     commencing the arbitration, which is not in substantial.  And I
                                Page 3
```

78t6froc
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

```
    78t6froc
1   guess I would suggest that may be one of the reasons why they
2   have been reluctant to move forward.
3           THE COURT:  Pretty impressive credentials in Wales and
4   Avocat a la Cour in France.
5           MR. LENNON:  I was impressed.
6           THE COURT:  I am not admitting this person pro hac.
7   Go head.
8           MR. FREVOLA:  The only objection I have to the
9   declaration is that is refers to the ICC rules and the
10  arbitration that does go forward is going to go under a
11  different body.
12          THE COURT:  Whatever.  Let's get to the heart of this
13  here.  You don't get to go attach somebody's money and sit on
14  it forever.  There is a limit here.
15          MR. FREVOLA:  Absolutely, your Honor.
16          THE COURT:  When are you going to start the
17  arbitration proceedings?
18          MR. FREVOLA:  Your Honor, my client took retained
19  French counsel at the end of June to look at what was going to
20  be necessary to do this.  After looking at the cost involved,
21  one of the things that happened between the principal was
22  discussing whether or not a different venue as opposed to these
23  costs, would another venue be better.  The only reason why
24  Paris wound up in this particular charter party was the charter
25  party of this one was entered into to fulfill obligations under
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

8

```
    78t6froc
1   another one, had the same clause.  It was a French company.
2           We were waiting essentially to get a response back in
3   terms of our security situation, because we thought it may
4   involve a venue issue as well, your Honor.  When that didn't
5   happen that is fine, but we fully expected that a response and
6   an answer to happen at which point we can move this Court to
7   order the parties to Paris and proceed to arbitration, which
8   Section 8 of the Federal Arbitration Act says we can do, or
9   decide to move forward here and request a status conference and
10  proceed forward.
11          THE COURT:  What do you want to do?  You are the
12  plaintiff here.  What do you want to do?  I asked my client
13  that over the weekend.  Because the time difference, they had
14  one day to look at it.
15          Mr. Lennon's papers were filed Thursday, Friday?
16          MR. LENNON:  Friday.
17          THE COURT:  So you had several days.
18          MR. FREVOLA:  I spoke with them on Monday, your Honor.
19          THE COURT:  How many hours difference, six hours?
20          MR. FREVOLA:  I spoke with them on Monday, yesterday.
21          THE COURT:  You can call them now.
22          MR. FREVOLA:  They have given me their view on it.
23          THE COURT:  And?
24          MR. FREVOLA:  Without conducting an exhaustive review
25  of how this Court would look at French law and I explained them
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

```
    78t6froc
1   to them Rule 444.1 and the various things the Court can look at
```

```
                              78t6froc
 2    regarding French law.
 3             THE COURT:  First of all, slow down.  Secondly, why
 4    don't you give me the Reader's Digest version.
 5             MR. FREVOLA:  My client has indicated intent to go
 6    forward here in New York.  Because after looking at the cost of
 7    Paris arbitration and the expected length they have determined
 8    that while it is Transfield's right to make a motion to this
 9    Court to remove this or to stay this action and proceed to
10    arbitration in Paris, my client believes that the better place
11    for this to be heard would be here, your Honor.
12             THE COURT:  Mr. Lennon, Mr. Purcell was right, at
13    least in part, that this is money.  They don't want to go to
14    Paris.
15             MR. LENNON:  That may be true, your Honor, but I think
16    in the context of what we are discussing here today we have to
17    look at what the complaint says.  They don't make any reference
18    to having a litigation here.  They say arbitration.  They spell
19    out what they are going to recover.
20             THE COURT:  He gets to amend, so he amends tomorrow.
21             MR. LENNON:  He may amend but that doesn't discuss or
22    explain the inequity of the fact that they have been attaching
23    money and now we are up to 3.3 and they want to get to $15
24    million and yet they have done nothing to move forward.
25             THE COURT:  I don't know that it can be said they have
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                    10

```
                              78t6froc
 1    done nothing.  They retained solicitors in France.  There was
 2    this e-mail exchange early on, and I recognize it was before
 3    there was a lot more money taken.  So from their standpoint
 4    they are waiting to hear from your client as to whether or not
 5    your client really wants to go forward with the security, which
 6    may change the posture of the litigation.  So I don't know that
 7    it can be said they were sitting on their hands for no good
 8    reason.
 9             Maybe this argues for more dialogue between counsel in
10    cases like these, but nonetheless if I take that representation
11    at face value, I don't think you have any reason to question
12    it.
13             MR. LENNON:  Well, I am not a mind reader.  I would be
14    speculating.  So I agree with you I have to take what they say
15    at face value.  What I don't accept is the notion that they had
16    the right to proceed in this case in this forum to have the
17    dispute resolved here.  There is no allegation to that effect.
18    My point being if you are going to come here and ask for an
19    attachment order for $15 million, I don't care what the costs
20    are of Paris arbitration, you are obligated to proceed with
21    that claim with diligence and they haven't done it.  The
22    discussion we had about security doesn't really address
23    proceeding with your substantive claim.
24             THE COURT:  Except it might affect the posture of the
25    case going forward.  It might affect whether we do it here or
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                    11

