# Paré
# Exhibit A

## REPLY DECLARATION OF ZHUO ZHONGGEN

ZHUO ZHONGGEN states as follows:

1.      I am an employee of Shanghai Fareast International Shipping Agency Co. Ltd. ("Shanghai Agency"). I was the person at Shanghai Agency which dealt with the M/V BRAVE JOHN's call at Shanghai, China in August, 2007.

2.      I previously provided a declaration on January 28, 2008 with exhibits and now provide this further reply declaration.

3.      Attached as Exhibit "1", is the Commercial Invoices covering the value of steel shipped on the BRAVE JOHN under BRJSHA003, BRJSHA004,   BRJSHA021 BRJSHA029 as follows:



BRJSHA003:   971 bundles/2,239.314 mt,    US$1,360,609.70

BRJSHA004: 1,076 bundles/2,529.384 mt,    US$1,525,396.26

BRJSHA021: 1,456 bundles/3,434.019 mt,    US$2,037,951.02

BRJSHA029:      139 bundles/314.943 mt,    <u>US$197,215.25</u>
                                            US$5,121,172.23

4.      The value of the cargo shipped under above four(4) freight collect bills of lading already amount to US$5,121,172.23.

5.      Two different bill of lading forms were used for these shipments. Attached as Exhibit "2" is the reverse side of the so-called "Congenbill" form which was, for example, used in bill of lading Nos. 1, 3, 4, 19, 21 and 29 (freight collect bills) and bill of lading Nos. 6, 7, 8, 9, 10 and 11 (freight prepaid bills).

A

6.    Attached as Exhibit "3" is the reverse side of the other bill of lading form used for the shipments. This includes, for example, bill of lading Nos. 12, 13, 14, 15, 16, 17 and 18 (freight prepaid bills).

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.



ZHUO ZHONGGEN

Executed:    Shanghai, China
             March 7, 2008

2

# Zhonggen
# Exhibit 1

B/L NO. BRJSHA003

Cargo Value: US$ 1,360,609.70

# YL WUXI YULONG PRECISE STEEL PIPE CO.LTD
## COMMERCIAL INVOICE

| | |
|---|---|
| Beneficiary<br>WUXI YULONG PRECISE STEEL PIPE CO.,LTD.<br>YUQI WUXI JIANGSU P.R.CHINA | No. & date of invoice<br>YL-150-INV        AUGUST 8,2007 |
| | No. & date of Documentary Credit (L/C)<br>02678/36510527 |
| | Issuing bank of Documentary Credit (L/C) |
| Applicant/Buyer<br>ARO STEEL S.R.L.<br>VIA CAVOUR, 39<br>43100 PRARMA, ITALY | |
| | Remarks:<br>* WE CERTIFY THAT:<br>1) GOODS ARE PACKED IN STRONGLY STRAPPED BUNDLES OF MAXIMUM 2.5 M/TONS AND OUTSIDE OF EACH BUNDLE IS WRAPPED FULLY BY PP WOVEN CLOTH. |
| Notify party<br>ARO STEEL S.R.L.<br>VIA CAVOUR, 39<br>43100 PRARMA, ITALY | 2) EACH BUNDLE CARRIES LABEL SHOWING THE FOLLOWINGS: SIZE, NUMBER OF PIECES PER BUNDLE, WEIGHT AND BUNDLE NO. |
| Port of loading: SHANGHAI PORT,CHINA | Final destination | 3) THE GOODS INVOICED AND SHIPPED ARE IN STRICTLY CONFORMITY WITH SALES CONTRACT DATED DECEMBER 20,2006<br>4) INVOICING ON ACTUAL WEIGHT |

Marks and numbers of PKGs — Description of Goods — Quantity/unit — Unit-price — Total amount

Terms: FOB STOWED PORT OF SHANGHAI P.R.CHINA

PRIME QUALITY NEWLY PRODUCED SELF COULOUR (BLACK) SQUARE AND RECTANGULAR COLD FINISHED HOLLOW SECTIONS IN QUALITY S355J2H COMPLYING WITH THE EUROPEAN STANDARD SPECIFICATION EN 10219.
TOTAL QUANTITY 2170.544 METRIC TONNES.

