# Paré Exhibit C

## **REPLY DECLARATION OF CHU BEIPING**

I, CHU BEIPING, MAKE OATH AND SAY AS FOLLOWS:-

1. I have previously provided my background in my declaration dated January 28, 2008. I have now read the answering declarations of Carsten Bober, Nikolai Christopher Ivanov and Huang Shun Gang together with attachments to these declarations. I write to provide my reply in accordance with Chinese law focusing on the issues contained in the Declaration of Mr. Huang Shun Gang.

2. With respect to the time charter party, I note that there is a new head charter party dated April 18, 2007 described as being between Oresteia Shipping Ltd. ("Oresteia"), as owner, and Navison Shipping Company A/S ("Navison"), as charterer, disclosed as Exhibit "1" to the Bober declaration. It is said that it is unlikely Oresteia could have time chartered the vessel Brave John to Yong He Shipping Ltd. ("Yong He") directly for a period that the vessel was already under another time charter (Huang's Declaration Para. 25). It is further suggested, although proof is lacking, that Navision chartered the vessel to Yong He. If this is true, what this means is that the owner in the alleged Navision/Yong He charter is only a disponent owner and not the actual owner of the vessel. As explained at pages 8-9 of the attached case law (Exhibit 1), this means Navision, as a mere disponent owner, who fails to actually possess and control the cargo, has no right to lien cargo under Chinese law.

### No contract was concluded by Navision and Shanghai Fareast and Shanghai Fareast Has Right to Issue Bill on Yong He's Authority under Chinese Law

3. Mr. Huang cites a number of articles from the Contract law of PRC but he fails to cite or refer to the most important provisions which deal with contract formation and the fact that a positive and clear acceptance is required for a contract to be formed.

*Article 21 of the Contract Laws of PRC*

*"Acceptance shall be defined as the unambiguous and definite intention to assent to an offer."*

*Article 25*

*"Contact has been concluded when the acceptance comes into force".*

As for the Master's letter, it can not be construed as a contract between Navision and Shanghai Fareast under Chinese law. It is obvious from the Declaration of Mr. Zhuo Zhonggen that he just marked on the letter "RCVD THIS LETTER" which didn't mean that he agreed to the terms of the letter. Pursuant to Article 21 abovementioned, acceptance must be an unambiguous agreement with the offer set out by the offeror, namely the Master in this case. However, just as I understand English law holds, the word "received" and "agreed" stand for quite different meaning in Chinese law. "Received the letter" means only Mr. Zhuo has the letter. Whether Mr. Zhuo chose to accept its terms as binding is not answered by mere receipt. Hence, "received" is not an acceptance in Contract law in China. So no contract was entered into due to lack of acceptance according to Article 25.

In Chinese law, the specially added words "Rcvd the letter" to the signature must mean something when the court construes the document. If Mr. Zhuo's intention is to accept the

2

terms and conditions as showed in the document, what he needs to do is merely to sign his name in the column of "Acknowledged and accepted".

For the foregoing reasons, there is no liability for breach of contract put on Shanghai Fareast's shoulder, since there is no contractual relationship.

4. Further, Yong He, as the carrier defined in Article 42 of Chinese Maritime Code has the right to issue bill of lading. Accordingly, Shanghai Fareast has the right to issue bill of lading on authority from Yong He which it did.

**No Tort Liability Shall Be Born By Shanghai Fareast.**

5. Mr. Huang urges that predated bills are an "illegal" act in China (Paragraph 59). Whether the issuance of predated bills of lading is illegal or not is irrelevant to Navision's theory which does not rely on predating but on harming lien rights. The same goes for failing to incorporate the survey report in the bills of lading.

6. Mr. Huang in Paragraph 61 of his statement also urges that freight prepaid bills "could be deemed an illegal action". There is no basis for this conclusion under Chinese law and I note he offers none.

7. Issuance of bill of lading for and on behalf of the carrier/Owner is the customary business for a ship agent in China and will be viewed as legal, although the agent might be at fault in some aspects during his performance of the trusted matter, which has been supported by judgment of the Chinese Court (See: Exhibit 1). Hence, Article 67 of Civil Law of China cited in Para.59 of Huang's Declaration shall not apply to this case. "the matters entrusted are illegal" in Article 67 means that the matter entrusted itself is of a illegal nature, other than the agent conducts the lawful entrusted matter with fault. Therefore, it is incorrect for Mr. Huang to say that Shanghai Fareast should be jointly and severally responsible for the loss of

Navision with Yong He. I am of view that the Navision failed to discharge his burden of proof on this point. According to Article 64 of Civil Procedure Law of P. R. China, "the one who claims must prove".

8. Finally, I would emphasize that as the agent of the Carrier, SHANGHAI FAREAST shall strictly carry out the trusted matter in accordance with the principal's instruction which in this case is Yong He, without taking any other parties' intervention into account. Please refer to pages 7-8 of the attached case law (Exhibit 1). Moreover, any legal effect of Shanghai Fareast's action are attributable to Yong He and Shanghai Fareast has no liability as an agent to a third party like Navision under Chinese agency law for acts done on Yong He's behalf. Please refer to page 9 of the attached case law (Exhibit 1).

