UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NAVISION SHIPPING COMPANY A/S,                  :
                                                :
                Plaintiff,                      :
                                                :
    against-                                      :
                                                :  07 Civ. 9517(DC)
YONG HE SHIPPING (HK) LTD., PROSPER             :
SHIPPING LIMITED, JIANGSU FING AGENCY           :
LTD., JIANGSU FAREAST INTERNATIONAL             :
SHIPPING AGENCY LTD., THE OLD EASTERN           :
MEDITERRANEAN CO SA, CHINA MARINE               :
SHIPPING AGENCY TIANJIN COMPANY LTD.,           :
LIANYUNGANG FAREAST INTERNATIONAL               :
SHIPPING AGENCY CO. LTD., and SHANGHAI          :
FAREAST INTERNATIONAL SHIPPING                  :
AGENCY CO. LTD. a/k/a FEISA,                    :
                                                :
                Defendants.                     :
------------------------------------------------------------------X

**REPLY MEMORANDUM**

NOURSE & BOWLES, LLP
Attorneys for Defendant
SHANGHAI FAREAST INTERNATIONAL
SHIPPING AGENCY CO. LTD.
One Exchange Plaza
At 55 Broadway
New York, New York 10006
(212) 952-6200

## TABLE OF CONTENTS

Introduction ........................................................................................................................1

REPLY TO PLAINTIFF'S PRELIMINARY STATEMENT AND
    POINT I CONCERNING RULE B AND THE REQUIREMENT
    OF A *VALID* MARITIME CAUSE OF ACTION ..............................................1

    Plaintiff's Alleged Claims Under Chinese and English Law.............................7

    The Freight Collect Bills ....................................................................................8

REPLY TO POINT II THE PLAINTIFF'S CLAIM IS CONTINGENT..............................8

REPLY TO POINT III PLAINTIFF'S CLAIM SHOULD BE DISMISSED FOR
    FAILURE TO COMMENCE SUIT EARLIER AND FOR NOW
    THREATENING TO SUE IN TWO DIFFERENT COURTS .........................................9

FINAL POINT -- COUNTERSECURITY ......................................................................10

Conclusion.......................................................................................................................10

## Introduction

This Reply Memorandum is submitted on behalf of defendant, Shanghai Fareast International Shipping Agency Co. Ltd. (hereinafter "Shanghai Agency") who appears by restricted appearance in accordance with Supplemental Admiralty Rule E(8) of the Federal Rules of Civil Procedure ("FRCP") in reply to answering papers of plaintiff, Navision Shipping Company A/S ("Plaintiff" or "Navision") and in further support of Defendant's motion under Rule E(4)(f) of the Supplemental Admiralty Rules to dismiss the claim and attachments against it since the Second Amended Complaint fails to state a claim on which relief can be granted under Rule 12(b)(6) of the FRCP. Under FRCP Rule 12(b)(6) the Court can also decide the case on summary judgment and we have therefore also previously addressed dismissal on this basis.

**REPLY TO PLAINTIFF'S PRELIMINARY
STATEMENT AND POINT I CONCERNING
RULE B AND THE REQUIREMENT OF
A *VALID* MARITIME CAUSE OF ACTION**

Plaintiff essentially urges that all it need do is make allegations that a defendant has liability and it is thereby, ipso facto, entitled to a maritime attachment and a court is powerless to look into the validity or reasonableness of its pleadings and asserted cause of action. It justifies this theory on the grounds that it is "necessary in the maritime world in order to bring maritime debtors to justice." (p. 2). In fact, "justice " is clearly not on the side of Plaintiff in this case. Here, Plaintiff commenced its attachment proceedings some three months ago but it has *yet* to commence an action to litigate the merits of its claims.

In answering papers, it now asserts it is planning to sue Shanghai Agency in either England or China *or both* on these claims, thereby giving Plaintiff two bites at the apple and requiring Shanghai Agency to defend in three different jurisdictions. In the meantime, the likely applicable law shows Plaintiff's claim is entirely lacking in merit.

