UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

NAVISION SHIPPING A/S,                     :

                    Plaintiff,             :

              - against -                  :

YONG HE SHIPPING (HK) LTD.,                :
PROSPER SHIPPING LTD., JIANGSU
FING AGENCY LTD., JIANGSU FAREAST          :
INTERNATIONAL SHIPPING AGENCY
LTD., THE OLD EASTERN                      :
MEDITERRANEAN CO. SA, CHINA MARINE
SHIPPING AGENCY TIANJIN CO. LTD.,          :
LIANYUNGANG FAREAST INTERNATIONAL
SHIPPING AGENCY CO. LTD., and              :
SHANGHAI FAREAST INTERNATIONAL
SHIPPING AGENCY CO. LTD. a/k/a             :
FEISA,
                                           :
                    Defendants.
                                           :
- - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/8/08

**MEMORANDUM DECISION**

07 Civ. 9517 (DC)

**APPEARANCES:**   LENNON, MURPHY & LENNON, LLC
              Attorneys for Plaintiff
                   By:  Patrick F. Lennon, Esq.
                        Nancy R. Siegel, Esq.
              The GrayBar Building
              420 Lexington Avenue, Suite 300
              New York, New York  10170

              NOURSE & BOWLES, LLP
              Attorneys for Defendant Shanghai Fareast
              International Shipping Agency Co. Ltd
                   By:  Armand M. Pare, Jr., Esq.
              One Exchange Plaza
              New York, New York  10006

**CHIN, District Judge**

          Defendant Shanghai Fareast International Shipping

Agency Co. Ltd. ("Shanghai Fareast"), a shipping agent located in

China, moves to vacate the Process of Maritime Attachment and

Garnishment ("Order of Attachment") entered against it by this

Court at the request of plaintiff Navision Shipping Company A/S

("Navision"), and to dismiss Navision's underlying complaint.  In
the alternative, it seeks summary judgment.  For the reasons that
follow, the motion is denied, in all respects.

## BACKGROUND

### A.   Facts

On April 18, 2007, Navision chartered the M/V Brave
John (the "Brave John") from the vessel's owner, Oresteia
Shipping Ltd., Malta ("Orestia"), for use in the delivery of
cargo for three to five months.[1]  (Second Am. Compl. ¶ 7; see
Bober Decl. ¶ 4).  The charter agreement (the "Charter Party")
provided that "should any dispute arise between Owners and the
Charterers," the matter would be referred to arbitration in
London (Charter Party ¶ 17) and governed by English law (Id. ¶
39).  Navision subsequently sub-chartered the Brave John to Yong
He Shipping (HK) Ltd. ("Yong He") in July 2007 for a one-time
charter trip of approximately sixty days.[2]  (Second Am. Compl. ¶
8; see Ivanov Decl. ¶ 9; Bober Decl. ¶ 5).

---

[1]      The second amended complaint refers to Navision as "the
disponent Owner" of the Brave John, without indicating that the
principal owner, from whom Navision chartered the vessel, was
Orestia.  (Second Am. Compl. ¶ 7).  In opposing the instant
motion, Navision clarified that it chartered the Brave John from
Orestia on April 18, 2007, and in that capacity, served as the
vessel's "disponent Owner."  (See Bober Decl. ¶¶ 4, 9).

[2]      The second amended complaint states that Navision
chartered the Brave John to Yong He "[b]y a charter party dated
July 7, 2007."  (Second Am. Compl. ¶ 8).  In its opposition and
supporting declarations, however, Navision states that it sub-
chartered the vessel to Yong He on July 12, 2007.