```
                              78t6froc
 1    not.  It might affect settlement discussions.  I don't know
 2    that is right, because you know better than I do that a lot of
 3    these things get worked out by counsel either the early part of
 4    the attachment or even the whole case.  Once somebody has
 5    somebody else's money, and I recognize and I have even said
 6    this in opinions, it is tremendously a powerful tool that
```

```
                             78t6froc
 7    you've used when you represent plaintiffs and that has been
 8    used against your clients when you are representing defendants.
 9    It gets people's attention.  You are absolutely right, there is
10    a limit.  It cannot be abused.  I think that there is
11    inequitable consideration here.
12             On the other hand, cases are clear that they don't
13    have to start by either initiating the arbitration or
14    initiating the lawsuit.  They can get the attachment as long as
15    they have a valid claim.  They say they have a valid claim.
16    They say they want to pursue it in New York.  I can tell
17    Mr. Frevola he has to amend.  I can put a very tight string on
18    that and we are off to the races
19             MR. LENNON:  I think that would be fine.  Actually, I
20    don't have an objection to the notion that they can amend.
21             THE COURT:  You want the money back?
22             MR. LENNON:  Yes.  We do want the money back simply
23    because we feel like they haven't moved with diligence.  This
24    explanation about wanting to proceed in New York frankly is
25    brand new and only made in response to the motion we filed.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                    12
```
                             78t6froc
 1             To my knowledge and certainly with me there have been
 2    no discussions whatsoever about venue and forum, and I would
 3    add that Mr. Frevola's reference to this other contract having
 4    this Paris arbitration clause was their contract with the third
 5    party, not ours.
 6             THE COURT:  I got that.
 7             MR. LENNON:  So I guess they should be stuck with
 8    their own choices here.  And having not moved diligently and
 9    not really offered an explanation in my mind --
10             THE COURT:  Fair enough.  Mr. Frevola, Mr. Lennon
11    makes a point that the cost of doing arbitration in Paris
12    apparently is known to everybody specially French solicitors
13    that your client hired.  It is a curious thing that now all of
14    a sudden when the bluff is being called on the attachment your
15    client says, You know what, no, thank you.  We won't go to
16    Paris.
17             MR. FREVOLA:  Your Honor, when these contracts are
18    drawn up, they are drawn up by brokers who are speaking on
19    telephones.
20             THE COURT:  I understand why it is in there.  The
21    point that Mr. Lennon is making is that you go and get a court
22    order to take somebody's money, $15 million of somebody else's
23    money, and you don't even ever get to the arbitration for a
24    reason that was knowable when you went and got the attachment,
25    that being the cost of arbitration in France.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                    13
```
                             78t6froc
 1             MR. FREVOLA:  But, your Honor, the Supreme Court has
 2    spoken about this back in the 1940s, your Honor, in the
 3    Anaconda case.
 4             THE COURT:  One of the great names for a case.
 5             MR. FREVOLA:  And talking about Section 8 of the
 6    Arbitration Act, it speaks to this very issue, your Honor, that
 7    even when the parties have an arbitration clause in their
 8    contract, when Congress put together the Federal Arbitration
 9    Act, they were concerned -- as the Supreme Court says they were
10    concerned or there may have been concerns that Congress was
11    stepping on the constitutional rights of admiralty to be heard
```