| Marks | LOT NO. | SIZE | LENGTH M | NET WEIGHT MT | USD | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| | YL-150-13-03 | 150*150*6.3 | 12 | 32.04 | 595 | 19,063.80 |
| | YL-150-14-03 | 150*150*8 | 12 | 32.02 | 595 | 19,051.90 |
| N/M | YL-150-15-03 | 150*150*10 | 12 | 47.04 | 595 | 27,988.80 |
| | YL-150-16-03 | 200*200*8 | 12 | 27.846 | 615 | 17,125.29 |
| | YL-150-17-03 | 200*200*10 | 12 | 65.920 | 615 | 40,540.80 |
| | YL-150-18-03 | 200*200*12.5 | 12 | 44.814 | 615 | 27,560.61 |
| | YL-150-19-03 | 200*200*12.5 | 18 | 10.185 | 615 | 6,263.78 |
| | YL-150-21-03 | 250*250*10 | 12 | 38.880 | 615 | 23,911.20 |
| | YL-150-22-03 | 250*250*12.5 | 12 | 63.720 | 615 | 39,187.80 |
| TOTAL  971  BUNDLES | YL-150-23-03 | 250*250*12.5 | 18 | 12.744 | 615 | 7,837.56 |
| | YL-150-27-03 | 300*300*10 | 12 | 79.572 | 615 | 48,936.78 |
| | YL-150-28-03 | 300*300*10 | 18 | 31.410 | 615 | 19,317.15 |
| | YL-150-35-03 | 400*400*10 | 12 | 31.038 | 615 | 19,088.37 |
| | YL-150-40-03 | 200*100*10 | 12 | 52.27 | 615 | 32,146.05 |
| | YL-150-42-03 | 200*150*8 | 12 | 31.614 | 615 | 19,442.61 |
| | YL-150-44-03 | 200*150*10 | 12 | 37.968 | 615 | 23,350.32 |
| | YL-150-50-03 | 250*150*8 | 12 | 39.578 | 615 | 24,340.47 |
| | YL-150-51-03 | 250*150*10 | 12 | 75.914 | 615 | 46,687.11 |
| | YL-150-52-03 | 250*150*10 | 18 | 28.462 | 615 | 17,604.13 |
| | YL-150-53-03 | 250*150*12.5 | 12 | 29.736 | 615 | 18,287.64 |
| | YL-150-59-03 | 300*150*10 | 12 | 24.477 | 615 | 15,053.36 |
| | YL-150-63-03 | 300*200*8 | 12 | 8.280 | 615 | 5,092.20 |
| | YL-150-64-03 | 300*200*10 | 12 | 65.208 | 615 | 40,102.92 |
| | YL-150-64-03 | 300*200*10 | 18 | 36.738 | 615 | 22,593.87 |

Ex 1
Zhuo

| | | | | | |
|---|---|---|---|---|---|
| YL-150-66-03 | 300*200*12.5 | 12 | 60.032 | 615 | 36,919.68 |
| YL-150-66-03 | 300*200*12.5 | 18 | 22.512 | 615 | 13,844.88 |
| YL-150-69-03 | 350*250*10 | 12 | 39.382 | 615 | 24,219.93 |
| YL-150-69-03 | 350*250*10 | 18 | 14.768 | 615 | 9,082.32 |
| YL-150-73-03 | 400*200*10 | 12 | 52.450 | 615 | 32,256.75 |
| YL-150-74-03 | 400*200*10 | 18 | 31.470 | 615 | 19,354.05 |
| YL-150-75-03 | 400*200*12.5 | 12 | 43.306 | 615 | 26,633.19 |
| YL-150-76-03 | 400*200*12.5 | 18 | 26.600 | 615 | 16,359.00 |
| YL-150-80-03 | 400*300*10 | 12 | 40.899 | 615 | 25,152.89 |
| YL-150-81-03 | 400*300*10 | 18 | 18.044 | 615 | 11,097.06 |
| YL-150-83-03 | 500*300*10 | 12 | 27.700 | 615 | 17,035.50 |
| YL-150-84-03 | 500*300*12.5 | 12 | 28.322 | 615 | 17,418.03 |
| YL-133-12-06 | 400*400*16 | 12 | 2.070 | 630 | 1,304.10 |
| YL-133-10-08 | 400*200*16 | 12 | 3.280 | 630 | 2,066.40 |
| YL-133-22-05 | 250*250*16 | 12 | 1.340 | 630 | 844.20 |
| YL-133-16-03 | 220*120*10 | 12 | 11.570 | 630 | 7,289.10 |
| YL-133-14-03 | 200*120*10 | 12 | 10.800 | 630 | 6,804.00 |
| YL-133-12-07 | 400*400*16 | 18 | 6.750 | 630 | 4,252.50 |
| YL-133-10-09 | 300*300*16 | 18 | 9.900 | 630 | 6,237.00 |
| YL-133-22-05 | 300*200*16 | 12 | 1.340 | 630 | 844.20 |
| YL-133-14-04 | 200*120*10 | 18 | 12.980 | 630 | 8,177.40 |
| YL-133-16-04 | 220*120*10 | 18 | 7.950 | 630 | 5,008.50 |
| YL-133-16-04 | 220*120*10 | 18 | 0.790 | 630 | 497.70 |
| YL-178-01-01 | 250*250*8 | 12 | 27.900 | 640 | 17,856.00 |
| YL-178-01-02 | 250*250*10 | 12 | 82.560 | 640 | 52,838.40 |
| YL-178-01-03 | 250*250*12.5 | 12 | 84.960 | 650 | 55,224.00 |
| YL-178-02-02 | 300*300*10 | 12 | 87.948 | 640 | 56,286.72 |
| YL-178-03-02 | 350*350*10 | 12 | 34.460 | 640 | 22,054.40 |
| YL-178-03-03 | 350*350*12.5 | 12 | 30.424 | 660 | 19,775.60 |
| YL-178-04-01 | 200*150*8 | 12 | 28.740 | 640 | 18,393.60 |
| YL-178-04-02 | 200*150*10 | 12 | 37.968 | 640 | 24,299.52 |
| YL-178-05-02 | 300*200*10 | 12 | 61.776 | 640 | 39,536.64 |
| YL-178-05-03 | 300*200*12.5 | 12 | 55.744 | 650 | 36,233.60 |
| YL-178-06-02 | 400*200*10 | 12 | 52.450 | 640 | 33,568.00 |
| YL-178-06-03 | 400*200*12.5 | 12 | 53.495 | 650 | 34,771.75 |
| YL-178-07-02 | 400*300*10 | 12 | 38.493 | 640 | 24,635.52 |
| YL-178-07-03 | 400*300*12.5 | 12 | 54.677 | 660 | 35,540.05 |
| YL-178-08-02 | 500*300*10 | 12 | 36.010 | 640 | 23,046.40 |
| YL-178-08-03 | 500*300*12.5 | 12 | 49.980 | 660 | 32,487.00 |