I state under penalty of perjury of the laws of the United States that the foregoing is true to the best of my knowledge and belief and that the opinions I have expressed are correct.

_____
Chu Beiping

Executed on:  March 7, 2008
              Dalian, China

# Exhibit 1

[Free Translation]

# Universal Chartering Inc.

# V.S.

# CHINA OCEAN SHIPPING AGENT (QINZHOU) CO. LTD.

The plaintiff (the appellant): UNIVERSAL CHARTERING INC.
[hereinafter called "the Disponent Owners"]

The defendant (the appellee): CHINA OCEAN SHIPPING AGENT (QINZHOU) CO. LTD.
[hereinafter called "the Agent"]

### 1. Summary of the case

The plaintiff, as **the Disponent Owners**, chartered M/V "MERAKS" from the Head Owners by time charter party and obtained the right to issue bills of lading.

The Disponent Owners sublet the Vessel to Startrade Pacific Inc. (the charterer), inter alia other clauses, it was agreed that bill of lading shall be issued according to mate's receipt by agent appointed by the charterer.

The defendant, at **the Agent,** was appointed as agent of Qinzhou port by the charterer and was authorized by the charterer to issue bill of lading on behalf of the Master.

However, the Disponent Owners' agent approached **the Agent stating** that the right to issue bills of lading had been authorized to the Disponent Owners, and any matters relating to issuance of bills of lading should contact them directly, and the Agent was lack of right to issue it. **The Agent** relayed the message immediately to the charterer for their information.

Then, **the Agent** issued and released bills of lading according to the instruction of the charterer, marking that (1) freight prepaid; (2) as agent for and on behalf of master: Dimopoulos Georgios.

The **Disponent Owners** claimed against **the Agent** for the losses of the freight etc. due under the bills of lading "freight prepaid" issued by the Agent covering the cargo loaded at Qingzhou Port, based on the action cause that the Agent's action issuing bills of lading illegally and fraudulently had damaged to their right of lien on the cargo to collect the outstanding freight and other relevant costs.

## 2. Summary of reasons and judgments of Court in China

### 2.1 Court of first instance

North Sea Maritime Court held that the Disponent Owners had a charterparty relationship with the charterer, while the Agent was the port agent appointed by the charterer.

The Court did not find the Agent should be blamed for any tort action against the Disponent Owners as following reasons,

(1) There is no tort liability of the Agent.
To constitute a tort in civil law, there shall be satisfied with four requirements, i.e. fault, tort conduct, damage and causation. However, there is no fault and illegality for the Agent issuing the bills of lading. Firstly, to issue bills of lading "as agent for and on behalf of

master" was in compliance with the international shipping practice. Secondly, there was no evidence revealing that the Agent wrongfully marked the bills of lading with "Freight Prepaid" since the freight had not been paid actually. Finally, the bills of lading were signed in accordance with the Mates' receipt.

(2) The Agent is not obliged to be bound by the requirements set out by the Disponent Owners or the Master.
The Agent should conduct the acts of agency in conformity with the instruction of this principal, not others. The Agent, as agent of the charterer, shall follow its principal's instruction. Although the Disponent Owners and the Master has warned the Agent that it was the Disponent Owners who had the entitlement to issue bills of lading, the Agent was the charterer's agent, therefore the Agent had no obligation to be bound by the instruction of the Disponent Owners. There was also no need for the Agent to investigate against the relations between its principal and other companies, and the Agent should only conduct as its principal's instruction.

(3) The Disponent Owners are not entitled to collect fright and relevant costs under the bills of lading. Although there was some fault for the Agent to issue the bills of lading in this case, however, there was not causation between the fault and the Disponent Owners' losses.

(4) Right of collecting freight is not the object of the civil tort action.
According to civil laws, the object of right which could be infringed by tort action would be absolute right, i.e. real right, personal right and intellectual right. Right of collecting freight should be defined as a contractual right, which can not be an object to suffer tort.

The Judgment
The Disponent Owners was not the entitled party to freight and other payment under bills of lading. There was no tort against the Disponent Owners by the Agent. The claim of the Disponent Owners was lack of factual and legal foundation, and so was dismissed.

## 2.2 Court of second instance

High Court of Guangxi Province adjudicated that the Judgment of First instance should be maintained since the Agent did not infringe any right of the Disponent owners' right,

The Disponent Owners have no lien right on the cargo, which should be granted to the carrier of the cargo, who possessed the cargo actually. However, the Disponent Owners, as the time charterer of the Vessel, was not the carrier, who had right to collect freight etc. Therefore, there was no lien right owned by the Disponent Owners. It was impossible for the Agent to deprive of their any lien right.

Any effect and/or responsibility arising from the agent's action of agency should be born by the principal, and so the Disponent Owners could not claim directly against the agent, disregarding of the charterer, viz the principal.

In conclusion, the Agent was free from liability of the losses of or damage to the outstanding freight etc. alleged by the Disponent Owners. The appeal was dismissed as well.