Here, for example, Plaintiff's underlying claim is against its own charterer, Yong He Shipping (HK) Ltd. ("Yong He"). Plaintiff's claim against Shanghai Agency, in contrast, is of a strained, derivative nature. Plaintiff claims that it was not paid charter hire by Yong He. In particular, Plaintiff alleges that it *might* have had a lien on the cargo (even though the cargo was owned by third parties and not Yong He and applicable English law is concededly uncertain and conflicting on whether a lien exists) and that actions of Shanghai Agency, in issuing bills in accordance under its principal's, Yong He's, instructions, *may* have infringed Plaintiff's rights. Its claim against Shanghai Agency ignores elementary agency law which, for relevant purposes, appears identical in the United States, England and China, i.e., that if a third party is injured by the actions of an agent acting within the scope of its authority, the remedy of the third party is to seek redress against the principal and not the agent. In fact, the charter party, in clause 42, specifically incorporates this principle. ("*Charterers* to accept all consequences that might result from charterers and/or their agents not adhering strictly to their authority."). This, of course, would include any possible argument that the so-called "Master's authority" binds the agent. Further, English and Chinese law clearly show there is no required unambiguous acceptance of the terms of this "authorization".

Most importantly, however, Plaintiff's theory focuses on Shanghai Agency having liability because *some* of the bills it issued were marked "freight prepaid" and this allegedly infringed Plaintiff's lien rights according to some unspecified advice. This theory entirely implodes, however, because the bulk of the cargo was carried under "freight collect" bills of lading and there was *no impediment to liening the freight collect cargo* by reason of anything Shanghai Agency did. (Plaintiff offers *no* proof of what it actually did to lien cargo). In fact, the cargo carried pursuant to "freight collect" bills had a value of over 5 million dollars, about twice the value of Plaintiff's claim, even with interest and costs thrown in. It is therefore painfully obvious that Plaintiff cannot sustain a cause of action against Shanghai Agency because nothing Shanghai Agency did barred Plaintiff from liening the freight collect cargo.

Plaintiff next cites cases to support its point that allegations in a complaint cannot be challenged in a Supplemental Rule E(4)(f) challenge but, in doing so, Plaintiff has failed to take into that account the more well reasoned and persuasive precedent. In determining the proper role of the Court in reviewing a claim in support of an attachment, it is important to bear in mind that ex parte, pre-judgment attachments raise *constitutional* concerns. See North Georgia Finishing, Inc. v. DiChem, Inc., 419 U.S. 601, 95 S. Ct. 719 (1975), see also T & O Shipping Ltd. v. Source Link Co. Ltd., 2006 U.S. Dist. LEXIS 88153 at *22 (S.D.N.Y. 2006) ("Because it is prudent to avoid constitutional questions, the Court will not construe the Order of Attachment it signed or Rule B to permit Plaintiff to retroactively amend its Attachment."). In North Georgia Finishing, the Supreme Court struck down the Georgia attachment provisions, in part, because "[t]here is no provision

3

for an early hearing at which the creditor *would be required to demonstrate at least probable cause for the garnishment."* 419 U.S. at 607, 95 S.Ct. at 723. In that case, the Court was critical of the Georgia attachment statute which allowed attachments based on "conclusory allegations", 419 U.S. at 607, 95 S.Ct. at 722 and held that "some procedures are necessary to guard against the risk of initial error" in respect of an attachment. Allegations in a complaint are, of course, "conclusory allegations".

Rule E(4)(f) was created to guard against this risk of initial error which exists when a Plaintiff seeks an ex-parte Rule B attachment. The Advisory Committee Notes to the 1995 Amendments to Supplemental Admiralty Rule E makes it clear that any "deficiency in the proceedings" or the complaint may be raised, inter alia, at a Supplemental Admiralty Rule E(4)(f) hearing. These notes provide:

> Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to the shipowner a prompt post-seizure hearing at which he can attach the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings.

Cases that have implicitly recognized the importance of the Rule E(4)(f) hearing to the continued constitutional aspects of Rule B attachments have applied the reasonable grounds standard to determine whether the Plaintiff has a "valid prime facie claim." The court in Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), noted that "although a minimal prima facie showing is sufficient to justify initially obtaining an attachment under Rule B, under Rule E(4)(f), (plaintiff) has the burden of presenting some evidence showing reasonable grounds for the attachment."

4

As noted above, the Supreme Court struck down the Georgia attachment provisions, in part, because there was no provision requiring the creditor to demonstrate *probable cause* for the garnishment at an early stage in the proceeding. The application of the "reasonable grounds" standard to the Rule E(4)(f) hearing does just this. It requires the plaintiff to provide justification beyond mere conclusory pleadings for the maintenance of the attachment order. See Compania Sudamericana de Vapores S.A. v. Sinochem Tianjin Co., 2007 U.S. Dist. LEXIS 24737 (S.D.N.Y August 4, 2007) citing Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd., 475 F. Supp. 2d 275, 2006 AMC 2744 ("[C]ourts have compared the showing required under 'reasonable grounds' analysis to the more familiar standard of *probable cause*."); see also Ullises, 418 F. Supp. 2d at 222 & n.37.