In August 2007, Yong He hired Shanghai Fareast to serve as "port agent" when the Brave John arrived in Shanghai. (Ivanov Decl. ¶ 10; Bober Decl. ¶ 7). As port agent, Shanghai Fareast was to issue bills of lading for the cargo on board.[3] (Second Am. Compl. ¶ 56; see OA Tr. 23:11-18).[4] Accordingly, the ship's captain (the "Master") provided Shanghai Fareast a letter of authorization dated August 22, 2007 (the "Letter of Authorization"), authorizing the latter to sign bills of lading on the Master's behalf. (Second Am. Compl. ¶ 56; Bober Decl. Ex. 3).

The Letter of Authorization imposed certain restrictions on Shanghai Fareast's issuance of bills of lading. In particular, it stated, "[Y]ou may not issue Bills of Lading marked 'FREIGHT PREPAID' which is 'STRICTLY FORBIDDEN.'" (Bober Decl. Ex. 3). It further warned:

> Should you encounter any difficulty in fully complying with this authorization you are hereby instructed to contact my ship's Disponent Owners via Navision Chartering A/S . . . . You will be held fully responsible in case you do not follow the above authorization strictly.

(Id.). Upon receipt, Shanghai Fareast's representative, Zhuo Zhonggen, co-signed the Letter of Authorization, representing that the port agent "[a]cknowledged and accepted" the terms

---

[3]     A "bill of lading" is "a document that indicates the receipt of goods for shipment and that is issued by a person engaged in the business of transporting or forwarding goods." Black's Law Dictionary 159 (7th ed. 1999).

[4]     "OA Tr." refers to the transcript of the oral argument held on July 10, 2008.

outlined therein.[5]   (<u>Id.</u>).  Contrary to those terms, however,

once the Brave John arrived at port, Shanghai Fareast issued at

least thirteen pre-dated, clean on board bills of laden marked

"freight prepaid."  (Second Am. Compl. ¶ 56; Zhongghen Decl. Ex.

4A; <u>see</u> OA Tr. 38:17-25).[6]

At some point during the course of the charter, Yong He

failed to pay Navision its hire due under the terms of the

Charter Party.  (Second Am. Compl. ¶ 10 & Ex. 2; <u>see</u> Bober

Decl. ¶ 10).  When the ship's cargo was discharged in Spain and

Italy, however, Navision was purportedly unable to exercise a

lien upon it as security for Yong He's debt.[7]  (Second Am. Compl.

¶ 57; <u>see</u> Bober Decl. ¶¶ 11-13).

## B.   Procedural History

On October 25, 2007, Navision filed this suit against

Yong He for failure to pay hire due under the Charter Party, and

requested an <u>ex parte</u> Order of Attachment against Yong He in the

amount of $2,254,227.20, pursuant to Supplemental Rule B for

---

[5]      In the Letter of Authorization, Zhonggen's name appears
as "Zhuo Zong Gen."  (<u>Id.</u>).  In Zhonggen's declaration, however,
in which he affirms that he signed the letter, his name appears
as "Zhuo Zhonggen."  (<u>See</u> Zhonggen Decl.).

[6]      The Court notes that some of the bills of lading were
properly marked "freight collect," indicating that payment was
due upon delivery; Navision makes no claim based on the issuance
of these.  (OA Tr. 25:6-9).

[7]      Navision asserts that because certain bills of lading
were marked "freight prepaid," the vessel had no choice but to
release the cargo without collecting payment, thereby foreclosing
Navision's opportunity to exercise a lien on the released cargo.
(<u>See</u> Second Am. Compl. ¶¶ 56-57; OA Tr. 23:11-18).

- 4 -

Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"). On October 26, 2007, this Court entered the ex parte Order of Attachment against Yong He.

Apparently unable to obtain security from Yong He, Navision filed an amended complaint on November 13, 2007, naming three additional defendants who, the complaint asserted, had "made hire payments under other charter parties on Yong He's behalf," or in the alternative, were agents, partners, or affiliates who held or would "soon be holding assets belonging to Yong He, or vice versa." (Am. Compl. ¶¶ 18-21). Navision requested, and the Court entered, an amended ex parte Order of Attachment against all defendants in the amount of $2,254,227.20.