```
                           78t6froc
12    in admiralty courts. Therefore, they gave the choice to the
13    plaintiff to proceed in federal court and go forward there.
14              THE COURT: The but the principle that you get to
15    attach first and then figure out the forum dispute resolution
16    later on is not what is at stake here. The point is what is
17    the limit of the use of that remedy. How many months do you
18    get to sit on someone's money before you just decide never
19    mind.
20              MR. FREVOLA: I would say, your Honor, it has to occur
21    promptly after the defendant appears in the action. One of the
22    things that I mentioned in our papers is, your Honor, we could
23    have defaulted Transfield for not appearing and we didn't
24    because I have been contacted by Mr. Lennon and I was told he
25    was going to get back to me.
                   SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                     14
      78t6froc
 1              It was more than 30 days, your Honor, and taking a
 2    hardline version of this we could have moved for a default
 3    against them for failing to appear after having their property
 4    attached. We didn't do that because I was contacted by
 5    opposing counsel. I was waiting for them to answer at which
 6    point we were going do decide do we wind up going to Paris,
 7    which is problematic, or do we go forward in New York. While
 8    we are waiting the counter proposal from the defendant as to
 9    what the security, counter security and what whatever else
10    proposal was going to obtained, we were standing by.
11              Your Honor, also in terms of the complaint, I would
12    mention paragraphs 12 and paragraphs 16 of the complaint are
13    the two paragraphs that mention arbitration in Paris, and
14    essentially all they are meant to do is preserve that right and
15    make sure that everyone is clear that we are not waiving that
16    if we choose to do it but a waiver can happen at any point. It
17    doesn't have for happen right up front and the cases say that
18    the waiver cannot officially happen until at least after an
19    answer has occurred. We didn't get an answer. We got a motion
20    to vacate.
21              THE COURT: How quickly can you amend to say you want
22    to bring this here?
23              MR. FREVOLA: I can amend by next Friday.
24              THE COURT: How about by a week from today?
25              MR. FREVOLA: A week from today would be fine, your
                   SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                     15
      78t6froc
 1    Honor.
 2              THE COURT: I am going deny the motion.
 3              MR. LENNON: I am sorry to interrupt you. I want to
 4    address one other point.
 5              THE COURT: Sure.
 6              MR. LENNON: There is something more at issue here and
 7    that is with regard to the quantum of the attachment. What I
 8    find quite disturbing is that the plaintiff in its complaint
 9    alleged damage of $15 million. Yesterday we get an affirmation
10    from its representative Mr. Flaaten indicating that he can't
11    even quantify the damages at this point in time. So which is
12    it? Do you have $15 million? Do you have a million? $50
13    million?
14              MR. FREVOLA: Your Honor, I have an answer to that.
15    The quantum was estimated on the amount of days they accepted
16    for the September to November voyage which is going forward.
                               Page 7
```

78t6froc

17 THE COURT: Why does your own client say we have no
18 idea?
19 MR. FREVOLA: Well, he has estimated the amount and
20 the estimation actually turned out to be low. Because the time
21 the vessel getting to the port in September is going to be a
22 little bit delayed. There is going to be more costs involved
23 than they expected. The estimated amount was estimated low.
24 So we will have to amend also at some point later on to put in
25 evidence about the exact damages.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

16

78t6froc

1 THE COURT: On the quantum issue, Mr. Lennon, here is
2 what I am going to do: I am going to make Mr. Frevola in his
3 amendment give some detail as to his support for the quantum.
4 If it is not satisfactory, you come back to me and we will talk
5 quantum. I am not unsympathetic to that point at all.
6 Oftentimes, Mr. Frevola, in fact I know when Mr.
7 Lennon brings me these things I get some math, fortunately it
8 is not too complicated, but I get some math to justify the
9 number. I think that certainly is appropriate here. It is a
10 large sum of money.
11 If it is not done, Mr. Lennon, you write me a letter.
12 It is not going to be me, Judge Sullivan is going to be taking
13 over my docket including this case. You can write to the
14 Court.
15 MR. LENNON: Understood, your Honor. There is one
16 particular problem I have in terms of due process and the
17 equities and allowing the amendment. The attachment was taken
18 out on June 5th for $15 million. Paragraph 14 of that
19 complaint says quite clearly that they are preparing their
20 claim for arbitration in Paris. It doesn't say anything about
21 reserving rights to proceeding here. My point is they haven't
22 been diligent in doing that and now they are going to amend and
23 yet keep or money.
24 THE COURT: Well, except at the time that this was
25 said that apparently was true and then circumstances changed in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

17

78t6froc

1 part because of the discussions of e-mail that they got from
2 you. As Mr. Frevola says, not that he would have prevailed on
3 this, he could have sought a default and didn't because he
4 thought there was going to be some attempt at working some of
5 this out.
6 MR. LENNON: That is an interesting point, but I will
7 tell you why it doesn't hold up, Judge. Had he gone for a
8 default when he had 600,000 or million dollars that was the end
9 of trying to attach my client's money because this is a
10 prejudgment remedy. They were never going to go if their claim
11 is $15 million for a default.
12 THE COURT: Well, who knows. Because at the end of
13 the day they might have been happy with the three million.
14 MR. LENNON: Maybe so.
15 THE COURT: I think this is at the outer limits of
16 what is acceptable. I am not unsympathetic. I am really not,
17 Mr. Lennon. I am willing to go along with the statement that
18 you quote from Aqua Stoli that says vacate is appropriate in
19 other limited circumstances. So I think equitable
20 considerations, including due process considerations, are an
21 appropriate thing for a court to consider. I have said that in

Page 8