|  |  |  |
|---|---|---|
| **2239.314** | **M.TONS** | **US$1,360,609.70** |

SAY US DOLLARS ONE MILLION THREE HUNDRED AND SIXTY THOUSAND SIX HUNDRED AND NINE
AND SEVENTY CENTS ONLY

| | |
|---|---|
| DEDUCTION(ADVANCE PAYMENT) | US$170,280.00 |
| BALANCE AMOUNT DRAWN | US$1,190,329.70 |

| | | |
|---|---|---|
| NET WEIGHT | 2239.314 | M.TONS |
| GROSS WEIGHT | 2239.314 | M.TONS |

Signed by _____

FOR AND ON BEHALF OF
JIANGSU YULONG STEEL PIPE CO., LTD

朴 凯
............................

008 ☑                                    25/05 2001 01:11 FAX

*B/L NO. BRJSHA04*

*Cargo Value: US$ 1,525,396.26*  *6/7*

# WUXI YULONG PRECISE STEELPIPE CO.,LTD.

## COMMERCIAL INVOICE

| Beneficiary | | No. & date of invoice |
|---|---|---|
| WUXI YULONG PRECISE STEEL PIPE CO.,LTD. NO.5.YULONG RD,YUQI WUXI JIANGSU 214183 P.R.CHINA | | YL186-INV09   JUNE 26,2007 |
| | | No. & date of Documentary Credit (L/C) |
| | | 411830368587   061110 |
| | | Issuing bank of Documentary Credit (L/C) |
| Applicant/Buyer | | |
| WUXI STEEL BULGARIA EOOD | | Remarks |
| 83.85 JAMES BAUCHER BLVD FL2 1407 | | WE CERTIFY THAT; |
| SOFIA BULGARIA | | 1) GOODS ARE PACKED IN STRONGLY STRAPPED BUNDLE MAXIMUM 2.5 M/TONS AND OUTSIDE OF EACH BUNDLE IS |
| Notify party | | WRAPPED FULLY BY PP WOVEN CLOTH. |
| WUXI STEEL BULGARIA EOOD | | 2) EACH BUNDLE CARRIES LABEL SHOWING THE |
| 83.85 JAMES BAUCHER BLVD FL2 1407 | | FOLLOWINGS:SIZE, NUMBER OF PIECES PER BUNDLE, |
| SOFIA BULGARIA | | WEIGHT AND BUNDLE NO. |
| Port of loading | Final destination | 3) THE GOODS INVOICED AND SHIPPED ARE IN STRICTLY |
| SHANGHAI PORT,CHINA | LA SPEZIA, ITALY | CONFORMITY WITH SALES CONTRACT DATED JULY 6TH, 2006 |
| Vessel Name & Voyage number | Sailing on or about | 4) INVOICING ON ACTUAL WEIGHT |

| Marks and numbers of PKGs | Description of Goods | Quantity/unit | Unit-price | Total amount |
|---|---|---|---|---|
| | | | FOB STOWED PORT OF SHANGHAI.P.R.CHI | |

N/M  2529.382 METRIC TONNES PRIME QUALITY NEWLY PRODUCED SELF COULOUR (BLACK) SQUARE AND RECTANGULAR COLD FINISHED HOLLOW SECTIONS IN QUALITY S355J2H COMPLYING WITH THE EUROPEAN STANDARD SPECIFICATION EN10219.