Thus, it is clear that the application of the reasonable grounds standard is necessary to comport with the views of the United States Supreme Court when dealing with attachment statutes. Any other rule would, without due process, place the attached property "totally beyond use during the pendency of the litigation." North Georgia Finishing, 419 U.S. at 606, 95 S. Ct. at 722.

In Maersk, Inc. v. Neewra, Inc., the court when faced with a motion to vacate a maritime attachment applied the reasonable grounds standard to justify the maintenance of the attachment. 443 F. Supp. 2d 519 (S.D.N.Y. 2006). The court stated that "the Court's review of whether reasonable grounds exist for the attachment is not limited to the allegations in the complaint." In holding that there were reasonable grounds to sustain the attachment the court stated "[t]he totality of Plaintiff's allegations, including those offered

5

in their opposition briefs, their affidavits, and at the hearing provide reasonable grounds to believe that [the movant] was intricately involved in events alleged in the Complaint, whether as [a named defendant] or other individuals identified therein.")

Other cases requiring reasonable grounds be shown to sustain a Rule B attachment include, Ullises Shipping Corp., supra, (a plaintiff claiming a corporate connection sufficient to justify an attachment "must present enough evidence to convince the court that there are reasonable grounds for piercing the corporate veil."); Wajilam Exports (Singapore) Pte. Ltd., supra, (noting that the "reasonable grounds" standard involves review not only of the adequacy of the allegations in the complaint, but also of any evidence submitted by the parties.); Williamson v. Recovery Ltd. P'ship, 2007 U.S. Dist. LEXIS 4438 (S.D.N.Y. January 16, 2007) (where the court vacated an attachment, under a reasonable grounds standard, finding that "Plaintiffs' proffers of facts, allegations and inferences that might, if proven, support findings…are insufficient at this stage to demonstrate that Plaintiffs have the requisite prima facie admiralty claim against any of the defendants other than…."); and Compania Sudamericana de Vapores S.A. v. Sinochem Tianjin Co., 2007 U.S. Dist. LEXIS 24737, 2007 AMC 1467 (April 2, 2007) ("In assessing whether a plaintiff has a valid admiralty claim, courts apply the "reasonable grounds" test.).

Further, without the application of a standard requiring the formation of reasonable grounds to sustain an attachment, it would not be possible to satisfy the first prong of the test in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434 (2d Cir. 2006). The first prong of this test requires the plaintiff to show that "it has a *valid* prima facie

admiralty claim against the defendant…" Aqua Stoli Shipping Ltd., 460 F.3d at 444-45. Plaintiff cites to Aqua Stoli but ignores the word "valid". Valid is defined as "having legal strength or force, legally sufficient or efficacious, sustainable and effective in law." Black's Law Dictionary. Mere allegations do not show a *valid* claim exists. It seems obvious a court must, under Aqua Stoli, look beyond allegations.

Its is therefore respectfully submitted that, absent reasonable grounds, a pre-judgment attachment against a defendant, without establishing a *valid* cause of action, cannot pass constitutional scrutiny and should be vacated on a Supplemental Rule E(4)(f) hearing such as this. Further, the burden of proof in a Rule E(4)(f) challenge is on the Plaintiff. Aqua Stoli, 460 F.3d at 445, n. 5.

**Plaintiff's Alleged Claims Under Chinese and English Law**

Plaintiff has submitted declarations on Chinese and English law. Even a cursory review of these show they offer nothing but opinions and conclusions favorable to Plaintiff with virtually no relevant legal support to back them up. Instead, only general legal propositions of no particular relevance are offered. We refer to reply declarations by Messrs. Yang and Chu to show the weakness of Plaintiff's proffered declarations but offer one example. It is alleged by Plaintiff's English solicitor, based on an oblique reference to Chitty on Contracts (2004 London Sweet & Maxwell), that under English law Shanghai Agency did agree to the Master's "authorization" despite it being signed "Rcvd". In fact, in the relevant section of Chitty on Contracts which actually addresses the formation of contracts, the authors state that an acknowledgement that a contract is "received" is *not* sufficient to show the necessary *unqualified* acceptance that English law requires. See

7

Paré Reply Affidavit, Exhibit "B", Yang Reply Declaration at ¶¶ 16-20. The same is true under Chinese law. See Chu Reply Declaration, Exhibit "C" to Paré Reply Declaration at ¶ 13).