On December 17, 2007, Navision filed a second amended complaint and request for an ex parte Order of Attachment in the amount of $2,694,270.59, naming four additional defendants, including Shanghai Fareast. This second amended complaint charged Shanghai Fareast with "wrongully and unlawfully" issuing "pre-dated, clean on board bills of lading . . . with the wording 'freight prepaid'" (count five). (Second Am. Compl. ¶ 56). For a third time, the Court entered the requested ex parte Order of Attachment against all defendants.

On January 30, 2008, Shanghai Fareast moved to (1) vacate the attachment, pursuant to Supplemental Rule E(4)(f), on grounds that Navision did not have a prima facie maritime claim against Shanghai Fareast, and (2) dismiss the complaint under

Rule 12(b)(6) for failure to state a claim. In the alternative, it requested summary judgment.

I heard argument on July 10, 2008 and reserved decision. To date, Navision has yet to prosecute its underlying claim against Shanghai Fareast in any jurisdiction.

## DISCUSSION

### A.    Rule E(4)(f) Motion to Vacate

#### 1.    Applicable Law

To obtain a maritime attachment, a plaintiff must satisfy the requirements of Supplemental Rules B and E. Rule B provides:

> If a defendant is not found within the
> district . . . a verified complaint may
> contain a prayer for process to attach the
> defendant's tangible or intangible personal
> property -- up to the amount sued for -- in
> the hands of garnishees named in the process.

Fed. R. Civ. P. Supp. R. B(1)(a). Plaintiff must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Fed. R. Civ. P. Supp. R. E(2)(a). This constitutes a more stringent standard than the general pleading requirements of Rule 8, and is intended to ensure that a plaintiff does not "hold, for a substantial period of time, property to which, in reality, it has no legitimate claim." United States v. Premises & Real Prop. at 4492 S. Livonia Rd., Livonia, N.Y., 889 F.2d 1258, 1266 (2d Cir. 1989)

- 6 -

(citation omitted); see Ronda Ship Mgmt. v. Doha Asian Org. Comm., 511 F. Supp. 2d 399, 404 (S.D.N.Y. 2007).

Rule E(4)(f) provides that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted." Fed. R. Civ. P. Supp. R. E(4)(f). Accordingly, plaintiff bears the burden of demonstrating that the Order of Attachment was proper. To meet that burden, plaintiff must show "that it has satisfied the 'filing and service requirements of Rules B and E' and that: (1) it has a valid prima facie admiralty claim against the defendant,[8] (2) the defendant is not present in the district, (3) defendant's property can be found within the district, and

---

[8]    District courts vary on whether, and to what extent, plaintiffs may, or must, provide supporting evidence to "show" they have a "prima facie claim." See, e.g., Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006) ("Rule E does not restrict review to the adequacy of the allegations in the complaint. A court also may consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing." (internal quotation marks and citation omitted)); Tide Line, Inc. v. Eastrade Commodities, Inc., No. 06 Civ. 1979 (KMW), 2006 U.S. Dist. Lexis 95870, at *16-18 (S.D.N.Y. Aug. 15, 2006) (A plaintiff "need not provide any supporting evidence" beyond its complaint, "[b]ut the reverse issue," whether it may "provide and rely on other submissions . . . to show that [it] indeed has a prima facie" admiralty claim, "is less clear."). While the Second Circuit has yet to rule, here, where both parties have relied on voluminous exhibits, I find it appropriate to consider their submissions for the purpose of evaluating whether Navision has a prima facie claim under Rules B and E. See Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping, 475 F. Supp. 2d 275, 279 (S.D.N.Y. 2006) ("Although review of extraneous evidence is appropriate, plaintiffs in a Rule E(4)(f) proceeding should not be required to prove their case.").