```
                              78t6froc
22      other opinions.  This is a very, very powerful remedy that I
23      think needs to be carefully watched.
24              Mr. Frevola, you can tell your client that they are
25      hanging on by a thread here, that the amendment has to be done
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                        18
```
        78t6froc
 1      by next Wednesday and there has to be some support for the
 2      amount of damages and not speculation or surmise.
 3              I am going to give Mr. Lennon some leeway to cut into
 4      that if it is not there and allow him to make an application
 5      either to vacate the entire thing -- this is without prejudice,
 6      Mr. Lennon, for you to make a motion to vacate the attachment
 7      altogether or certainly to limit the amount of money that ought
 8      to be attached, which will include potentially giving some back
 9      if it turns out that the math doesn't support what has already
10      been attached.
11              I think in terms of the four factors or the four
12      things that plaintiff must establish under Aqua Stoli, I think
13      that plaintiff has clearly done that.  First, it has to allege
14      a maritime claim against the defendant; second is the defendant
15      is not present in the district; third is that the defendant's
16      property can be found in the district; and the fourth is that
17      there is no other statutory bar to maritime attachment.
18              While Mr. Lennon makes some interesting points about
19      the merits of the case which, Mr. Frevola, you will have to pay
20      attention to and tell your client to pay attention to.  At this
21      stage I don't think it is inappropriate for me to vacate the
22      attachment on those grounds.  With respect to the equitable
23      considerations, like I said I am willing to agree with Mr.
24      Lennon's take on Aqua Stoli and the other cases that support
25      this that there can be certain considerations.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                        19
```
        78t6froc
 1              By the way, I don't think that that statement, however
 2      narrowly one wants to read it, has anything to do with whether
 3      or not there is a case of controversy.  I think that is a
 4      separate question as the indemnity cases I think say and I
 5      think I am less troubled about the case or controversy here
 6      given how the law has developed on these attachments in a
 7      non-indemnity context.  I am more troubled by the fact that
 8      plaintiff wants 15 million bucks, says it is going to go to
 9      Paris on a contract that it wrote, included this provision, and
10      didn't go to arbitration, and now it is telling me it is not
11      going to go because it is going to cost money which is
12      something it knew.  The costs Paris arbitration is known to
13      solicitors in Wales, England.  So certainly it would be known
14      to solicitors in France.
15              I do think that the Anaconda case, I am not citing it
16      just because I think it is a cool name, but I do think the
17      Anaconda case supports the proposition that plaintiffs in these
18      contexts have this option.  I think there is a limit and you
19      are at the outer edges of the limit, Mr. Frevola, so that
20      complaint, that amended complaint better be tight otherwise you
21      are going to have problems.
22              So I am going to deny the application without
23      prejudice as I said either to vacate entirely or to limit the
24      scope.
25              Mr. Lennon.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              Page 9
```

```
                      78t6froc
                    (212) 805-0300
                                                                    20
     78t6froc
 1            MR. LENNON:  That's fine, your Honor, I accept that.
 2   I guess the question I have is that I think my client will
 3   ultimately insist on the Paris arbitration for obvious reasons.
 4   I think it is an issue we can address later on.
 5            THE COURT:  Sure.  As always, and you heard me say
 6   this before, what I would encourage you all to do is talk.
 7            MR. LENNON:  Sure.
 8            THE COURT:  Including whether or not there is some
 9   resolution that can be done by way of security.  Because if the
10   $15 dollars is shooting darts in the dark, you may as well get
11   that on the table now and save your clients money.  Mr. Lennon
12   is going to come back here with a motion that is going to cost
13   your client money.
14            Mr. Frevola, anything else from you?
15            MR. FREVOLA:  No, your Honor.  Thank you.
16            MR. LENNON:  Thank you, your Honor.
17                              oOo
18
19
20
21
22
23
24
25

                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300
```