| | SIZE | LENGTH M | NET WEIGHT | USD | |
|---|---|---|---|---|---|
| | LOT-01(S355J2H) | | | | |
| YL-186-01-02 | 160*160*10MM | 12 | 7.173 | 620 | US$4,447.26 |
| YL-186-05-04 | 300*300*12.5MM | 12 | 139.90 | 650 | US$90,935.00 |
| YL-186-07-03 | 200*150*10MM | 12 | 27.985 | 640 | US$17,910.40 |
| YL-186-08-03 | 300*200*12.5MM | 12 | 186.69 | 650 | US$121,348.50 |
| | | | 361.75 | | |
| YL-186-03-01 | 200X200X6.3MM | 12 | 50.716 | 640 | US$32,458.24 |
| YL-186-03-01 | 200X200X6.3MM | 12 | 1.335 | 640 | US$854.40 |
| YL-186-03-02 | 200X200X8MM | 12 | 194.166 | 640 | US$124,266.24 |
| YL-186-03-02 | 200X200X8MM | 12 | 1.640 | 640 | US$1,049.60 |
| YL-186-04-01 | 250X250X6.3MM | 12 | 51.276 | 640 | US$32,816.64 |
| YL-186-06-03 | 300*300*12.5MM | 12 | 76.676 | 650 | US$49,839.40 |
| YL-186-06-03 | 300*300*12.5MM | 12 | 7.668 | 650 | US$4,984.20 |

7/
7

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | 375.809 | | |
| | YL-186-04-03 | 250X250X10MM | 12 | 209.480 | 640 | US$134,067.20 |
| | YL-186-04-03 | 250X250X10MM | 12 | 2.580 | 640 | US$1,651.20 |
| | YL-186-04-04 | 250X250X12.5MM | 12 | 104.230 | 650 | US$67,749.60 |
| | | | | 316.290 | | |
| TOTAL 1076 BUNDLES | YL-186-08-01 | 300X200X8MM | 12 | 102.582 | 640 | US$65,652.48 |
| | YL-186-08-02 | 300X200X10MM | 12 | 107.185 | 640 | US$68,598.40 |
| | YL-186-10-01 | 400*300*8MM | 12 | 100.248 | 640 | US$64,158.72 |
| | | | | 310.015 | | |
| | | LOT-02(S235JR) | | | | |
| | YL-186-14-02 | 200*100*5MM | 12 | 149.140 | 555 | US$82,772.70 |
| | YL-186-15-03 | 200*150*8MM | 12 | 114.936 | 555 | US$63,789.48 |
| | | | | 264.076 | | |
| | YL-186-15-05 | 200*150*10MM | 12 | 167.592 | 555 | US$93,013.56 |
| | YL-186-13-04 | 200X200X8MM | 12 | 1.090 | 555 | US$604.95 |
| | YL-186-13-04 | 200X200X8MM | 12 | 145.907 | 555 | US$80,978.39 |
| | | | | 314.589 | | |
| | YL-186-13-05 | 200X200X10MM | 12 | 81.089 | 555 | US$45,004.40 |
| | YL-186-13-05 | 200X200X10MM | 12 | 50.297 | 555 | US$27,914.84 |
| | YL-186-14-03 | 200X100X6MM | 12 | 63.838 | 555 | US$35,430.09 |
| | YL-186-14-03 | 200X100X6MM | 12 | 86.014 | 555 | US$47,737.77 |
| | | | | 281.238 | | |
| | YL-186-14-04 | 200X100X8MM | 12 | 145.289 | 555 | US$80,635.40 |
| | YL-186-14-05 | 200X100X10MM | 12 | 152.660 | 555 | US$84,726.30 |
| | | | | 297.949 | | |
| | | | | 2529.382 | | US$1,525,395.26 |

SAY US DOLLARS ONE MILLION FIVE HUNDRED TWENTY FIVE THOUSAND AND
THREE HUNDRED AND NINETY FIVE AND TWENTY SIX CENTS ONLY.

NET    2529.382    M.TONS
GRC    2529.382    M.TONS

Signed by : PIPE CO.,LTD

WUXI YUL

/

*B/L NO. BRJSH021*

*Cargo Value: US$2,037,951.02 4/7*

# WUXI YULONG PRECISE STEEL PIPE CO.,LTD.

## COMMERCIAL INVOICE

| Beneficiary | No. & date of invoice |
|---|---|
| WUXI YULONG PRECISE STEEL PIPE CO.,LTD.<br>NO.5,YULONG RD,YUQI WUXI<br>JIANGSU 214183 P.R.CHINA | YL186-INV |
| | No. & date of Documentary Credit (L/C)<br>411830368587 |
| | Issuing bank of Documentary Credit (L/C) |
| Applicant/Buyer<br><br>WUXI STEEL BULGARIA EOOD<br>83.85 JAMES BAUCHER BLVD FL2 1407<br>SOFIA BULGARIA | |
| | Remarks<br>* WE CERTIFY THAT:<br>1) GOODS ARE PACKED IN STRONGLY STRAPPED BUNDLES OF<br>MAXIMUM 2.5 M/TONS AND OUTSIDE OF EACH BUNDLE IS |
| Notify party<br><br>WUXI STEEL BULGARIA EOOD<br>83.85 JAMES BAUCHER BLVD FL2 1407<br>SOFIA BULGARIA | WRAPPED FULLY BY PP WOVEN CLOTH.<br>2) EACH BUNDLE CARRIES LABEL SHOWING THE FOLLOWINGS:<br>SIZE, NUMBER OF PIECES PER BUNDLE, WEIGHT AND BUNDLE<br>NO. |

| Port of loading | Final destination | 3) THE GOODS INVOICED AND SHIPPED ARE IN STRICTLY |
|---|---|---|
| SHANGHAI PORT,CHINA | LA SPEZIA. ITALY | CONFORMITY WITH SALES CONTRACT DATED JULY 6TH,<br>2006 |

| Vessel Name & Voyage number | Sailing on or about | 6) INVOICING ON ACTUAL WEIGHT |
|---|---|---|
| | | |

| Marks and numbers of PKGs | Description of Goods | Quantity/unit | Unit-price | Total amount |
|---|---|---|---|---|