### The Freight Collect Bills

As far fetched as Plaintiff's declarations are on foreign law, however, the Court does not have to choose between declarations offered by Plaintiff and Defendant. That is because Plaintiff wholly ignores the critical point that there was no arguable impediment to it liening the cargo carried under the "freight collect" bills of lading by reason of anything Shanghai Agency did. This cargo had a value of over 5 million dollars, about twice the value of Plaintiff's claim (see Paré Reply Affidavit, Exhibit "A", Zhuo Reply Declaration AT ¶¶ 3-4). Further, this cargo was easily accessible and separated from the cargo carried under the "freight prepaid" bills (see Yang Reply Declaration, supra, at ¶ 8). In the circumstances, Plaintiff's theory and cause of action against Shanghai Agency collapses.

### REPLY TO POINT II

### THE PLAINTIFF'S CLAIM IS CONTINGENT

Defendant urged at pages 23-25 of its Main Brief that Plaintiff's claim is contingent and hence premature. This is because Plaintiff asserts that it was deprived of lien rights by Shanghai Agency's actions yet it has apparently not yet pursued its rights against its contracting party, Yong He. Hence, it is not clear that any action by Shanghai Agency actually injured Plaintiff since it may yet recover against Yong He. Once one is in the area of ex parte pre-judgment attachments, such concerns must be taken into account in determining whether attachments are sustainable. Plaintiff's response is that its claim is

not an "indemnity claim", as many cases discuss. This does not, however, establish that Plaintiff should be entitled to an ex parte pre-judgment attachment in this case or in any other type of case where a party only has liability on a contingency basis. No cases appear directly on point but, we respectfully submit, it is within the Court's discretion to vacate an attachment on such a claim. See generally, Greenwich Marine, Inc. v. S.S. ALEXANDRA, 339 F.2d 901 (2d Cir. 1965).

### REPLY TO POINT III

### PLAINTIFF'S CLAIM SHOULD BE DISMISSED FOR FAILURE TO COMMENCE SUIT EARLIER AND FOR NOW THREATENING TO SUE IN TWO DIFFERENT COURTS

Plaintiff claims it has a right to attach and then sit back and do nothing to pursue its claim on the merits. Curiously, however, Plaintiff attaches to its brief a transcript in the case of Front Carriers Ltd. v. Transfield in which Plaintiff's attorney urged dismissal on that very basis. The judge in that case said, with respect to a similar 3 month delay, "I think this is at the outer limits of what is acceptable." (p. 9, lines 15-16 of Front Carriers hearing transcript). Here, we have worse. Now, Plaintiff advises some three months later, it may sue Shanghai Agency in *both* England and China (see Carstan Bober Declaration at ¶ 14). This clearly renders use of Rule B abusive in this case as Shanghai Agency, in addition to defending attachments here, now faces defending the merits in two further jurisdictions so Plaintiff can have two bites at the apple. This is clearly an attempt to batter a party into submission by attaching its funds and pursuing litigation in multiple jurisdictions.

## FINAL POINT -- COUNTERSECURITY

If Plaintiff's attachments are allowed to stand, Shanghai Agency should have countersecurity for its costs as a possible prevailing party in any litigation commenced by Plaintiff in the amount of $250,000, the same amount as claimed by Plaintiff. See Supplemental Admiralty Rule E(7). Fednav International Ltd. v. Sunwoo Merchant Marine Co. Ltd., 07 Civ. 3886(DC), Memorandum Decision dated October 18, 2007 (attached). Ullises Shipping Corp. v. Fal Shipping Co. Ltd., 415 F. Supp. 318, 329 (S.D.N.Y. 2006).

## Conclusion

It is respectfully submitted that Plaintiff's claim should be dismissed and all attachments and orders of attachments vacated or reduced and/or that Shanghai Agency be granted countersecurity for its "costs" as a possible prevailing party in a foreign litigation to be commenced by Plaintiff and that Plaintiff be granted any further and different relief as may be just and equitable.

Dated: New York, New York
      March 7, 2008

                         NOURSE & BOWLES, LLP
                         Attorneys for Defendant
                         SHANGHAI FAREAST INTERNATIONAL
                          SHIPPING AGENCY CO. LTD.