- 7 -

(4) there is no maritime law or statutory bar to the attachment."
Brave Bulk Transp. Ltd. v. Spot On Shipping Ltd., No. 07 Civ.
4546 (CM), 2007 WL 3255823, at *4 (S.D.N.Y. Oct. 30, 2007)
(quoting Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460
F.3d 434, 445 (2d Cir. 2006)).

## 2.    Application

Here, the issue is whether plaintiff has shown that it
has a prima facie admiralty claim against Shanghai Fareast -- the
first requirement under Aqua Stoli.  I conclude that it has.

First, at the outset, Navision has clearly pled its
claims with sufficient particularity to allow Shanghai Fareast
"to commence an investigation of the facts and to frame a
responsive pleading."  Fed. R. Civ. P. Supp. R. E(2)(a).  The
second amended complaint alleges that Shanghai Fareast violated
the Letter of Authorization by issuing bills of lading marked
"freight prepaid," and that this breach prevented Navision from
exercising a lien on the corresponding cargo to secure a claim
for unpaid hire against Yong He.  Shanghai Fareast can hardly
dispute its ability to "investigate and respond to" the
allegations against it; in addition to its motion, the port agent
has assembled and submitted voluminous documents (including bills
of lading and invoices) and expert opinions challenging
Navision's factual and legal assertions.

Second, Navision appears to have a meritorious claim
for breach of maritime contract.  On its face, the Letter of
Authorization prohibited Shanghai Fareast from issuing bills of

- 8 -

lading marked "freight prepaid" and expressly stated that the port agent would "be held fully responsible" if it did so. That letter was co-signed by the Master and a representative of Shanghai Fareast, the latter signing under the notation "[a]cknowledged and accepted." (Bober Decl. Ex. 3). As Shanghai Fareast concedes that it signed the Letter of Authorization and yet did not abide by its terms (see Zhonggen Decl. ¶¶ 4-6), its own submissions lend credence to a breach of contract claim.

Third, Navision has provided facts to support a negligence claim against Shanghai Fareast. As maritime agreements often include restrictions on the issuance of bills of lading for the explicit purpose of preserving a party's right to exercise cargo liens, see Padre Shipping, Inc. v. Yong He Shipping, 553 F. Supp. 2d 328, 330 (S.D.N.Y. 2008), a port agent who issues bills of lading marked prepaid when it has been expressly instructed not to do so may very well be breaching its duty to act with reasonable care.

While Shanghai Fareast concedes that it breached the Letter of Authorization, it disputes its liability on the theory that it acted solely as Yong He's agent and thus, under the Charter Party, had no direct duty to Navision. To the contrary, it asserts, any claims arising from the issuance of "freight prepaid" bills of lading must be directed at Yong He, the charterer, and not its sub-agent, Shanghai Fareast.[9] This

---

[9]     In support, Shanghai Fareast cites Clause 8 of the Charter Party, which specifies that the Master may, when required, "authorize the Charterers or the agents to sign Bills

- 9 -

argument fails, at least at this juncture. The Letter of Authorization expressly stated that the port agent would be held liable for breaching its terms. Moreover, Shanghai Fareast signed the Letter of Authorization and represented that it "[a]cknowledged and accepted" its terms.[10] To the extent Shanghai Fareast suggests that a conflict exists between the terms of the Charter Party and the Letter of Authorization, or that the letter was non-binding, those issues are best decided in a litigation that resolves the merits, with the benefit of full discovery; in this proceeding, which adjudicates not the merits but only the provisional remedy of a maritime attachment, Navision has satisfied its prima facie burden.

Shanghai Fareast's further speculation that Navision could have attached the "freight collect" cargo to secure its claim does not warrant vacatur of the attachment.[11] First, it is

---

of Lading on his behalf" and argues that under Clause 42, charterers must accept all consequences that result from agents failing to adhere to their authority. (Def. Mem. 3).