Terms: **FOB STOWED PORT OF SHANGHAI,P.R.CHINA**

1362.314 METRIC TONNES PRIME QUALITY NEWLY PRODUCED SELF COLOUR (BLACK) SQUARE AND RECTANGULAR
COLD FINISHED HOLLOW SECTIONS IN QUALITY S355J2H COMPLYING WITH THE EUROPEAN STANDARD SPECIFICATION
N/M    EN10219.

| | SIZE | LENGTH M | NET WEIGHT | USD | |
|---|---|---|---|---|---|
| | LOT-01(S355J2H) | | | | |
| | 160X160X6.3MM | 12 | 30.940 | 620 | US$19,182.80 |
| | 160X160X8MM | 12 | 25.503 | 620 | US$15,811.86 |
| | 160X160X8MM | 12 | | | |
| | 160X160X10MM | 12 | 21.600 | 620 | US$13,392.00 |
| | 180X180X6.3MM | 12 | 50.740 | 620 | US$31,458.80 |
| | 180X180X8MM | 12 | 49.279 | 620 | US$30,552.98 |
| | 180X180X10MM | 12 | 53.421 | 620 | US$33,121.02 |
| | 200X200X10MM | 12 | 199.260 | 640 | US$127,526.40 |
| | 250X250X8MM | 12 | 199.796 | 640 | US$127,869.44 |
| | 300X300X6.3MM | 12 | 54.660 | 640 | US$34,982.40 |
| | 300X300X8MM | 12 | 97.615 | 640 | US$62,473.60 |
| TOTAL  1611 BUNDLES | 300X300X10MM | 12 | 150.023 | 640 | US$96,014.72 |

| | | | | |
|---|---|---|---|---|
| 200X150X6.3MM | 12 | 199.260 | 640 | US$127,526.40 |
| 400X200X8MM | 12 | 99.644 | 640 | US$63,772.16 |
| 400X200X10MM | 12 | 102.127 | 640 | US$65,361.28 |
| 400X300X8MM | 12 | 100.038 | 640 | US$64,024.32 |
| 400X300X10MM | 12 | 94.760 | 640 | US$60,646.40 |
| 400X200X12.5MM | 12 | 98.554 | 650 | US$64,060.10 |
| 140X140X5MM | 12 | | | |
| 140X140X5MM | 12 | 28.620 | 605 | US$17,315.10 |
| 140X140X6.3MM | 12 | 36.876 | 605 | US$22,309.98 |
| 140X140X8MM | 12 | 37.041 | 605 | US$22,409.81 |
| 140X140X10MM | 12 | 35.792 | 605 | US$21,654.16 |
| 200X150X6.3MM | 12 | 32.280 | 605 | US$19,529.40 |
| | | | | |
| LOT-02(S235JR) | | | | |
| 150X150X4MM | 12 | 140.320 | 540 | US$75,772.80 |
| 150X150X5MM | 12 | 147.992 | 540 | US$79,915.68 |
| 150X150X6MM | 12 | 150.420 | 540 | US$81,226.80 |
| 150X150X8MM | 12 | | | |
| 150X150X8MM | 12 | 150.877 | 540 | US$81,473.58 |
| 150X150X10MM | 12 | 152.362 | 540 | US$82,275.48 |
| 200X200X4MM | 12 | 154.060 | 555 | US$85,503.30 |
| 200X200X5MM | 12 | 152.480 | 555 | US$84,626.40 |
| 200X200X6MM | 12 | 152.239 | 555 | US$84,492.65 |
| 200X100X4MM | 12 | 139.220 | 555 | US$77,267.10 |
| 200X100X8MM | 12 | 0.000 | 555 | US$0.00 |
| 200X150X5MM | 12 | 150.270 | 555 | US$83,399.85 |
| 200X150X8MM | 12 | 145.950 | 555 | US$81,002.25 |
| | | 3434.019 | | US$2,037,951.02 |