                         By: _____
                            Armand M. Paré, Jr. (AP-8575)
                            One Exchange Plaza
                            At 55 Broadway
                            New York, NY 10006
                            (212) 952-6200

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
FEDNAV INTERNATIONAL LTD.,           :

                Plaintiff,           :

       - against -                   :     MEMORANDUM DECISION

SUNWOO MERCHANT MARINE CO. LTD.,     :     07 Civ. 3886 (DC)

                Defendant.           :
- - - - - - - - - - - - - - - - - -x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/18/07

APPEARANCES:   BLANK ROME LLP
               Attorneys for Plaintiff
                     By: Jeremy J.O. Harwood, Esq.
               The Chrysler Building
               405 Lexington Avenue
               New York, New York  10174

               NOURSE & BOWLES, LLP
               Attorneys for Defendant
                     By: Armand M. Pare, Jr., Esq.
               One Exchange Plaza
               New York, New York  10006

CHIN, D.J.

      Defendant Sunwoo Merchant Marine Co. Ltd. ("Sunwoo") moves for security for its counterclaim in this maritime action pursuant to Rule E(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules") of the Federal Rules of Civil Procedure. For the following reasons, the motion is granted.

## BACKGROUND

      In this dispute, plaintiff Fednav International Ltd. ("Fednav") alleges that Sunwoo breached a contract of charter party. The matter is subject to arbitration in London. Fednav brought this action seeking security for its claims in the London arbitration. On Fednav's *ex parte* application pursuant to Rule B

of the Supplemental Rules, this Court entered an order authorizing process of attachment and garnishment of up to $1,605,367 against Sunwoo's property for Fednav's principal claim, estimated lawyers and arbitrators' fees, and costs and interest. Sunwoo subsequently filed a counterclaim for $92,289.35, asserting that Fednav repudiated and breached the same contract. Sunwoo now moves for security of $414,438.79 for the counterclaim in the amount of $92,289.35, estimated interest in the amount of $22,049.44, and estimated attorneys' fees and arbitrators' costs in the amount of $300,000. In support of the attachment amount requested for the estimated attorneys' fees and arbitrators' costs, Sunwoo submitted the Declaration of Deung Rong Lee, its solicitor in the London arbitration.

## DISCUSSION

Rule E(7)(a) of the Supplemental Rules provides, in relevant part, that

> [w]hen a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court, for cause shown, directs otherwise.

A district court has "broad discretion in deciding whether to order countersecurity." Result Shipping v. Ferruzzi Trading USA, 56 F.3d 394, 399 (2d Cir. 1995). "Inherent in the district court's discretion in deciding whether to order countersecurity is discretion to determine the amount of the countersecurity." Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A.,

No. 06-15299, 2007 WL 646329, at *1 (S.D.N.Y. Feb. 26, 2007). A district court's exercise of discretion "will be governed by its sense of fairness and equality." Id.

Fednav concedes that Sunwoo is entitled to countersecurity for its counterclaim under Rule E(7); it argues, however, that Sunwoo is not entitled to countersecurity for attorneys' fees and arbitrators' costs because those costs will not be incurred for proving its counterclaim, but instead for defending against Fednav's claims. Fednav argues that $300,000 in fees and costs is not reasonable as the counterclaim seeks only damages of $92,289.35. Sunwoo argues that to prevail on its counterclaim it must successfully defeat Fednav's claim of repudiatory breach and that all fees should therefore be attributed to advancing its counterclaim.

The case law on this issue is limited. Ullises Shipping Corp. v. Fall Shipping Co. Ltd., 415 F. Supp. 2d 318 (S.D.N.Y. 2006), cited by both parties, is the most relevant case. In Ullises, the court granted countersecurity for attorneys' fees only, absent a counterclaim for damages. In the instant case Sunwoo has counterclaimed for damages and must necessarily disprove plaintiff's claim of repudiatory breach to prevail on that counterclaim. The fees sought are "inextricably intertwined with the original transaction" that is the subject of arbitration, id. at 329, and therefore attachment of Sunwoo's total estimated attorneys' fees and arbitrators' costs is appropriate.

- 3 -

## CONCLUSION

For the reasons set forth above, Sunwoo's motion is granted and Fednav is ordered to post a bond or other satisfactory security in the sum of $414,438.79.

SO ORDERED.

Dated:   New York, New York
         October 18, 2007

DENNY CHIN<br>
United States District Judge