[10]    Shanghai Fareast asserts that its representative, Zhonggen, added the notation "RCVD THIS LETTER" next to his signature to indicate that the port agent neither agreed to, nor considered itself bound by, the terms outlined in the Letter of Authorization. (Zhonggen Decl. ¶ 6). Shanghai Fareast's notation that it "received" the Letter of Authorization, however, does not on its face contradict the port agent's representation that it "[a]cknowledged and accepted" the terms therein.

[11]    At oral argument, Shanghai Fareast argued that Navision could not plausibly claim that Shanghai Fareast had prevented it from exercising a lien on the cargo, for "only a fraction of the bills of lading were marked freight prepaid." (OA Tr. 12:17-19). "The greater number of bills of lading were marked freight collect," it asserted (id. 12:19-20), and accordingly, "plaintiff could have liened this cargo and been entitled to over $5 million in security." (Id. 13:23-25).

not clear whether Navision could have asserted a lien on the "freight collect" cargo.[12]  Second, while the second amended complaint does not specify the monetary value of the cargo shipped under bills of lading marked "freight prepaid", it is certainly plausible that the cargo was of sufficient value to have provided Navision with substantial security.  The thirteen bills of lading undisputedly marked "freight prepaid" collectively covered over 1,000 bundles and 150 coils of steel, weighing in at over 4,000 metric tons.[13]  Considering that a single "freight collect" bill of lading for 971 bundles (and 2,239 metric tons) covered $1.36 million of cargo,[14] the cargo covered by the thirteen "freight prepaid" bills of lading apparently had a significant value, and would have provided Navision substantial security, had it been available for attachment.

## B.  **Rule 12(b)(6)**

As to Shanghai Fareast's contention that the Court should dismiss the underlying action pursuant to Rule 12(b)(6), or in the alternative grant summary judgment, the argument is misplaced.  It makes little sense to apply Rule 12(b)(6) or Rule

---

[12]     For its part, Navision asserts that it took "all necessary legal steps" to obtain a lien on the cargo when it was discharged in Spain and Italy.  (Bober Decl. ¶ 11).

[13]     The Court calculated these numbers from the "freight prepaid" bills of lading, marked as Zhonggen Decl. Ex. 4A.

[14]     See Zhongghen Repl. Decl. Ex. 1 (the commercial invoice for the steel cargo carried under bill of lading BRJSHA003).

- 11 -

56 here. The merits are not being adjudicated in this case, and the second amended complaint does not seek damages from Shanghai Fareast, nor does it assert breach of contract or negligence claims against Shanghai Fareast.[15] Rather, again, it seeks only the provisional remedy of a maritime attachment. Hence, the inquiry is not whether Navision generally states a claim upon which relief can be granted, or whether Navision is entitled to judgment as a matter of law, but whether the requirements of Supplemental Rules B and E have been met. As Navision has satisfied the requirements for a maritime attachment, including making a prima facie admiralty claim, the attachment will stand.

## CONCLUSION

For the reasons set forth above, defendant's motion is denied. Nevertheless, it is troubling that more than seven months have elapsed and Navision has yet to prosecute its claims against Shanghai Fareast in any jurisdiction. The Order of Attachment freezes Shanghai Fareast's property pending litigation in another jurisdiction, but Navision should not be permitted to tie up the property indefinitely by delaying commencement of the other action. Accordingly, if Navision does not proceed with its underlying action within ninety days of this decision, Shanghai

---

[15] While ¶ F on the final page of the second amended complaint references an alternative request for "judgment against the Defendant(s)," it is clear from the rest of the seconded amended complaint, and in particular ¶¶ 52-60 (count five), that in this proceeding, Navision seeks only the provisional remedy of a maritime attachment against Shanghai Fareast.

Fareast may move to vacate the Order of Attachment on the grounds

that Navision has failed to prosecute its underlying claim.

     SO ORDERED.

Dated:   New York, New York
         August 8, 2008

                                   DENNY CHIN
                                 United States District Judge

- 13 -