SAY US DOLLORS TWO MILLION THIRTY SEVEN THOUSAND NINE HUNDRED AND
FIFTY ONE AND TWO CENTS ONLY

| | |
|---|---|
| * NET WEIGHT | 3434.019 |
| * GROSS WEIGHT | 3434.019 |

FOR AND ON BEHALF OF
WUXI YULONG ... Signed by ...EEL PIPE CO .LTD

Authorized Signature

*B/L NO.: BRJSHA029*

*"7*

*Cargo Value: USD197,215.25*

# YL WUXI YULONG PRECISE STEELPIPE CO.,LTD.

## COMMERCIAL INVOICE

| Beneficiary | No. & date of invoice |
|---|---|
| WUXI YULONG PRECISE STEEL PIPE CO.,LTD.<br>NO.5,YULONG RD,YUQI WUXI<br>JIANGSU 214183 P.R.CHINA | YLJ86-INV02  AUG 8,2007<br>**No. & date of Documentary Credit (L/C)**<br>411830368587  061110<br>**Issuing bank of Documentary Credit (L/C)** |

| Applicant/Buyer | Remarks |
|---|---|
| WUXI STEEL BULGARIA EOOD<br>83.85 JAMES BAUCHER BLVD FL2<br>1407 SOFIA BULGARIA | • WE CERTIFY THAT:<br>1) GOODS ARE PACKED IN STRONGLY STRAPPED BUNDLES<br>OF MAXIMUM 2.5 M/TONS AND OUTSIDE OF EACH BUNDLE IS |

| Notify party | |
|---|---|
| ARO STEEL SRL<br>VIA CAVOUR. 39<br>43100 PARMA ITALY | WRAPPED FULLY BY PP WOVEN CLOTH.<br>2) EACH BUNDLE CARRIES LABEL SHOWING THE<br>FOLLOWINGS: SIZE, NUMBER OF PIECES PER BUNDLE,<br>WEIGHT AND BUNDLE NO. |

| Port of loading | Final destination | |
|---|---|---|
| SHANGHAI PORT,CHINA | | 3)THE GOODS INVOICED AND SHIPPED ARE IN STRICTLY<br>CONFORMITY WITH SALES CONTRACT DATED JULY 5TH,<br>2006<br>4)INVOICING ON ACTUAL WEIGHT |

| Marks and numbers of PKGs | Description of Goods | Quantity/unit | Unit-price | Total amount |
|---|---|---|---|---|

Terms: SHANGHAI,P.R.CHINA AS PER INTOTERMS 2000

N/M  320.185METRIC TONNES PRIME QUALITY NEWLY PRODUCED SELF COLOUR (BLACK) SQUARE AND RECTANGULAR COLD FINISHED HOLLOW SECTIONS IN QUALITY S355J2H AND S235JR COMPLYING WITH THE EUROPEAN STANDARD SPECIFICATION EN 10219.
ORIGIN OF THE GOODS CHINA

| LOT NO. | SIZE | LENGTH M | NET WEIGHT | USD | TOTAL AMOUNT |
|---|---|---|---|---|---|
| (SS235JR) | | | | | |
| YL-186-15-03 | 200X150X6 | 12 | 21.167 | 555 | US$11,747.69 |
| YL-186-16-02 | 250X100X5 | 12 | 0.617 | 555 | US$342.44 |
| SUB TOTAL | | | 21.784 | | US$12,090.13 |
| (SS355J2H) | | | | | |
| YL-149-04-03-01 | 90X90X5 | 12 | 11.587 | 605 | US$7,010.14 |
| YL-149-05-03-01 | 90X90X6.3 | 12 | 8.771 | 605 | US$5,306.46 |
| YL-149-41-03-01 | 400X400X10 | 12 | 42.21 | 625 | US$26,381.25 |
| YL-149-42-03-01 | 400X400X12.5 | 12 | 31.452 | 625 | US$19,657.50 |
| YL-149-49-03-01 | 250X150X12.5 | 12 | 28.56 | 625 | US$17,850.00 |
| YL-149-51-03-01 | 250X100X6.3 | 18 | 5.811 | 605 | US$3,515.66 |
| YL-149-51-03-01 | 250X100X6.3 | 18 | | 605 | US$0.00 |
| YL-149-53-03-04 | 250X100X8 | 18 | 5.721 | 605 | US$3,461.21 |
| YL—149-61-03-01 | 250X150X12.5 | 12 | 56.123 | 625 | US$35,076.88 |
| YL-186-05-04 | 300X300X12.5 | 12 | 28.307 | 650 | US$18,399.55 |
| YL-186-06-02 | 350X350X10 | 12 | 2.476 | 640 | US$1,584.64 |
| YL-186-07-04 | 200X150X12.5 | 12 | 31.5 | 650 | US$20,475.00 |
| YL-186-10-01 | 400X300X8 | 12 | 0.982 | 640 | US$628.48 |
| YL-186-10-03 | 400X300X12.5 | 12 | 39.659 | 650 | US$25,778.35 |
| SUB TOTAL | | | 293.159 | | US$185,125.12 |
| GRAND TOTAL | | | **314.943**  M.TONS | | US$197,215.25 |

TOTAL  132  BUNDLES

SAY US DOLLORS TWO HUNDRED THOUSAND AND FOUR HUNDRED AND NINETY ONE AND FIFTY CENTS ONLY.

* NET WEIGHT  314.943  M.TONS
* GROSS WEIGHT  314.943  M.TONS

Signed by _____

FOR AND ON BEHALF OF
WUXI YULONG PRECISE STEEL PIPE CO.,LTD

_____
Authorized Signature

# Zhonggen Exhibit 2



**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)

# Conditions of Carriage

(1)  All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the law and Arbitration Clause, are herewith incorporated.

(2)  **General Paramount Clause.**

(a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment, shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

(b) Trades where Hague-Visby Rules apply

In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague-Visby Rules - apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.

(c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3)  General Average

General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.

Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4)  New Jason Clause.

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier, or his agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the Carrier before delivery.

(5)  Both-to-Blame Collision Clause.

If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Carrier.

The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight
Destination, etc., See overleaf



# Zhonggen
# Exhibit 3

The following are the conditions and exceptions hereinbefore referred to:

**1. Definition.** Wherever the term "Shipper" occurs hereinafter, it shall be deemed to include also Receiver, Consignee, Holder of the Bill of Lading and Owner of the goods.

**2. Paramount Clause.** This Bill of Lading shall be subject to the Hague Rules contained in the International Convention for the Unification of certain Rules of Law relating to Bills of Lading dated at Brussels in 25th August 1924, or the corresponding legislation of the flag-state of the ship. If the stipulations of this Bill of Lading are wholly or partly contrary thereto, this Bill of Lading shall be read as if such stipulation or part thereof, as case may be, were deleted.

**3. Jurisdiction.** All disputes arising under and in connection with this Bill of Lading shall be settled in the flag-state of the ship, or otherwise in the place mutually agreed between the carrier and the shipper.

**4. Period of Responsibility.** The responsibility of the carrier shall commence from the time when the goods are loaded on board the ship and shall cease when they are discharged from the ship.

**5. Packing and marks.** The shipper shall have the goods properly packed and accurately and clearly marked before shipment. The port of destination of the goods should be marked in letters of 5 cm high, in such a way as will remain legible until their delivery.

**6. Freight and other charges.** Advance freight together with other charges is due on shipment. If not prepaid, though stipulated, the freight and other charges shall be paid by the shipper or receiver, plus 5% interest per annum running from the date of notification for their payment.

If the cargo shipped are perishables, low cost goods, live animals, deck cargo or goods for which there is no carrier's agent at the port of destination, the freight for such cargo and all related charges shall be paid at the time of shipment.

Freight payable at destination is due on ship's arrival together with other charges. Advance freight and/or freight payable at destination shall be paid to the carrier in full, irrespective of whatever loss or damage may happen to ship and cargo or either of them.

**7. Penalty freight.** The carrier is entitled at port of shipment and/or port of destination, to verify the quantity, weight, measurement and contents of the goods as declared by the shipper. If the weight, measurement and/or contents of such goods as stated in the Bill of Lading turned out to be inconsistent with that of the goods actually loaded, and the freight paid falls short of the amount which would have been due if such declaration had been correctly given, the carrier is entitled to collect from the shipper double the amount of difference between the freight for the goods actually shipped and that mis-stated.

The shipper shall be liable for loss of and damage to the ship and/or cargo arising or resulting from inaccuracies in stating the description, quantity, weight, measurement or contents of the goods and shall indemnify the carrier for the costs and expenses in connection with weighing, measuring and checking such goods.

**8. Lien.** The carrier shall have a lien on the goods for freight, dead freight, demurrage and any other amount payable by the cargo, and shall be entitled to sell the goods by auction or otherwise at carrier's option. If, on the sale of the goods, the proceeds fail to cover the amount due and the cost and expenses incurred, the carrier shall be entitled to recover the difference from the shipper.

**9. Notice of claim.** When the cargo is taken delivery of by the receiver against Bill of Lading, if notice of damage or partial loss be not given in writing to the carrier at the time of the removal of the goods by the receiver, such removal shall be prima facie evidence of the delivery by the carrier of the goods as described in the Bill of Lading. If the partial loss or damage of the goods cannot be discovered under the usual way of delivery, a notice of claim shall be given in writing within three days of the delivery. However, such notice of claim is not required in case the receiver has verified the goods jointly with the carrier.

In all circumstances, the carrier and the ship shall be discharged from all liabilities in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.

**10. Indemnity.** The indemnity for loss of cargo shall be determined on the basis of its actual value, while the indemnity for damage to cargo shall be determined on the basis of the difference between the values of the goods before and after the damage. The value of the Goods shall be determined on the basis of the market value at the port of destination on the day of ship's arrival, or, in case of nonarrival, on the day of expected arrival, or at the carrier's option, on the basis of the market value of the goods at the port of loading on the day of departure plus other charges concerned.

The duties and expenses saved shall be deducted from the indemnity for loss of or damage to the goods.

The amount of indemnity for loss of or damage to cargo shall in no case exceed £100 per package or freight unit, except special agreement besides Bill of Lading has been made and extra freight paid. Should the actual value of the goods per package or freight unit exceed the declared value stated in the aforesaid agreement, the carrier's liability, if any, shall not exceed the declared value, and any partial loss or damage shall be adjusted pro rata on the basis of such declared value. Under no circumstances shall the carrier make allowances for loss of profit or loss in market value.

**11. Loading, discharging and delivery.** The goods shall be supplied and taken delivery of by the owner of the goods as fast as the ship can take and discharge them, without interruption, by day and night, Sundays and Holidays included, notwithstanding any custom of the port to the contrary and the owner of the goods shall be liable for all losses or damages incurred in default thereof.

Discharge may commence without previous notice. If the goods are not taken delivery of by the receiver from alongside the vessel without delay, or if the receiver refuses to take delivery of the goods, or in case there are unclaimed goods, the carrier shall be at liberty to land such goods on shore or any other proper places at the sole risk and expense of the shipper or receiver, and the carrier's responsibility of delivery of cargo shall be deemed to have been fulfilled.

The carrier has the right to sell the goods by public auction, if they are not taken delivery of within one month after the ship's arrival at the port of destination. Goods liable to deteriorate or those under special conditions shall be sold earlier.

**12. Lighterage.** Any lighterage in or off ports of loading or ports of discharge shall be for the account of the shipper or receiver.

**13. Forwarding, substitute of vessel, through cargo and transhipment.** If necessary. The carrier may carry the goods to their port of destination by other vessel or vessels either belonging to the carrier or other persons or by rail or other means of transport proceeding either directly or indirectly to such port, and to carry the goods or part of them beyond their port of destination, and to tranship, lighter, land and store the goods on shore or afloat and reship and forward same at carrier's expense but at shipper's or receiver's risk. The responsibility of the carrier shall be limited to the part of the transport performed by him on the vessel under his management.

**14. Deviation and changing of route.** Any deviation in saving or attempting to save life or property at sea, or any reasonable deviation and changing of route shall not be deemed to be infringement or breach of the contract of carriage, and the carrier shall not be liable for any loss or damage resulting therefrom.

**15. Dangerous cargo.** If goods of an inflammable, explosive or dangerous nature are shipped without contents being previously declared or shipped under false description, they may at any time be landed at any place or thrown overboard or destroyed or rendered innocuous by the carrier without compensation. The shipper shall be liable for all damages caused by such goods to the ship and/or cargo on board.

If any such goods shipped with such knowledge and consent shall become a danger to the ship or cargo, they may likewise be dealt with by the carrier without liability on the part of the carrier except to general average, if any.

**16. Deck cargo, plants and live animals.** Cargo on deck, plants and live animals are received, handled, carried, kept and discharged at shipper's or receiver's Risk and the carrier shall not be liable for loss thereof or damage thereto.

**17. Refrigerated cargo.** Before loading cargo in any insulated space, the Carrier shall in addition to the Class Certificate, obtain the certificate of the Classification Society's Surveyor or other competent person, stating that such insulated space and refrigerating machinery are in the opinion of the surveyor or other competent person fit and safe for the carriage and preservation of refrigerated cargo. The aforesaid certificate shall be conclusive evidence against the shipper, receiver and/or any holder of Bill of Lading.

Receivers have to take delivery of refrigerated cargo as soon as the ship is Ready to deliver, otherwise the carrier shall land the cargo at the wharf at receiver's or shipper's risk and expense.

**18. Timber.** Any statement in this Bill of Lading to the effect that timber has been shipped "in apparent good order and condition" does not involve any admission by the carrier as to the absence of stains, shakes, splits, holes or broken pieces, for which the carrier accepts no responsibility.

**19. Bulk Cargo.** As the carrier has no reasonable means of checking the Weight of bulk cargo, any reference to such weight in this Bill of Lading shall be deemed to be for reference only, but shall constitute in no way evidence against the carrier. Where bulk cargo or goods without marks or goods with the same marks are shipped to more than one Consignee, the Consignees or Owners of the goods shall jointly and severally bear any expense or loss in apportioning the goods or parcels and any deficiency shall fall upon them in such proportion as the Carrier, his servants or agents shall decide.

**20. Heavy lifts and awkward cargo.** Any one piece or package of cargo which weighs 2,000 kilos or upwards and any awkward or over length cargo must be marked with the weight and/or dimensions and/or length clearly and boldly by the shipper and shall be loaded and discharged by shore crane or otherwise at the ship's option and at the risk and expense of the shipper or Receiver. If any damage, loss or liability to the ship, lighter, wharf, quay, cranes, hoisting tackle, or whatsoever or to whomever occurs owing to the lack of statement or mis-statement of weight, measurement or length, the shipper or receiver shall be responsible for such damage, loss or liability.

**21. General average.** General average, if any, shall be adjusted according to the York-Antwerp Rules, 1950, at any port or place at the carrier's option.

**22. War, quarantine, ice, strikes, congestion, etc.** Should it appear that war, blockade, pirate, epidemics, quarantine, ice, strikes, congestion and other causes beyond the carrier's control would prevent the vessel from safely Reaching the port of destination and discharging the cargo thereat, the carrier is entitled to discharge the cargo at the port of loading or any other safe and convenient port and the contract of carriage shall be deemed to have been fulfilled.

Any extra expenses incurred under the aforesaid circumstances shall be borne by the shipper or receiver.

Ex 3
Zhu